No. 03-1874C
Judge Hewitt

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

EDWARD T. ARAKAKI and HELEN ARAKAKI,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-1011

January 16, 2004

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES . . . . . 1

STATEMENT OF THE CASE . . . . . 1

I. Nature of the Case . . . . . 1

II. Statement of Facts . . . . . 3

ARGUMENT . . . . . 4

I. Standards of Review . . . . . 4

II. The Court Lacks Tucker Act Jurisdiction To Entertain Plaintiffs' Claims For Relief . . . . . 6

A. This Court's Jurisdiction Is Limited . . . . . 6

B. This Court Lacks Jurisdiction Over Plaintiffs' Claims Because Plaintiffs' Claims Were Filed Outside of This Court's Six-Year Statute of Limitations . . . . . 7

III. Plaintiffs Have Failed to State a Claim Upon Which Relief May Be Granted . . . . . 10

A. The Elements of a Valid Breach of Contract Claim . . . . . 10

B. Plaintiffs Fail to State A Claim Upon Which Relief May Be Granted Because Plaintiffs Fail to Show a Government Agent With Actual Authority to Bind the Government . . . . . 11

CONCLUSION . . . . . 16

# TABLE OF AUTHORITIES

CASES: PAGE(S)

Alder Terrace, Inc. v. United States, 161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 5

American Gen. Leasing, Inc. v. United States, 218 Ct.Cl. 367,
587 F.2d 54 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

American Nat'l Bank & Trust Co.of Chicago v. United States, 22 Cl. Ct. 7 (1990) . . . . . . . . . . 5

Arakaki v. Martinez, No. 02-00417 (D. Hawaii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Brighton Village Associates v. United States, 52 F.3d 1056
(Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bowen v. United States, 49 Fed.Cl. 673 (2001), aff'd, 292 F.3d 1383
(Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CACI, Inc. v. Stone, 990 F.2d 1233 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

City of El Centro v. United States, 922 F.2d 816 (Fed. Cir. 1990),
cert. denied, 501 U.S. 1230 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Dynalectron Corp. v. United States, 4 Cl. Ct. 424, aff'd, 758 F.2d 665
(Fed. Cir. 1984) (table) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Crop Ins. Co. v. Merrill, 332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Fidelity Constr. Co. v. United States, 700 F.2d 1379 (Fed. Cir.),
cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Franconia Associates v. United States, 536 U.S. 129 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gould, Inc. v. United States, 935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

H. Landau & Co. v. United States, 886 F.2d 322 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 13

Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d
1429 (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hopland Band of Pomo Indians v. United States, 855 F.2d 1573
(Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Howard v. United States, 31 Fed. Cl. 297 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jascourt v. United States, 207 Ct. Cl. 955, cert. denied,
423 U.S. 1032 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Juda v. United States, 6 Cl. Ct. 441 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kinne v. United States, 21 Cl. Ct. 104 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Kinsey v. United States, 852 F.2d 556 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Martinez v. United States, 48 Fed. Cl. 851 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

McCauley v. United States, 38 Fed. Cl. 250 (1997), aff'd, 152 F.3d 948
(Fed. Cir.) (table), cert. denied, 525 U.S. 1032 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . 4-5

Mendenhall v. Barber-Greene Co., 26 F.3d 1573 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 16

New Am. Shipbuilders, Inc. v. United States, 871 F.2d 1077 (Fed. Cir. 1989) . . . . . . . . . . . . . 13

Oceanic Steamship v. United States, 165 Ct. Cl. 217 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plaintiffs in Winstar-Related Cases v. United States, 37 Fed. Cl. 174
(1994), aff'd sub. nom, Ariadne Financial Services v. United States,
133 F.3d F.3d 874 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Prestex, Inc. v. United States, 162 Ct. Cl. 620, 320 F.2d 367 (1963) . . . . . . . . . . . . . . . . . . . . 12

Rochman v. United States, 27 Fed. Cl. 162 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Teitelbaum v. Dept. Housing & Urban Dev., 953 F. Supp. 326 (D. Nev. 1996) . . . . . . . . . . 15, 16

Trauma Serv. Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . 5, 10

United States v. Mitchell, 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Testan, 424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.S. Ltd. Partnership v. Dept. Housing & Urban Dev.,
235 F.3d 1109 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

STATUTES:
Pub. L. No. 103-233, 108 Stat. 342 (1994) . . . . . 8

12 U.S.C. § 1713(g) . . . . . 14

12 U.S.C. § 1713(l) . . . . . 14

12 U.S.C. § 1715b . . . . . 15

12 U.S.C. § 1715z-4 . . . . . 15

28 U.S.C. § 1491 . . . . . 6

28 U.S.C. § 1491(a)(1) . . . . . 6

28 U.S.C. § 1631 . . . . . 10

28 U.S.C. § 2501 . . . . . 7

REGULATIONS:
24 C.F.R. § 207.3 (1991) . . . . . 15

24 C.F.R. § 221.511 (1991) . . . . . 15

24 C.F.R. § 290.30 (2003) . . . . . 14

24 C.F.R. § 290.31 (1996) . . . . . 8

24 C.F.R. § 290.53 (1995) . . . . . 8

MISCELLANEOUS:
Disposition of Multifamily Projects and Sale of HUD-Held Multifamily Mortgages, 61 Fed. Reg. 11684 (Mar. 21, 1996) . . . . . 8

Notice of Sale of HUD-Held Multifamily Mortgage Loans, 61 Fed. Reg. 18,652 (Apr. 26, 1996) . . . . . 4, 9

RCFC 12(b)(1) . . . . . 1, 4

RCFC 12(b)(6) . . . . . 1, 5

R. NASH, JR. & J. CIBINIC, JR., FORMATION OF GOVERNMENT CONTRACTS 64 (2d ed. 1986) . . . . . 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EDWARD T. ARAKAKI and HELEN ARAKAKI, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 03-1874C |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted. In support of defendant's motion, we rely upon the complaint and the following brief.

STATEMENT OF THE ISSUES

(1) Whether the statute of limitations serves as a jurisdictional bar to this Court's authority to entertain plaintiffs' complaint.

(2) Whether, even if this Court were to find it possesses subject matter jurisdiction over this case, this Court must dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted, because plaintiffs have failed to allege the elements of a valid breach of contract claim.

STATEMENT OF THE CASE

I. Nature of the Case

On June 5, 2002, Mr. Edward T. Arakaki filed an action in the Hawaii state court against Mel Martinez, then-Secretary of the United States Department of Housing and Urban

Development ("HUD" or the "agency"), and HUD itself. The case was removed to the United States District Court for the District of Hawaii on July 8, 2002. On March 6, 2003, the United States district court issued an amended order dismissing Mr. Arakaki's second amended complaint[1] based on lack of jurisdiction due to "HUD's sovereign immunity." Amended Order Dismissing Case at 12, Arakaki v. Martinez, No. 02-00417 (D. Hawaii Mar. 6, 2003). The court's amended order, however, granted Mr. Arakaki leave to file a third amended complaint. Id. at 12. The court instructed that if Mr. Arakaki sought to file a third amended complaint, the complaint "may only name the United States as a defendant and may only assert contract claims arising out of HUD's alleged breach of the oral agreement to allow [Mr.] Arakaki to bid on his loan at auction." Id. The court further conditioned filing by stating that "[a]ny Third Amended Complaint [Mr.] Arakaki files must be accompanied by [Mr.] Arakaki's motion (a) asserting that the interests of justice require the transfer of the action to the Court of Claims and (b) discussing how [Mr.] Arakaki satisfies any applicable statute of limitations in the event of transfer." Id.

On March 14, 2003, Mr. Arakaki and Ms. Helen Arakaki (collectively, the "plaintiffs") filed a third amended complaint with the United States district court,[2] and moved the court to transfer the case to the United States Court of Federal Claims. The Government opposed this motion. On May 27, 2003, the United States district court ordered the case transferred to this Court. Order Transferring Case to the Court of Federal Claims, Arakaki v. Martinez, No. 02-00417 (D. Hawaii May 27, 2003).

[1] Prior to dismissal, Mr. Arakaki had twice amended his complaint in the United States district court proceedings.

[2] Ms. Helen Arakaki was named as an additional plaintiff for the first time in the third amended complaint.

Finally, on September 10, 2003, the plaintiffs filed their "fourth amended complaint" with this Court.[3] In this complaint, plaintiffs assert a claim for HUD's breach of an alleged oral agreement to allow plaintiffs to bid on their mortgage loan at auction. See Compl. ¶ 3.

II. Statement of Facts[4]

Plaintiffs allege that on October 17, 1991, Mr. Arakaki met with a HUD official (identified as "Mr. Ewing") in connection with plaintiffs' purchase of a 76-unit apartment building in Las Vegas, Nevada, from a third party.[5] Compl. ¶ 6; Amended Order Dismissing Case at 1, Arakaki v. Martinez, No. 02-00417 (D. Hawaii Mar. 6, 2003). At this meeting, Mr. Ewing informed Mr. Arakaki that the mortgage loan on the building would soon be assigned to HUD. Compl. ¶ 7. Mr. Ewing allegedly made further oral representations to Mr. Arakaki that if HUD ever wished to sell the mortgage loan after assignment, plaintiffs would have the right to bid on the loan at an auction. Compl. ¶ 8.

On October 20, 1991, plaintiffs agreed to purchase the apartment building from a third party for $3 million, purportedly investing approximately $500,000 of their own funds.[6] Compl.

---

[3] The plaintiffs' "fourth amended complaint" is actually the first complaint that they have filed in this Court.

[4] For the purposes of this motion to dismiss, defendant will treat the allegations of plaintiffs' complaint as true.

[5] The fourth amended complaint does not specifically identify which of the plaintiffs purportedly met with HUD officials or the geographic location of the building purchased by plaintiffs. From reviewing the amended order dismissing the case filed by the district court, however, it appears that plaintiffs previously alleged that Mr. Arakaki met with Mr. Ewing, and that the building was located in Las Vegas, Nevada. See Amended Order Dismissing Case at 1, Arakaki v. Martinez, No. 02-00417 (D. Hawaii Mar. 6, 2003).

[6] The complaint only provides the date of the initial agreement, and does not specify the date of closing, or the date that plaintiffs' purchase of the building was finalized.

¶ 12, 14. After plaintiffs purchased the building, the mortgage loan was assigned to HUD. Compl. ¶ 15.

On July 5, 1995, plaintiffs were made aware that HUD planned to bundle plaintiffs' loan with other loans in an upcoming multifamily mortgage loans sale. Compl. ¶ 16. On April 26, 1996, HUD published a notice opening the multifamily loan auction and explaining the details of that auction. Notice of Sale of HUD-Held Multifamily Mortgage Loans, 61 Fed. Reg. 18,652 (Apr. 26, 1996). The notice explained that bidders on the sale "must be eligible institutional investors." Id. at 18,652. The notice also stated that ineligible bidders included "any mortgagor of any of the Mortgage Loans or an entity affiliated with any such Mortgagor." Id. at 18,653 (emphasis added). On June 27, 1996, plaintiffs' loan was sold to a third party as part of the FHA Partially-Assisted Bundled Loan Sale. Compl. ¶ 17. In 1998, the new owner of plaintiffs' loan foreclosed, and plaintiffs lost the property. Compl. ¶ 18.

## ARGUMENT

### I. Standards of Review

This Court must grant a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) when, in view of the record presented, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.'" McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), aff'd, 152 F.3d 948 (Fed. Cir.) (table), cert. denied, 525 U.S. 1032 (1998). Moreover, although the non-jurisdictional factual allegations, as pled, must be presumed true and viewed in the light most favorable to the plaintiff, the burden of establishing the Court's jurisdiction falls squarely upon the plaintiff. See McNutt v. General Motors

Acceptance Corp., 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997); Bowen v. United States, 49 Fed. Cl. 673, 675 (2001) (noting that the plaintiff bears the burden of proof upon a motion to dismiss for lack of jurisdiction), aff'd, 292 F.3d 1383 (Fed. Cir. 2002).

Pursuant to RCFC 12(b)(6), the Court may dismiss a complaint if, as a matter of law, it fails to state a claim upon which relief can be granted, even assuming the truth of its allegations. Unlike a RCFC 12(b)(1) disposition, however, "dismissal of plaintiff's complaint . . . for failure to state a claim does not have the legal effect of divesting this court of jurisdiction," and thus operates as a final adjudication, with prejudice, upon the merits. American Nat'l Bank & Trust Co. of Chicago v. United States, 22 Cl. Ct. 7, 18 (1990). As the United States Supreme Court has held, dismissal for failure to state a claim is appropriate whenever "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In resolving a motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Kinne v. United States, 21 Cl. Ct. 104, 107 (1990) (quoting Scheuer, 416 U.S. at 236). Thus, the Court "must . . . indulge in all reasonable inferences in favor of the nonmovant." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). Nonetheless, the Court should not place any weight upon any assertions in the complaint other than allegations of fact, because "legal conclusions, deduction, or opinions couched as factual allegations are not given a

presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992) (citation omitted).

## II. The Court Lacks Tucker Act Jurisdiction To Entertain Plaintiffs' Claims For Relief

### A. This Court's Jurisdiction Is Limited

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd, 758 F.2d 665 (Fed. Cir. 1984) (table). Its jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The waiver of sovereign immunity, and hence the consent to be sued, must be expressed unequivocally and cannot be implied. Id. Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. United States v. Mitchell, 445 U.S. 535, 538 (1980). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

In this Court, consent to suit is generally based upon the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397. Pursuant to this statute, sovereign immunity is waived only with respect to "claim[s] against the United States" that are "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

B. This Court Lacks Jurisdiction Over Plaintiffs' Claims Because Plaintiffs' Claims Were Filed Outside of This Court's Six-Year Statute of Limitations

Plaintiffs' claims are barred by the six-year statute of limitations set out in 28 U.S.C. § 2501. Section 2501 states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The six-year statute of limitations "is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577-78 (Fed. Cir. 1988).

To prove that their claims are not time barred, plaintiffs must show that their "claim first accrued within six years of the filing of the complaint." Martinez v. United States, 48 Fed. Cl. 851, 857 (2001). "A claim accrues when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Brighton Village Associates v. United States, 52 F.3d 1056, 1060 (Fed. Cir. 1995). "For breach of contract actions, the claim generally accrues at the time of the breach." Martinez, 58 Fed. Cl. at 857. Plaintiffs cannot show that their claim was filed within six years of the alleged breach of contract.

In their fourth amended complaint, plaintiffs claim that the alleged oral contract with HUD was breached on the date that their loans were sold, June 27, 2002. Compl. ¶ 23. Plaintiffs, however, do not describe their alleged contract with HUD as the providing them with the right to be sold their loans, instead they claim to have been given a "right to bid" on their loans. Compl. ¶¶ 8-9. Plaintiffs' "right to bid" on their loan, however, was foreclosed well before the actual date of the sale of the loan.

In 1994, Congress passed the Multifamily Property Disposition Act of 1994, to allow for a more rapid disposition of the growing inventory of HUD-held mortgages. Pub. L. No. 103-233, 108 Stat. 342 (1994). On March 21, 1996, HUD published final regulations regarding the sale of HUD-held mortgages in the Federal Register, to be effective on April 22, 1996. The final regulations provided that:

> HUD will sell current mortgages securing subsidized projects, as follows:
> (a) Current mortgages with FHA mortgage insurance will be sold either:
> (1) On a competitive basis to FHA-approved mortgagees; or
> (2) On a negotiated basis, to State and local governments, or to a group of investors that includes an agency of a State or local government if, in addition to meeting the requirements of the Statute, the sales price is the best price that HUD can obtain from an agency of a State or local government while maintaining occupancy for the tenant group originally intended to be served by the subsidized housing program.

Disposition of Multifamily Projects and Sale of HUD-Held Multifamily Mortgages, 61 Fed. Reg. 11684, 11690 (Mar. 21, 1996) (codified at 24 C.F.R. § 290.31 (1996)). These regulations changed HUD's previous disposition rules, which generally had permitted the sale of HUD-held multifamily mortgages to the individual mortgagees. See 24 C.F.R. § 290.53 (1995). In certain circumstances, such regulations may be enough to constitute an actual breach of contract. See, e.g., Plaintiffs in Winstar-Related Cases v. United States, 37 Fed. Cl. 174 (1994), aff'd sub. nom, Ariadne Financial Services v. United States, 133 F.3d F.3d 874 (Fed. Cir. 1998) (holding that the statute of limitations began to run from the effective date of the FIRREA regulations). But see Franconia Associates v. United States, 536 U.S. 129 (2002) (holding that regulations may merely serve to repudiate a contract, and did not trigger the statute of limitations).

Even if the statute and regulations by themself would not have served as a actual breach, the application of the statute and regulations to plaintiffs' individual mortgage loan arguably would have constituted a breach of the alleged oral contract to allow plaintiffs to bid on their loan. Plaintiffs were made aware on July 5, 1995 that HUD planned to bundle plaintiffs' loan with other loans in an upcoming multifamily mortgage loans sale. Compl. ¶ 16. On April 26, 1996, four days after the effective date of the new disposition regulations, HUD published a notice opening the auction of the bundled multifamily mortgage loans (which included plaintiffs' loan). Notice of Sale of HUD-Held Multifamily Mortgage Loans, 61 Fed. Reg. 18,652 (Apr. 26, 1996). The notice explained that bidders on the sale "must be eligible institutional investors." Id. at 18,652. The notice also stated that ineligible bidders included "any mortgagor of any of the Mortgage Loans or an entity affiliated with any such Mortgagor." Id. at 18,653 (emphasis added).

As of April 26, 1996 at the latest, therefore, HUD arguably would have been in breach of any contract requiring the agency to permit the plaintiffs to bid on their loan. The statute of limitations begins to run "when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Kinsey v. United States, 852 F.2d 556, 557 (Fed. Cir. 1988) (quoting Oceanic Steamship v. United States, 165 Ct. Cl. 217, 225 (1964)). As of April 26, 1996, plaintiffs had been denied the "right to bid" on their individual loan. Plaintiffs, however, did not file a complaint based upon this transaction until June 5, 2002, after the six year statute of limitations had expired. Accordingly, their complaint should be dismissed for lack of jurisdiction.

Finally, even if the date of sale is treated as the date of alleged breach, plaintiffs' claim is still barred by the statute of limitations. On March 6, 2003, the United States district court issued

an amended order dismissing the Mr. Arakaki's second amended complaint based on lack of jurisdiction due to "HUD's sovereign immunity." Amended Order Dismissing Case at 12, Arakaki v. Martinez, No. 02-00417 (D. Hawaii Mar. 6, 2003). Although plaintiffs were permitted to file a new, third amended compliant, that was then transferred to this Court, that complaint was filed more than six years after plaintiffs' breach of contract claim accrued.[7] While 28 U.S.C. § 1631 provides to the district court the ability to transfer a case where there is a want of jurisdiction, once the district court dismissed the case, plaintiffs efforts to file an amended complaint were untimely. Accordingly, this Court should dismiss plaintiffs' complaint for lack of jurisdiction.

## III. Plaintiffs Have Failed to State a Claim Upon Which Relief May Be Granted

### A. The Elements of a Valid Breach of Contract Claim

To state a valid breach of contract claim, plaintiffs must allege (1) the existence of either an express or implied-in-fact contract requiring HUD to allow them to bid on their mortgage loan at auction, (2) a breach of that contract, and (3) resultant damages. The general requirements for a binding contract with the United States are identical for both express and implied-in-fact contracts. Trauma Serv. Group, 104 F.3d at 1325.

To establish a valid contract with the United States, a plaintiffs must demonstrate: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and

[7] The third amended complaint added Helen Arakaki as a new party/plaintiff for the first time, and restated plaintiffs' claim of breach of an oral agreement. Third Amended Complaint, Arakaki v. Martinez, No. 02-00417 (D. Hawaii Mar. 14, 2003). Mr. Arakaki's claim for breach based on the alleged oral agreement was a part of the second amended complaint, but was characterized slightly differently. Second Amended Complaint, Arakaki v. Martinez, No. 02-00417 (D. Hawaii Sept 25, 2002).

(4) "the Government representative 'whose conduct is relied upon [had] actual authority to bind the [G]overnment in contract.'" City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting Juda v. United States, 6 Cl. Ct. 441, 452 (1984)), cert. denied, 501 U.S. 1230 (1991). It is well settled that actual authority to contract is required to form a contract binding on the United States, and "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

Plaintiffs' complaint fails to establish the existence of a valid contract, and thus does not meet the requirements for a valid breach of contract claim.

B. Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted Because Plaintiffs Fail to Show a Government Agent With Actual Authority to Bind the Government

In Federal Crop Insurance Co. v. Merrill, 332 U.S. 380 (1947), the United States Supreme Court established that the Government is bound by the actions of a Government employee only to the extent that the employee in question had "actual authority" to bind the Government in contract:

> The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.
>
> . . . .

> The oft-quoted observation . . . that "Men must turn square corners when they deal with the Government," does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

Id. at 384-85 (emphasis added; citations omitted).

Although a Government employee acting with "actual authority" can bind the Government in contract, the concept of "apparent authority," which is generally sufficient to bind a private litigant in contract, cannot be applied against the Government:

> It is a well recognized principle of procurement law that the contracting officer, as agent of the executive department, has only that authority actually conferred upon him by statute or regulation. If, by ignoring statutory and regulatory requirements, he exceeds his actual authority, the Government is not estopped to deny the limitations on his authority, even though the private contractor may have [relied] on the contracting officer's apparent authority to his detriment, for the contractor is charged with notice of all statutory and regulatory limitations.

CACI, Inc. v. Stone, 990 F.2d 1233, 1236 (Fed. Cir. 1993), quoting Prestex, Inc. v. United States, 162 Ct. Cl. 620, 625, 320 F.2d 367, 371 (1963); see Federal Crop Ins., 332 U.S. at 384; Jascourt v. United States, 207 Ct. Cl. 955, 956, cert. denied, 423 U.S. 1032 (1975); R. Nash, Jr. & J. Cibinic, Jr., Formation of Government Contracts 64 (2d ed. 1986).

Before a Government employee can be found to have express actual authority to bind the Government in contract, he must have been delegated specific authority either by Congress or through agency rule-making. City of El Centro, 922 F.2d at 820. Specifically, "[a] [G]overnment employee possesses express [actual] authority to bind the [G]overnment only when the Constitution, a statute, or a regulation grants it in unambiguous terms." Howard v. United States, 31 Fed. Cl. 297, 312 (1994). Authority cannot be "inferred" from the absence of

an express limitation on authority, but instead must be explicitly delegated. City of El Centro, 922 F.2d at 820.

In the alternative to finding express actual authority to bind the Government in contract, a Government agent also may possess the authority to bind the Government if such agent is found to have implied actual authority. See H. Landau & Co. v. United States, 886 F.2d 322 (Fed. Cir. 1989). Implied actual authority, however, should not be confused with apparent authority. Authority to bind the Government in contract will only be "generally implied when such authority is considered to be an integral part of the duties assigned to a Government employee." Id. at 324.

More specifically, the express and implied authority of a Government agent to enter into oral contracts may be limited by statute or regulation. See, e.g., Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999) (contracting officer's delegation of authority did not include implied authority to enter into unilateral oral contract); American Gen. Leasing, Inc. v. United States, 218 Ct.Cl. 367, 587 F.2d 54, 57-58 (1978) (holding that express oral agreement with Government agent was not binding because, among other reasons, the applicable regulations required that a contract be in writing). See also New Am. Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1080 (Fed. Cir. 1989) (holding that oral assurances did not give rise to a contract implied-in-fact where all the steps in the agency's required procedure where completed, until such time there was no evidence of intent to be bound).

Plaintiffs fail to identify any statutory or regulatory basis for Mr. Ewing's authority to enter into the purported oral contract modifying the terms of plaintiffs' mortgage agreement with HUD. To the contrary, the statute and regulations deny Mr. Ewing any such authority.

Plaintiffs' complaint alleges that HUD was assigned the mortgage for the building that plaintiffs agreed to purchase. Compl. ¶15. The authority of the Secretary of HUD (the "Secretary") to acquire an insured mortgage in default, such as the one at issue in this case, is set forth in Section 207(g) of the National Housing Act, which provides in pertinent part:

> The failure of the mortgagor to make any payment due under or provided to be paid by the terms of the mortgage insured under this section shall be considered a default under such mortgage and, if such default continues for a period of thirty days, the mortgagee shall be entitled to receive the benefits of the insurance as hereinafter provided, upon assignment, transfer, and delivery to the Secretary, within a period and in accordance with rules and regulations to be prescribed by the Secretary, of . . . all rights and interests arising under the mortgage in default . . . .

12 U.S.C. §1713(g).

After acquiring the mortgage, the Secretary has broad discretion of how to sell the mortgage loans. Section 203(k)(4) of the Housing and Community Development Act of 1978, as amended by the Multifamily Property Disposition Act of 1994, states in relevant part:

> Notwithstanding any other provision of law relating to the acquisition, handling, or disposal of real or other property by the United States, the Secretary shall also have the power, for the protection and interest of The General Insurance Fund . . . to deal with, . . . or sell for cash or credit or lease in his discretion, any property acquired by him under this section.

12 U.S.C. § 1713(l). This provision provides the Secretary with the explicit authority to dispose of a mortgage note for cash or for credit.[8] Despite this explicit grant of discretionary authority to

---

[8] The applicable regulations provide that HUD will sell HUD-held multifamilty mortgages on a competitive basis. See 24 C.F.R. § 290.30 (2003).

the Secretary, plaintiffs insist that a local HUD employee can bind the agency to an oral agreement to permit them to bid on their loan at auction.

The National Housing Act, however, does not authorize oral contracts with regards to mortgagors as to the manner of sale of their mortgage notes. Under the National Housing Act, the Secretary is authorized to promulgate rules and regulations as necessary to carry out the provisions of the Act. 12 U.S.C. § 1715b. The National Housing Act also provides that "[t]he Secretary shall not consent to any request for an extension of time for curing a default under any mortgage covering multifamily housing . . . or for a modification of the terms of such mortgage except in conformity with regulations prescribed by the Secretary." 12 U.S.C. § 1715z-4. The regulations concerning mortgage forms state that any mortgage shall be "[e]xecuted on a form approved by the Commissioner for use in the jurisdiction in which the property covered by the mortgage is situated which form shall not be changed without the prior written approval of the Commissioner." 24 C.F.R. § 221.511 (1991) (emphasis added). See also 24 C.F.R. § 207.3 (1991) (multifamily housing). The alleged oral agreement in this case, however, was neither embodied in a mortgage form "approved by the Commissioner," nor had such a change from the approved form been approved in writing by the Commissioner. Accordingly, Mr. Ewing could not have had the authority to enter into an oral agreement requiring HUD to permit the plaintiffs to bid on their loan at auction. See also V.S. Ltd. Partnership v. Dept. Housing & Urban Dev., 235 F.3d 1109, 1113 (8th Cir. 2000); Teitelbaum v. Dept. Housing & Urban Dev., 953 F. Supp. 326, 330 (D. Nev. 1996).

Finally, in determining whether the United States had waived its sovereign immunity, the United States district court has already ruled that the National Housing Act "did not authorize

oral modifications of [Mr.] Arakaki's mortgage." Order Transferring Case to the Court of Federal Claims, Arakaki v. Martinez, Civ. No. 02-00417, at 9 (D. Hawaii May 27, 2003). See also Amended Order Dismissing Case, Arakaki v. Martinez, Civ. No. 02-00417, at 7, 7-12 (D. Hawaii March 6, 2003) ("the oral promise to allow [Mr.] Arakaki to bid on his loan was not authorized by the NHA") (citing V.S. Ltd. Partnership v. Dept. Housing & Urban Dev., 235 F.3d 1109, 1113 (8th Cir. 2000); Teitelbaum v. Dept. Housing & Urban Dev., 953 F. Supp. 326, 330 (D. Nev. 1996)). In the district court's order transferring this case to this Court, however, the district court acknowledged that its ruling "did not go so far as to say that a HUD official can never orally modify a mortgage instrument. . . ." Order Transferring Case to the Court of Federal Claims, Arakaki v. Martinez, Civ. No. 02-00417, at 9-10.

Under the law of the case doctrine, "[a] court will not generally revisit an issue once decided in the litigation," absent special circumstances. Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1582 (Fed. Cir. 1994). Admittedly, the district court appears to have left undecided the issue of "authority" as a necessary element of a breach of contract. Nevertheless, it is unclear how, if the National Housing Act does not authorize oral modifications under the law of the case, Mr. Ewing would have the authority to enter into an oral contract with the plaintiffs for the purposes of a breach of contract claim in this Court.

Plaintiffs have failed to show that Mr. Ewing had actual authority to enter into an oral agreement upon behalf of the Government allowing the plaintiffs to bid on their mortgage loan at auction. Accordingly, plaintiffs have failed to state a claim upon which relief may be granted.

## CONCLUSION

For these reasons, the United States respectfully requests that this Court dismiss the plaintiff's complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-1011

January 16, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 16th day of January, 2004, a copy of the foregoing Motion for Enlargement of Time was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that this 16th day of January, 2004, I caused to be served by United States mail (first class, postage prepaid) copies of "DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT" addressed as follows:

R. Patrick Jaress
Jaress & Leong
737 Bishop Street
Suite 2920
Honolulu, Hawaii 96813

Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

/s/ Steven M. Mager