DECLARATION OF EDWARD T. ARAKAKI

Edward T. Arakaki declares:

1. I am one of the Plaintiffs in this proceeding. I have first hand knowledge of the facts stated herein.

2. In 1991, my mother and I were considering the purchase of an apartment building in Las Vegas Nevada. Before we were willing to make the purchase, we needed certain commitments from HUD. My advisors and I personally met with HUD's agent in charge of the loan, David Ewing, in October 1991.

3. One of the main purposes of the October 1991 meeting with HUD's David Ewing was to discuss the commitments I needed from HUD before I would buy a property encumbered by a mortgage loan insured by HUD.

4. Mr. Ewing indicated that HUD anticipated it would soon be paying off the lender, who had the loan on the property secured by the mortgage. HUD was paying off the lender because the loan was delinquent.

5. Once HUD paid off the lender, the loan and the mortgage securing the loan would have transferred to HUD.

6. Mr. Ewing never indicated that he needed someone else's approval to make the commitments he made to me. He never asked me to sign a HUD form 4350.1 REV-1, or any other document where I would agree I would not rely upon his verbal promises. He never indicated his commitments would be made binding only if they were in writing or if they were approved by some other person.

7. Mr. Ewing told me that, if I purchased the property, and if subsequently the loan were sold by HUD, I would be able to bid on the loan. Relying on what Mr. Ewing said, I paid approximately $500,000 down for the property (much of which went to HUD).

8. On information and belief, this procedure of selling troubled loans at an auction open to the owners was standard practice at HUD during this period. It allowed people to invest in financially troubled property controlled by HUD without risking the loss of the person's entire investment as might occur if HUD were to auction the loan off without allowing the owner to bid on the loan and mortgage.

9. In 1995, I was informed that HUD was planning to sell my mortgage. This did not make me realize that I had a claim. First of all, I was not informed initially that my mortgage would be sold "bundled" with other mortgages. If my loan were sold separately, I would still be able to bid on it, which was what HUD had initially represented could be done. I was not told until later that my mortgage would be bundled with other mortgages. Even then, I hoped that HUD would remove my loan from a bundled sale when I reminded HUD of its initial promises. I did not see any Notice published in the Federal Register.

10. After 1995, I continued to hope that HUD would keep its promises. I hoped that my loan would not be sold bundled with other mortgages. I made every effort I could to convince HUD to sell the loan privately to me. See Exhibits A, B, and C. After my loan was sold, I hoped to work with the new buyer of the mortgage to solve the project's problems and to avoid a loss. HUD's Dorothy Manz told me that I could still talk about the promises HUD had made, the same way I could always talk to HUD. HUD's May 24, 1996 letter to Senator Inouye gave an assurance that I would be able to negotiate a discounted settlement of the amount owed (over $3 million), or lower the loan amount to allow my loan to become a performing loan, in which

case I would be able to make all payments. See Exhibit C, page 2.

11. On September 22, 1997, HUD sent a new letter admitting the assurance in the May 24, 1996 letter "was not accurate." Exhibit D. HUD apologized to me for the "confusion." Exhibit D.

12. I believe that I and my mother used reasonable diligence to discover the existence of our claims. We wrote HUD. Exhibits A and B. When we began having problems with the property, I sought help from Mr. Inouye's office to straighten things out with HUD. See Exhibits C and D.

13. In 1997, a foreclosure action was filed. I filed a bankruptcy petition and the foreclosure was delayed. The automatic stay concerning the property remained in effect until November 28, 1997. A copy of the relevant order is attached as Exhibit E. Ultimately, a foreclosure sale was held. My mother and I finally lost the property in 1998. We ended up losing about $500,000.

14. Until the property was actually lost in foreclosure, I held out hope that HUD or its successor in interest would live up to the promises that had been made back in 1991. I did not actually suffer a loss as a result of the failures of the Defendants in this case until I lost the property in 1998. Until that time, I hoped that HUD or its successor in interest would reconsider and either not sell the property "bundled" with other mortgages or would give the same concessions that had been promised.

I DECLARE UNDER PENALTY OF LAW THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on this 4th day of March, 2004.

EDWARD T. ARAKAKI