No. 03-1874C
Judge Hewitt

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

EDWARD T. ARAKAKI and HELEN ARAKAKI,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KATHRYN A. BLEECKER
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-1011

April 5, 2004

Attorneys for Defendant

TABLE OF CONTENTS

PAGE

ARGUMENT . . . . . . . . . . 1

I. This Court Lacks Jurisdiction Over Plaintiffs' Claims Because Plaintiffs' Claims Were Filed Outside Of This Court's Six-Year Statute Of Limitations . . . . . . . . . . 1

A. *Franconia Associates* Is Not Applicable To This Case, Because The Regulations Passed By HUD Would Have Functioned As An Actual Breach, Not A Mere Repudiation, Of The Alleged Agreement . . . . . . . . . . 2

B. Plaintiffs Mistakenly Focus On The Date Damages Were Fully Realized, Rather Than The Date Of Actual Alleged Breach . . . . . . . . . . 6

C. Equitable Tolling And Equitable Estoppel Can Not Be Applied To This Case To Toll The Statute Of Limitations . . . . . . . . . . 7

II. Plaintiffs Have Failed To State A Claim Upon Which Relief May Be Granted . . . . . . . . . . 10

A. Plaintiffs Fail To Identify A Basis For Contractual Authority . . . . . . . . . . 10

B. Plaintiffs Cannot Allege A Separate Implied In Fact Contract Where There Is A Related Express Contract . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 14

TABLE OF AUTHORITIES

FEDERAL CASES: PAGE(S)

Alder Terrace Inc. v. United States, 39 Fed. Cl. 114 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 428 F.2d 1241 (1970) . . . . . . . . . . . . . . . . 13

Andrews v. Principi, 351 F.3d 1134 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Atlas Corp. v. United States, 895 F.2d 745 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bailey v. West, 160 F.3d 1360 (Fed. Cir. 1998) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Block v. North Dakota, 461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Boling v. United States, 220 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Caguas Central Fed. Savings Bank v. United States,
215 F.3d 1304 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Catawba Indian Tribe of So. Carolina v. United States,
982 F.2d 1564 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Eliel v. United States, 18 Cl. Ct. 461 (1989),
aff'd, 909 F.2d 1495 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Franconia Associates v. United States, 536 U.S. 129 (2002) . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

Habermann v. United States, 26 Cl. Ct. 1405 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hart v. United States, 910 F.2d 815 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ITT Fed. Support Services v. United States, 531 F.2d 522, 209 Ct. Cl. 157 (1976) . . . . . . . . . . 13

Japanese War Notes Claimants Assoc. v. United States,
178 Ct.Cl. 630, 373 F.2d 356 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Kinsey v. United States, 852 F.2d 556 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Plaintiffs in Winstar-Related Cases v. United States, 37 Fed. Cl. 174 (1994), aff'd sub. nom, Ariadne Financial Services v. United States, 133 F.3d 874 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Pratt v. United States, 50 Fed. Cl. 469 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Schism v. United States, 316 F.3d 1259 (Fed. Cir. 2002) (en banc) . . . . . . . . . . . . . . . . . . . 12, 14

Soriano v. United States, 352 U.S. 270 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Zacharin v. United States, 213 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FEDERAL STATUTES:

Multifamily Property Disposition Act of 1994, Pub. L. No. 103-233, 208 Stat. 342 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 U.S.C. § 1701h . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12 U.S.C. § 1701x . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

12 U.S.C. § 1701z-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

12 U.S.C. § 1702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12 U.S.C. § 1715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

12 U.S.C. § 1715f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

12 U.S.C. § 1715z-1a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7

FEDERAL REGULATIONS:

Disposition of Multifamily Projects and Sale of HUD-Held Multifamily Mortgages, 61 Fed. Reg. 11684 (Mar. 21, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

Notice of Sale of HUD-Held Multifamily Mortgage Loans, 61 Fed. Reg. 18,652 (Apr. 26, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

24 C.F.R. § 221.511 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

24 C.F.R. § 290.31 (1996) . . . . . . . . . . 5, 11

24 C.F.R. § 290.53 (1995) . . . . . . . . . . 5

STATE CASES
Summa Corp. v. Greenspun, 607 P.2d 569, 572 (Nev. 1980) . . . . . . . . . . 13

STATE STATUTES
Nev. Rev. Stat. § 111.205 . . . . . . . . . . 13

Nev. Rev. Stat. § 111.210 . . . . . . . . . . 13

MISCELLANEOUS:
RCFC 12(b)(1) . . . . . . . . . . 1

RCFC 12(b)(6) . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EDWARD T. ARAKAKI and HELEN ARAKAKI,<br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 03-1874C<br>(Judge Hewitt) |

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits its reply to plaintiffs' opposition to defendant's motion to dismiss.

In our motion to dismiss, we established that the statute of limitations serves as a jurisdictional bar to this Court's authority to entertain plaintiffs' complaint. Def.'s Mot. to Dismiss at 6-10. Further, we established that, even if this Court were to find it possessed subject matter jurisdiction over this case, this Court must dismiss plaintiffs' complaint because plaintiffs have failed to state a claim upon which relief may be granted. Id. at 10-16. Accordingly, this Court should dismiss plaintiffs' complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted.

**ARGUMENT**

**I. This Court Lacks Jurisdiction Over Plaintiffs' Claims Because Plaintiffs' Claims Were Filed Outside Of This Court's Six-Year Statute Of Limitations**

In our motion to dismiss, we established that this Court lacks jurisdiction over plaintiffs' claim because plaintiffs' claims were filed outside of this Court's six-year statute of limitations,

28 U.S.C. § 2501. Plaintiffs' oppositions fails to demonstrate that their claim was timely filed, and thus our motion to dismiss for lack of jurisdiction should be granted.

**A. *Franconia Associates* Is Not Applicable To This Case, Because The Regulations Passed By HUD Would Have Functioned As An Actual Breach, Not A Mere Repudiation, Of The Alleged Agreement**

In their opposition, plaintiffs argue that by passing regulations that barred them from bidding on their loan at auction, the Government merely "repudiated" rather than "breached" the plaintiffs' alleged contract with the Government. Plaintiffs assert that under Franconia Associates v. United States, 536 U.S. 129 (2002), the statute of limitations does not begin to run upon repudiation. The regulations passed by the United States Department of Housing and Urban Development ("HUD" or the "agency") applicable here, however, were not a repudiation of the alleged contract, but rather allegedly would have constituted an actual full breach.[1] Accordingly, "[i]f . . . the breach is not wholly anticipatory because it involves some contractual nonperformance, the statute of limitations begins to run immediately." Kinsey v. United States, 852 F.2d 556, 558 (Fed. Cir. 1988). Franconia Associates, thus, is inapplicable to the facts of this case.

In Franconia Associates, the United States Supreme Court held that the statute of limitations was not a bar to plaintiffs' breach of contract claim against the Government. Franconia Associates, 536 U.S. at 149. The plaintiffs in Franconia Associates asserted their breach of contract claim against the Government based upon promissory notes that gave plaintiffs an explicit, unfettered right to prepay the notes at any time prior to the due date. Id. at

[1] While a repudiation is a limited form of breach of contract, for the purposes of this reply, the Government uses the term "breach" to mean a full, actual breach of contract, which is sufficient to start the statute of limitations running.

133. HUD asserted that it was unable to honor such an unfettered right to prepayment, because the agency's ability to accept such prepayments subsequently were limited by the enactment of the Emergency Low Income Housing Preservation Act ("ELIHPA") and the promulgation of regulations implementing ELIHPA. Id. at 136-37. The Supreme Court held that ELIHPA and the implementing regulations, however, merely served as a repudiation of the Government's obligation to accept prepayment from the plaintiffs, and, thus, the statute of limitations would not begin to run until the plaintiffs either: (1) attempted prepayment or (2) otherwise choose to treat the repudiation as a breach. Id. at 143.

The Supreme Court's holding that the statute and regulations constituted a mere repudiation, however, must be put in its proper factual context. The Supreme Court did not hold that a statute or regulation may only serve to repudiate, and not breach, a prior agreement. Instead, the Court held that, where a party holds a unfettered right that can be exercised at any time, a limitation placed upon such right by statute or regulation is not an actual present breach. Franconia Associates, 536 U.S. at 141. Because plaintiffs in Franconia possessed an "unfettered" right to prepayment that "could be exercised at any time" at their sole discretion, the statutes and regulations enacted by the Government that limited such prepayment could only act as a repudiation. Id. The time of performance for prepayment was to be determined by the plaintiffs, not the Government, and any expression by the Government that it would not honor the plaintiffs' prepayment prior to the time of performance selected by plaintiffs' would not therefore amount to an actual full breach.

The plaintiffs in this case do not allege that they possessed an unfettered right to buy back or purchase the mortgage prior to the auction that subsequently was limited by the Government.

Instead, the plaintiffs merely assert that they had the "right to bid" on their loans. Fourth Am. Compl. ¶¶ 8, 9, 12. The time, place, and manner, and the possibility of such an auction, however, was left to the sole discretion of the Government. Thus, when the Government decided to preclude the plaintiffs from bidding on their loan, this arguably would have served as a material breach of the alleged agreement and not just a repudiation. Under plaintiffs' theory of its case, the regulations were more than a mere anticipatory breach. Plaintiffs actually were foreclosed from bidding on their loan, and their claim was ripe for adjudication.

The present case is similar to Plaintiffs in Winstar-Related Cases v. United States, 37 Fed. Cl. 174 (1994), aff'd sub. nom, Ariadne Financial Services v. United States, 133 F.3d 874 (Fed. Cir. 1998). While Plaintiffs in Winstar-Related Cases was decided prior to Franconia Associates, its treatment of repudiation was cited with approval by the Supreme Court in its Franconia Associates decision. See Franconia Associates, 536 U.S. at 145. Plaintiffs in Winstar-Related Cases involved a breach of contract claim by numerous thrift institutions/plaintiffs based upon the Government's unilateral imposition of limitations upon their specialized accounting treatment of goodwill. 37 Fed. Cl. at 178-79. This Court was asked to determine if the statute of limitations began to run from the date that the statute requiring such restrictions on the treatment of goodwill (the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")) was passed, the date that the regulations implementing FIRREA were promulgated by the Office of Thrift Supervision ("OTS"), or the date that the OTS regulations were enforced with regards to the individual thrifts. Id. at 180. While this Court determined that FIRREA served as a repudiation of the alleged contracts, the Court also determined that the OTS regulations were an actual breach of the contract, and that plaintiffs claims were ripe from the moment the

regulations took effect. Id. at 183-85. This Court held that the fact that the "thrifts were legally subject to the new capital standards that were in direct contradiction with the terms of their forbearance agreements" was enough to trigger the running of the limitations period, even if the Government had not yet taken any direct action against the thrifts. Id. at 185.

Similarly, in the present case, the promulgation of the HUD regulations implementing the Multifamily Property Disposition Act of 1994, Pub. L. No. 103-233, 208 Stat. 342 (1994), would have breached the plaintiffs' alleged contract to allow them the "right to bid" on their loan at auction. Disposition of Multifamily Projects and Sale of HUD-Held Multifamily Mortgages, 61 Fed. Reg. 11684, 11690 (Mar. 21, 1996) (codified at 24 C.F.R. § 290.31 (1996)). As of March 21, 1996, HUD no longer permitted the sale of HUD-held multifamily mortgages to the individual mortgagees. Compare 24 C.F.R. § 290.31 (1996) (limiting the sale of HUD-held multifamily mortgages to "FHA-approved mortgagees" or "State or local governments") with 24 C.F.R. § 290.53 (1995) (allowing HUD broad discretion in the disposition of HUD-held multifamily mortgages). This regulation was in direct contradiction with the terms of plaintiffs' alleged agreement.

Further, distinctions between this case and Plaintiffs in Winstar-Related Cases further support our position. Unlike in Plaintiffs in Winstar-Related Cases, the relevant regulation in this case was directly applied to plaintiffs' loan on April 26, 1996, when HUD opened the auction for plaintiffs' bundled loan and precluded the plaintiffs from bidding. Notice of Sale of HUD-Held Multifamily Mortgage Loans, 61 Fed. Reg. 18,652 (Apr. 26, 1996). Thus, even if this Court looks to the date that the regulations were specifically applied to the plaintiffs' loan, plaintiffs' claim would be time barred.

**B. Plaintiffs Mistakenly Focus On The Date Damages Were Fully Realized, Rather Than The Date Of Actual Alleged Breach**

In their opposition, plaintiffs alternately assert that the breach did not occur until damages were incurred by the plaintiffs. Accordingly, plaintiffs allege that prior to the sale of their loan at auction, no damages were incurred, and even after the auction, damages would not have been incurred until the date of foreclosure (in 1998) by the third party who had purchased plaintiffs' loan. Accordingly, plaintiffs assert that the statute of limitations cannot run until 1998, when the damages from the sale were incurred, or June 27, 1996, when the loan was actually sold.

Plaintiffs mistakenly equate the accrual date of their breach of contract claim with the date that they fully appreciated the alleged damages therefrom. This Court's statute of limitations expressly provides that suit must be filed "within six years after such claim first accrues," not when all aspects of such claim are fully known. 28 U.S.C. § 2501 (emphasis added). A cause of action accrues when "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis in original). Ignorance of all of the facts does not toll the statute of limitations, a plaintiff need only be aware of sufficient facts to be aware that a wrong occurred. Japanese War Notes Claimants Assoc. v. United States, 178 Ct.Cl. 630, 634, 373 F.2d 356, 359 (1967). Indeed, it is not necessary that the plaintiff be fully apprized of the merits of his claim or the extent of the damages before filing suit. Catawba Indian Tribe of So. Carolina v. United States, 982 F.2d 1564, 1572 (Fed. Cir. 1993); Pratt v. United States, 50 Fed. Cl. 469, 475 (2001); Alder Terrace Inc. v. United States, 39

Fed. Cl. 114, 120-21 (1997). See also Boling v. United States, 220 F.3d 1365, 1371 (Fed. Cir. 2000).

Moreover, as previously noted, plaintiffs have not asserted that they had the right to prepay their loan or withdraw their loan from the auction; they have merely asserted that they had a "right to bid." The "right to bid" was foreclosed well prior to the auction date. To the extent that plaintiffs were and could be damaged by the loss of such an insubstantial right as the "right to bid," those damages were properly accrued at the time of the alleged breach.

**C. Equitable Tolling And Equitable Estoppel Can Not Be Applied To This Case To Toll The Statute Of Limitations**

Plaintiffs next assert that, in the event that they failed to comply with the six-year statute of limitations, equitable tolling and estoppel would serve to toll the statute of limitations for them until at least September 22, 1997. However, unlike some statutes of limitations, "in the Court of Federal Claims, the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in Tucker Act." Caguas Central Fed. Savings Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir. 2000) (citing 28 U.S.C. § 1491(a)(1)). See also Block v. North Dakota, 461 U.S. 273, 287 (1983). Because the statute of limitations is an express condition of the Government's consent to be sued, this Court has no power to toll the running of the statute of limitations on equitable grounds. Soriano v. United States, 352 U.S. 270 (1957); Hart v. United States, 910 F.2d 815, 818-19 (Fed. Cir. 1990). But see Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003) (refusing to conclusively decide if 28 U.S.C. § 2501 bars equitable tolling/estoppel).

Even if this Court has the ability to toll the running of the statute of limitations, plaintiffs fail to allege Government action sufficient to support their equitable tolling or estoppel claims. Equitable tolling is only available when the lateness in filing a case is attributable to misleading Government action, while equitable estoppel requires actual evidence of affirmative governmental misconduct. See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990) (equitable tolling only available if compelling justification for delay, such as "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"); Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000) (equitable estoppel); Bailey v. West, 160 F.3d 1360, 1365 (Fed. Cir. 1998) (en banc) (equitable tolling). "Ignorance of rights which should be known is not enough" to toll the statute of limitations. Japanese War Notes, 178 Ct. Cl. at 634, 373 F.2d at 359.

Plaintiffs' evidence, however, does not demonstrate any misleading Government action or misconduct. Specifically, plaintiffs allege that the Government failed to respond to two letters Mr. Arakaki sent to HUD.[2] See Arakaki Decl. ¶¶ 9-10, Ex. A, B. The mere failure to respond, however, generally does not amount to misleading action or misconduct. See Andrews v. Principi, 351 F.3d 1134, 1138 (Fed. Cir. 2003) (equitable tolling not applicable to "'a garden variety claim of excusable neglect") (quoting Irwin, 498 U.S. at 96). Moreover, neither of these letters assert that the plaintiffs had a "right to bid" on their loan; they only express a wish to bid on such loan. As the letters do not mention plaintiffs' alleged right to bid, the failure to respond

[2] The first of these two letters is not addressed to HUD, but rather is addressed to a financial advisor at Hamilton Securities. Arakaki Decl. Ex. A. There is no evidence on the face of the document that it was sent to HUD.

to the letters cannot be misleading action or misconduct sufficient to toll the plaintiffs filing of a suit based upon the breach of a alleged agreement providing a right to bid.

A similar defect prevents plaintiffs from using the May 24, 1996 letter from HUD's Assistant Secretary for Congressional and Intergovernmental Relations to Senator Daniel Inouye to toll the statute of limitations. Arakaki Decl. Ex. C. This letter contained no information that would have prompted Mr. Arakaki to believe that the Government had not breached its agreement providing him with a "right to bid" on his loan. To the contrary, the letter clearly states that individual HUD mortgagees no longer had any right to bid on their individual loans, and erroneously asserts that plaintiffs' loan was sold in May 1996, which would have prompted a prudent plaintiff to file a law suit earlier, rather than later. To the extent that the letter provides any reassurances to the plaintiffs that the consequences of the sale of the loan may not be dire, these reassurances relate to the measure of damages from alleged breach, rather than the question of breach itself. Further, these reassurances are qualified. The letter states, in pertinent part:

> Mr. Arakaki may be reassured in learning that borrowers in default will be able to negotiate a discounted settlement or restructure the non-performing loan into a performing loan. While <u>the threat of foreclosure is always a concern</u>, good faith negotiations <u>can</u> result in a solution that works for all parties. Foreclosure is a last resort, used in a small percentage of cases. For instance, the Resolution Trust Corporation's (RTC) experience was that foreclosure occurred in only 3 percent of RTC mortgages sold.

<u>Id.</u> (emphasis added). The letter is positive in tone, but acknowledges that there may be negative consequences for plaintiffs. Finally, this letter was not prepared by HUD to send to plaintiffs, but rather was prepared for Senator Inouye to use in preparing a response to his constituent, Mr. Arakaki.

Accordingly, the statute of limitations for this case should not be tolled or made subject to equitable estoppel.

## II. **Plaintiffs Have Failed To State A Claim Upon Which Relief May Be Granted**

In our motion to dismiss, we established that plaintiffs fail to state a claim upon which relief may be granted because plaintiffs fail to show that they entered into an agreement with a Government agent with actual authority to bind the Government. Plaintiffs' opposition fails to identify any statutory or regulatory basis for the HUD employee's authority to enter into the purported oral contract at issue in this case. Accordingly, our motion to dismiss for failure to state a claim should be granted.

### A. **Plaintiffs Fail To Identify A Basis For Contractual Authority**

Plaintiffs cite to a number of sections of the HUD statute that provide the Secretary of HUD the authority to process applications, make financial assistance available, dispose of multifamily housing projects, and provide information to applicants. Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss at 8-9 (citing 12 U.S.C. §§ 1701x, 1701z-11(c), 1715,[3] 1715z-1a(b)). The sections cited, however, are irrelevant to plaintiffs' claim that Mr. David Ewing, a HUD employee, had the authority to enter into a contract with plaintiffs that permitted them a right to bid on their mortgage loan if ever sold at auction. These sections do not relate to the authority to contract or the authority to modify a mortgage loan.

[3] Plaintiffs cite to 12 U.S.C. § 1715 in their brief, which authorizes the Secretary to create statistical and economic surveys. The language quoted, however, actually appears to come from 12 U.S.C. § 1715f.

Specifically, 12 U.S.C. § 1701x provides that the Secretary is authorized "to provide . . . information, advice, and technical assistance . . . with respect to the construction, rehabilitation, and operation of low- and moderate-income housing. . . ." 12 U.S.C. § 1701x. This provision has nothing to do with contracts or the modification of mortgage loans. 12 U.S.C. § 1715 states that the Secretary is authorized to make statistical and economic surveys; this section also has no bearing on this case. 12 U.S.C. § 1715f focuses upon applications for HUD mortgage insurance, not HUD-held mortgages. 12 U.S.C. § 1715z-1a(b) permits the Secretary to provide financial assistance to owners of troubled multifamily rental or cooperative housing projects, but also does not relate to mortgage agreements.

12 U.S.C. § 1701z-11(c) gives the Secretary discretion to dispose of multifamily housing projects on a "negotiated, competitive bid, or other basis," and is at least partially relevant to plaintiffs' case. However, this section contains no delegation of authority to any HUD employees other than the Secretary. Moreover, 12 U.S.C. § 1701z-11(k) provides that "[n]otwithstanding any other provision of law, the Secretary may sell mortgages held on projects that are not subsidized or formerly subsidized projects on such terms and conditions as the Secretary may prescribe." 12 U.S.C. § 1701z-11(k). The language of this subsection grants the Secretary unbridled discretion to decide the terms and conditions of a loan sale. On March 21, 1996, the Secretary decided that he would not allow the sale of HUD-held multifamily mortgages to the individual mortgagees. Disposition of Multifamily Projects and Sale of HUD-Held Multifamily Mortgages, 61 Fed. Reg. 11684, 11690 (Mar. 21, 1996) (codified at 24 C.F.R. § 290.31 (1996)). The Secretary cannot authorize a delegation of authority that would strip himself of the ability to make such decisions or that would tie his hands to make another decision at his discretion.

Plaintiffs note that the Secretary generally may delegate his authority to HUD "officers, agents, and employees." Id. at 9 (citing 12 U.S.C. § 1701h).[4] See 12 U.S.C. § 1702. Plaintiffs, however, fail to demonstrate any actual delegation of contractual authority to Mr. Ewing. While plaintiffs point to a general housekeeping statute that provides that the Secretary generally may delegate his authority, they make no showing that any statute or regulation actually served to delegate contractual authority to Mr. Ewing. A general housekeeping statute is not sufficient to constitute a specific delegation of authority. Schism v. United States, 316 F.3d 1259, 1279-81 (Fed. Cir. 2002) (en banc).

Indeed, as we have shown in our motion to dismiss, the regulations explicitly limit the authority of HUD employees to execute oral modifications of mortgages.[5] The regulations provide that any mortgage shall be "[e]xecuted on a form approved by the Commissioner for use in the jurisdiction in which the property covered by the mortgage is situated which form shall not be changed without the prior written approval of the Commissioner." 24 C.F.R. § 221.511 (1991). This regulation implicitly requires mortgage agreements to be written documents, because the regulation requires mortgages to be "[e]xecuted on a form" and requires "prior written approval" of any changes to this form. Id. Moreover, because the regulation explicitly states that the form shall be one which is "approved for use in the jurisdiction in which the

[4] Plaintiffs cite to 12 U.S.C. § 1701h in their brief, which authorizes the Secretary to establish advisory committees. The language quoted, however, appears to actually come from 12 U.S.C. § 1702.

[5] While our briefs characterize the lack of a written agreement as required by regulation as an authority issue, this Court alternately has held that such failure to comply with regulations may evidence a lack of mutuality of intent. See, e.g., Eliel v. United States, 18 Cl. Ct. 461, 469 (1989)("[o]ral assurances and predictions do not establish an intent to be bound in the absence of compliance with applicable federal regulations"), aff'd, 909 F.2d 1495 (Fed. Cir. 1990) (table).

property covered by the mortgage is situated," the Nevada statute of frauds would be applicable to the mortgage agreement at issue here. Id. Nevada requires contracts relating to "any interest in land" to be in writing. Nev. Rev. Stat. §§ 111.205, 111.210; Summa Corp. v. Greenspun, 607 P.2d 569, 572 (Nev. 1980) (holding that a deed of trust is a conveyance of land within the statute of frauds).

Plaintiffs fail to meet their burden of demonstrating that they entered into a contract with a Government employee with the authority to do so.

### B. Plaintiffs Cannot Allege A Separate Implied In Fact Contract Where There Is A Related Express Contract

In an effort to avoid this express prohibition of unapproved oral, modifications to mortgages, plaintiffs allege in their opposition that the purported agreement at issue was actually an independent, implied in fact contract, rather than a modification of the mortgage. See Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss at 9. However, it is well settled that "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990) (citing ITT Fed. Support Services v. United States, 531 F.2d 522, 528 n.12, 209 Ct. Cl. 157 (1976)). See also Habermann v. United States, 26 Cl. Ct. 1405, 1411 n.3 (1992); Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 673, 428 F.2d 1241, 1255 (1970). Moreover, "no citation is necessary to support the vitality of the parole evidence rule: barring certain limited exceptions (*e.g.*, fraud), a party to a written contract cannot supplement or interpret that agreement with oral or parol statements that conflict with, supplant,

or controvert the language of the written agreement itself." Schism v. United States, 316 F.3d at 1278.

The parties agreed to be bound by an written, express mortgage agreement. It is impossible to sever the plaintiffs' alleged implied in fact contract from this written, express mortgage agreement. Thus, to the extent that plaintiffs claim that they entered into an oral, implied in fact contract, their claim must be denied.

**CONCLUSION**

For these reasons, the United States respectfully requests that this Court grant our motion to dismiss the plaintiff's complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-1011
Attorneys for Defendant

Of Counsel:
BATINA R. WILLS
Office of Litigation
Department of Housing and
Urban Development

April 5, 2004

CERTIFICATE OF FILING

I hereby certify that on this 5th day of April, 2004, a copy of the foregoing Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that this 5th day of April, 2004, I caused to be served by United States mail (first class, postage prepaid) copies of "DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" addressed as follows:

R. Patrick Jaress
Jaress & Leong
737 Bishop Street
Suite 2920
Honolulu, Hawaii 96813

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice