No. 03-1874C
Judge Hewitt

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EWARD T. ARAKAKI and HELEN ARAKAKI,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FILED ON JANUARY 16, 2004

DECLARATION OF R. PATRICK JARESS

EXHIBITS A and B

CERTIFICATE OF FILING

R. PATRICK JARESS, ESQ.
JARESS & LEONG, AAL, ALC
737 Bishop Street, Suite 2920
Honolulu, Hawaii 96813
Tel: (808) 531-3151

Attorney for Plaintiff

PLAINTIFF'S SUR-REPLY IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FILED ON JANUARY 16, 2003

The controlling law in this case is Franconia Associates v. United States, 536 U.S. 129 (2002).

In Franconia, the government entered into a loan agreement that allowed the borrower to prepay a government loan.[1] The government later passed a law prohibiting the prepayment of such loans. The question in Franconia is identical to the present case: When did the 6 year statute of limitations began to run: upon repudiation or upon actual breach? In Franconia, the government argued the 6 year statute of limitations began to run when the new law was enacted that repudiated its obligation to accept prepayments. On the other hand, the borrower claimed the statute of limitations began to run when the government actually failed to perform by not accepting a tendered prepayment of a loan. The U.S. Supreme Court agreed with the borrower and held the new law prohibiting the prepayment was a repudiation of the existing prepayment rights, but, unless the borrower (promisee) decided otherwise, the cause of action did not accrue until the government (promisor) actually breached the prepayment provision by not accepting a tendered prepayment.

The Supreme Court's reasoning is rooted in traditional contract law.[2] Under contract law:

> [T]he promisor's renunciation of a "contractual duty before the time fixed in the contract for ... performance" is a repudiation. Such a repudiation ripens into a breach prior to the time for performance only if the promisee "elects to treat it as such. . . . [R]epudiation "give[s] the promisee the right of electing either to ... wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract.

[1] Prepayment is a valuable right. When the market rate of interest drops below the rate paid the government the borrower is able to refinance elsewhere at a lower rate and prepay the government loan.

[2] "When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." 536 U.S. 121, 141 (2002)

536 U.S. at 143 (Emphasis in original) (citations omitted)

The Supreme Court reviewed the reasons contract law gives the promisee the option to immediately sue upon repudiation or to wait until the actual breach:

> [T]he plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation; and he would be so penalized if the statutory period of limitation is held to begin to run against him immediately. Corbin, Contracts § 989, at 967
>
> [I]t seems reasonable to allow an option to the injured party, either to sue immediately, or to wait till the time when the act was to be done, ... which may be advantageous to the innocent party.
>
> [If the law required a commencement of suit upon repudiation] the Government would thus find itself defending against highly speculative damages claims in a profusion of lawsuits

536 U.S. at 143

In the present case, the Reply attempts to distinguish the Franconia case using the very same argument the Supreme Court specifically rejected in Franconia. The Reply Memorandum argues at page 4:

> [W]hen the Government decided to preclude plaintiffs from bidding on their loan, this arguably would have served as a material breach of the alleged agreement and not just a repudiation.

The Supreme Court already rejected this argument. It held the new passage of the law only repudiated the government's promise to accept prepayment- it is not in of itself a present breach by the promisor. 536 U.S. at 142. The Court went on to say:

> [The law prohibiting prepayment] conveyed an announcement by the Government that it would not perform as represented in the promissory notes if and when, at some point in the future, petitioners attempted to prepay their mortgages.

Id. at 143 (Emphasis added)

It is , the failure by the government to accept prepayment was when tendered establishes the immediate breach:

> Unless [the promisee] treated [the law repudiating the prepayment rights] as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance [of accepting the payment] become due.

Id.

Therefore, it's abundantly clear the Supreme Court emphatically rejected the Reply's argument that a present breach occurs upon repudiation of a contract right rather than upon the later failure to perform.

The fact situation in this case is almost identical to those in Franconia. In the Franconia case the government passed a law that, in violation of its agreements, it would no longer accept prepayments on loans. This court deemed the new law a repudiation, with a present breach occurring only when the prepayment was rejected. In this case the government passed a rule that it would no longer accept bids from mortgagors on their own loan, in violation of its agreements. Therefore the new rule should be deemed a repudiation, with the present breach not occurring until the tender of Plaintiffs' bid was rejected.

Therefore, the Reply turns for support to a pre-Franconia decision called Winstar. In that case, the court recognized the doctrine of anticipatory repudiation, and, in fact, Franconia cited it for that proposition. However, Winstar then went on to then hold that a present breach and repudiation simultaneously occurred upon the passage of the law repudiating the government's contractual obligations.

The Supreme Court did not cite Winstar for that proposition and it may not remain good law today.

In any event, the situation in Winstar is far different from both the facts in Franconia and the facts in this case, and thus can be distinguished. In Winstar, the government had contracts with lenders encouraging them to merge with weak lenders and agreeing to recognize otherwise ineligible "goodwill" as an asset of the merged companies. Later the government passed legislation prohibiting the inclusion of the goodwill as an asset. The court held that the passage of the law was a present breach because it immediately affected the balance sheets of the lenders and the amount of loans they could make- which is purportedly based on a balance sheet test. In neither Franconia nor the present case did any such immediate damage occurs at the time the new laws were passed. Thus, Winstar is not controlling law in this case under any circumstances.

THE APRIL 26, 1996 NOTICE OF SALE

Attached as Exhibit A is a copy of the Federal Register pages referred to in the Reply at page 5. It argues this is the simultaneous date of notice of repudiation and of Present breach if the Court applies Winstar. But even this argument falls apart. Nothing in the notice identifies the Plaintiffs' loan. Instead, it refers generically to "the intention to sell approximately 157 . . . . loans." Furthermore, HUD reserved all of its rights to add or delete any loan from the sale, to "reject any and all bids," and "to terminate the sale at any time." Finally, there wasn't even a firm auction date. It merely placed the date as "expected in the middle of June 1996". See, page one.

Therefore, if even this notice was the document that triggered the repudiation of Plaintiffs' loan, it establishes how tentative the sale was and why the doctrine of repudiation is particularly applicable in this case. At any time the government could specifically change its mind before the bid and pull Plaintiff's loan off the auction or allow Plaintiffs to bid.

Attached to Plaintiff's Memorandum in Opposition, as Exhibit C, is a letter from HUD to Hawaii's Senator dated May 24, 1996 that answered an inquiry from the senator dated May 8, 1996, about what was taking place regarding Plaintiffs' loan. Then, it states that "you may be interested in knowing that this loan was included in the Department's Structured Finance Sale of Partially assisted Mortgage Loans on May 23, 1996." This purported sale took place May 23, 1996, the day before HUD sent the letter to Hawaii's Senator.

The letter from HUD went on to say while Plaintiff "Arakaki was initially told that if the loan was ever sold he would be able to bid on it", but that HUD essentially changed its mind and wouldn't allow a bid by Plaintiff. Yet, HUD went on that Plaintiff "may be reassured" that he will be able to negotiate a settlement with HUD because it was still involved after the sale. (Page 2). That, of course, didn't happen. This led to another letter (Exhibit D, again to the Senator from Hawaii, stating that the May 24, 1996 letter giving the reassurance, "was not accurate" about being able to negotiate toward losses. It also stated for the first time, that the sale didn't take place in May, but actually took place on June 27, 1996.

PLAINTIFF'S AGREEMENT WITH HUD
WAS NOT PART OF THE MORTGAGE AGREEMENT

The Defendant's Reply Memorandum argues the agreement in dispute between Plaintiff and HUD is the part of or a modification of the mortgage agreement and goes on endlessly about mortgage law and mortgage negotiations, "related express contract" doctrine and so forth.

In fact, the agreement between Plaintiff and HUD was not part of the mortgage agreement and was entered into before HUD ever became the mortgagor and before Plaintiffs ever became the mortgagees. See ¶ 1-16 of the Complaint attached hereto as Exhibit B. It's quite straight forward. At the time of the agreement, HUD was only an insurer of a loan at a 3rd party bank in which a 3rd party borrower was in default.

The pleading allege HUD induced Plaintiffs' into investing $500,000 cash and buying the 72 unit apartment property, secured by a high interest mortgage by promising the three points described in the Complaint.

Plaintiffs paid the $500,000 and otherwise fully performed, but HUD did not. It changed its mind on one of the things it promised to do. It admits it made the promises but argues it has the right to renege on them.

Pursuant to Order of the Court, Plaintiff at this time, renews its motion for the court to hear oral arguments on the Motion to Dismiss.

DATED: Honolulu, Hawaii, May 13, 2004.

R. PATRICK JARESS
Attorney for Plaintiffs
(808) 531-3151
(808) 531-6064

CERTIFICATE OF FILING

I hereby certify that on this 13th day of May, 2004, a copy of the foregoing Plaintiff's Sur-Reply In Opposition To Defendant's Motion To Dismiss Filed On January 16, 2004 was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that this 13th day of May, 2004, I caused to be served by Unites States mail (first class, postage prepaid) copies of the forgoing addressed as follows:

Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St. NW
Washington, D.C. 20530

DATED at Honolulu, Hawaii, May 13, 2004

R. PATRICK JARESS