NOTICES

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

[Docket No. FR-4071-N-01]

Office of the Assistant Secretary for Housing-Federal Housing Commissioner; Notice of Sale of HUD-Held Multifamily Mortgage Loans

Friday, April 26, 1996

***18652** AGENCY: Office of the Assistant Secretary for Housing-Federal Housing Commissioner, HUD.

ACTION: Notice of sale of mortgage loans.

SUMMARY: This notice announces the Department's intention to sell approximately 157 unsubsidized multifamily mortgage loans [FN1] without Federal Housing Administration (FHA) insurance. Almost all of the mortgages are secured by partially assisted projects, defined as projects that receive Section 8 project-based rental subsidies for up to 50% of the units. The mortgages will be offered through a trust to eligible institutional investors on a private placement basis. The form of the disposition will be a structured financing.

FN1 None of the mortgage loans in this sale are subject to the settlement agreements in Walker v. Kemp, No. C-87-2628 (N.D. Cal.). See generally, Walker v. Pierce, 665 F. Supp. 831 (N.D. Cal. 1987) (granting preliminary injunction).

DATES: Bidding Materials are available to eligible bidders. Closing is expected in the middle of June, 1996.

ADDRESSES: Bidding Materials are available from FHA's Financial Advisor, Hamilton Securities Advisory Services, Inc. ("Hamilton") 7 Dupont Circle, N.W., 2nd Floor, Washington, DC 20036. Bidding Materials will be made available only to parties who complete a Confidentiality Agreement and a Bidder Qualification Statement and are deemed eligible bidders by Hamilton, pursuant to criteria established by FHA. To obtain a Confidentiality Agreement and a Bidder Qualification form, contact Hamilton at (202) 496-6700. Hamilton will forward Bidding Materials to eligible bidders via overnight delivery service. Asset Review Files (ARFs) for the mortgage loans included in the Partially Assisted Sale are available for review by eligible bidders who visit the due diligence facility located at 1140 Connecticut Avenue, N.W., Suite 302, Washington, DC 20036. Alternatively, ARFs can be ordered from Williams, Adley & Company, LLP at the above address. To schedule a visit to the due diligence facility or to order ARFs, eligible bidders should contact Mr. Ray Curtis (or Mr. Henry Kiema) at (202) 496-0965. The due diligence facility will be

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT A

open between the hours of 9:00 a.m. and 6:00 p.m., Monday though Friday. The facility will close on May 14, 1996. (The above telephone numbers are not toll-free numbers.)

FOR FURTHER INFORMATION CONTACT: Audrey Hinton, Associate Director for Program Operations, Office of Multifamily Asset Management and Disposition, Office of Housing, Room 6160, Department of Housing and Urban Development, 451 Seventh Street, S.W., Washington, DC 20410; telephone (202) 708-3730, Ext. 2691. Hearing or speech-impaired individuals may call (202) 708-4594 (TTY). These are not toll-free numbers.

SUPPLEMENTARY INFORMATION: The Department announces its intention to dispose of approximately 157 mortgage loans ("Mortgage Loans"), almost all of which are secured by multifamily projects that are subject to project-based Section 8 Housing Assistance Payments ("HAP") contracts, providing rental assistance, on behalf of eligible low-income households, for up to 50% of the units in each project ("Partially Assisted Projects"). Almost all of the Mortgage Loans have experienced varying levels of delinquency; some are subject to provisional workout agreements.

The Mortgage Loans will be sold to a special purpose Delaware business trust ("Trust") without FHA insurance. The Trust will be formed by the successful Trust Certificate/Servicer bidder and an Owner Trustee. The Trust will issue debt in the form of floating rate bonds ("Bonds") and equity interests in the form of a Class A Trust Certificate and Class B Trust Certificates. Eligible bidders will be afforded an opportunity to bid competitively on the Bonds and the Class A Trust Certificate, each of which will be sold separately to a single bidder. The successful Class A Trust Certificate Bidder, an affiliate thereof, or a non-affiliated entity having a contractual relationship with the Class A Trust Certificate Bidder will act as Servicer for the Trust. The Servicer must be approved by the participating rating agencies, Standard & Poor's Ratings Group and Fitch Investors Services.

The Department will transfer all right, title and interest to the Mortgage Loans to the Trust and will have no control over the servicing or disposition of the Mortgage Loans by the Trust. In consideration for the sale of the Mortgage Loans to the Trust, the Department will receive the proceeds from the issuance of the Bonds and Class A Trust Certificate, net of certain amounts, and the Class B Trust Certificates, representing beneficial interests in the Trust. The Department may transfer all or part of the Class B Trust Certificates to one or more investors in the future, and without further notice. Holders of Class B Trust Certificates will have a passive role with respect to the Trust.

## The Bidding Process

The Bidding Materials describe in detail the procedure for participating in the Partially Assisted Sale and include summary information, bid forms, drafts of proposed transaction documents, information on each of the Mortgage Loans, such as the unpaid principal balance and interest rate, and a Preliminary Private Placement Memorandum for the Bonds. Also, the Bidding Materials include a computer diskette with general portfolio information and selected data fields on each Mortgage Loan.

Hamilton will distribute the Bidding Materials over a period of approximately 8

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

weeks prior to the sale. The Bidding Materials will be supplemented periodically, up to the sale. Bidding Materials are available to eligible bidders from Hamilton, as described above.

Bidders must be eligible institutional investors in order to have their bids considered. FHA's Financial Advisor will determine whether a bidder is qualified on the basis of the information provided by each bidder in its Qualification Statement. Bidders interested in purchasing the Bonds will be required to submit two bids: an Indicative Bond Bid and a Final Bond Bid, in accordance with the Bid Instructions contained in the Bidding Materials. Bidders on the Class A Trust Certificate will be provided with information regarding the Indicative Bond Bids, prior to submitting their bids. Eligible Final Bond Bidders will be informed of the identity of the successful Class A Trust Certificate Bidder (and thus the Servicer) and its winning bid prior to the date that the Final Bond Bids are due.

The Bidding Materials require Bond and Certificate bidders to make certain deposits, and provide for the retention of deposits, in whole or in part, by FHA under various circumstances described in the Bidding Materials. Further, the Bidding Materials require the winning Bond bidder and Class A Certificate bidder to pay various settlement expenses and other transaction costs.

FHA Reservation of Rights

The Department reserves the right to delete any Mortgage Loan from the Partially Assisted Sale, as provided for in the Bidding Materials, for any reason and without prejudice to its right to ***18653** include any deleted Mortgage Loan in a future sale.

The Department reserves the right, at its sole discretion and for any reason whatsoever, to reject any and all bids. The Department reserves the right to terminate the Partially Assisted Sale at any time prior to the Class A Trust Certificate bid date.

Timely Bids and Deposits

Each bidder assumes all risk of loss relating to its failure to deliver, or cause to be delivered, on a timely basis and in the manner specified in the Bidding Materials, each bid form and deposit required.

Winning Bids

The winning Class A Trust Certificate bid will be based upon the highest dollar price per percentage interest in the Trust. The winning Bond bid will be based on the lowest "weighted-average spread." If there are two bids with the same dollar price percentage, the successful bid will be the bid that provides the greater amount of proceeds to FHA. In the event of a tie, i.e., there is more than one winning bidder on the Bonds or the Class A Trust Certificate, a "best and final" round will be held. If all of the bidders involved in the tie situation are unwilling to change their bids or they remain tied after the "best and final" round, FHA will determine the winning bidder by lottery, provided, however, that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

with respect to tie Bond bids, FHA reserves the right to choose a single-class bid over any multiple-class bid if such circumstances exist.

Due Diligence Facility

During the distribution period for Bidding Materials, the due diligence facility will be open to eligible bidders. The address of the facility is specified above. A non-refundable $720 fee is required, which entitles an eligible bidder to access to the facility, and can be applied toward the cost of an individual ARF. The files contain title information, mortgage and financial documents, Section 8 Housing Assistance Payments (HAP) contracts, site inspection reports and environmental reports, among other pertinent information. The cost of each ARF is $180, plus shipping costs ($20 for the first ARF and $7 for each additional ARF ordered). The Department reserves the right to revise this fee schedule, without prior notice, to recover its copying, shipping and handling costs.

Ineligible Bidders

Notwithstanding a bidder's qualification as an eligible institutional investor and approved servicer, the following individuals and entities (either alone or in combination with others) are ineligible to bid on the Class A Trust Certificate and Bonds:

(1) An entity debarred from doing business with the Department pursuant to 24 CFR part 24;

(2) An entity controlled by an FHA employee or by a member of such employee's household;

(3) An entity which employs or uses the services of an FHA employee involved in the Partially Assisted Sale other than in such employee's official capacity;

(4) An entity employing the services of an FHA employee to assist in the preparation of a bid for the Class A Trust Certificate or Bond;

(5) Any contractor, subcontractor and/or consultant (including any agent of the foregoing) who performed or is performing services for, or on behalf of, FHA in connection with the Partially Assisted Sale or any affiliate of such contractor, subcontractor, consultant or agent;

(6) An entity using the services for its Class A Trust Certificate bid or Bond Bid, of an employee or former employee of an entity listed in (5) above; and

(7) In addition to the entities described in (1) through (6) above, the following entities are ineligible to bid on the Class A Trust Certificate:

(a) An entity that served as a loan servicer or performed other services for, or on behalf of, FHA, with respect to any of the Mortgage Loans at any time during the two-year period prior to May 13, 1996, or any affiliate thereof;

(b) Any Mortgagor of any of the Mortgage Loans or an entity affiliated with any such Mortgagor.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Mortgage Sale Policy

General

Pursuant to Section 203(k)(4) of the 1978 Housing and Community Development Amendments of 1978, as amended, 12 U.S.C. 1701z-11(k)(4), the Secretary is expressly authorized to sell mortgages on unsubsidized projects (which include partially assisted projects) on any terms and conditions the Secretary prescribes. The mortgage sale rules are codified at 24 CFR part 290, subpart B (see final rule published March 21, 1996 at 61 FR 11684, 11690- 11691 for effect on April 22, 1996 [FN2]). That final rule includes mortgage sale-related amendments to part 290 made by an interim rule published February 6, 1996 at 61 FR 4580 for effect on March 7, 1996. These amendments apply to the Partially Assisted Sale, among other mortgage sales. Interested parties are advised to review these rules.

FN2 The March 21, 1996 final rule revised 24 CFR part 290 in its entirety, and it amended and renumbered the mortgage sale regulations.

This notice describes the implementation of the Department's statutory authority and its regulations in the context of the Partially Assisted Sale. For the reader's convenience, parallel citations are provided to subpart I (including the interim rule published on February 6, 1996 and made effective March 7, 1996) and subpart B (the mortgage sale rules as republished and renumbered on March 21, 1996).

Tenant Protections in Partially Assisted Sale

The interim rule, published on February 6, 1996, prescribes certain loan sale terms which are designed to safeguard tenant interests, and assure the continuation of project-based and tenant-based Section 8 rental subsidy contracts.

With respect to Mortgage Loans that are delinquent at the time the Department offers them for sale to the Trust, the transaction documents will impose certain affirmative obligations on the Trustee and Servicer. 24 CFR 290.112 and 290.114(d) (renumbered as 24 CFR 290.37 and 290.39(d) in the March 21, 1996 final rule). The transaction documents will provide that certain covenants, running with the land, will be executed and recorded as a condition of a loan restructuring or a discounted pay-off of the mortgage indebtedness, or will be incorporated in a foreclosure deed as well as in any deed-in-lieu of foreclosure that may be accepted. The first covenant will obligate a future project owner (including the Trust) to assume any outstanding project-based Section 8 HAP contract. (However, the assignment of a Section 8 contract will continue to be subject to HUD or the Section 8 HAP contract administrator's prior approval, as applicable.) A related covenant will obligate a future project owner (including the Trust) to assume tenant-based federal rental subsidies (vouchers or certificates) in use at the property at the time of sale or other transfer of ownership of a property. Both covenants will expire on the date the last executed Section 8 HAP contract for the project expires. A third covenant will prohibit current and future owners from discriminating against certificate and voucher holders. The nondiscrimination covenant will expire on the original maturity date of the Mortgage Loan.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

To implement § 290.114(c) of the interim rule (renumbered as § 290.39(c) in the March 21, 1996 final rule), the ***18654** Department is conditioning its assignment of Mortgage Loans on Partially Assisted Projects that are current when the Department offers them for sale to the Trust. Owners of such projects will be prohibited from discriminating against certificate and voucher holders. This condition will expire on the date the Mortgage Loan is satisfied. With respect to current Mortgage Loans on Partially Assisted Projects, § 290.114(c) does not compel or necessitate covenants that are recorded and run with the land.

The nondiscrimination obligation with respect to delinquent Mortgage Loans on all projects and current Mortgage Loans on Partially Assisted Projects will be enforceable by certificate and voucher holders, as well as by public housing authorities that are Section 8 HAP contract administrators for relevant projects. The covenant regarding assumption of project-based and tenant-based Section 8 HAP contracts will be enforceable by the Section 8 HAP contract administrator for the project.

Further, with respect to Mortgage Loans on Partially Assisted Projects that are delinquent at the time they are offered for sale to the Trust, the transaction documents will prohibit the Trust and the Servicer, and their successors and assigns, from foreclosing in a manner that interferes with existing residential leases. This condition will also be incorporated into the assignment of individual Mortgage Loans with respect to these projects. Section 290.112(b) of the interim rule (renumbered as § 290.37(b) in the March 21, 1996 final rule) limits this lease protection to Section 8 assisted tenants. The Department invited comment on a proposal to add protections for unassisted tenants. (See preamble discussion at 61 FR 4582, February 6, 1996.) For the Partially Assisted Sale, the transaction documents will include a non-interference obligation with respect to both assisted and unassisted tenants. For unassisted tenants, however, this protection will continue for the lesser of the remaining term of the tenant's lease or one year.

Other Mortgage Sale Rule Provisions

Pursuant to § 290.110 (see 24 C.F.R. part 290, revised April 1, 1995; renumbered as § 290.35 in the March 21, 1996 final rule) loans on unsubsidized projects (which include the partially assisted portfolio) may be sold without FHA insurance. The Department has decided to sell the Mortgage Loans in the Partially Assisted Sale to the Trust without FHA insurance.

Section 290.110 (renumbered as § 290.35 in the March 21, 1996 final rule) also provides for the exclusion of certain delinquent unsubsidized mortgages from sale where it appears that: (1) foreclosure is unavoidable, and (2) the project is occupied by very low-income tenants who are not receiving housing assistance and would be likely to pay rent in excess of 30 percent of their adjusted monthly income if the mortgage were to be sold and foreclosed. The Department's interpretation of this provision is set forth in the preamble to the February 6, 1996 interim rule (see 61 FR 4580-4581). The Department has made an administrative determination that the Mortgage Loans to be offered in the Partially Assisted Sale do not meet the criteria for exclusion.

Other Federal Requirements

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

As part of the reinvention process, the Department is streamlining its regulations by removing redundant and, therefore, unnecessary regulations. For this reason, the Department removed a mortgage sale rule provision, 24 C.F.R. 290.102 (published on March 2, 1995), in the final part 290 regulations published on March 21, 1996.

Any recipient of federal financial assistance, such as Section 8 rental assistance, is subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d-1, see also 24 CFR part 1; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, see also 24 CFR part 8; and executive orders pertaining to civil rights. All multifamily rental housing owners and lenders, among others, must comply with Title VIII of the Civil Right Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. 3600-3620, see also 24 CFR part 100.

Competitive Sale Method; Structured Finance Disposition

The Department will use competitive methods for recovering the value of the Mortgage Loans to be transferred to the Trust, through an auction of debt securities secured by the cash flow of the Mortgage Loans and beneficial equity interests in the Trust. This is consistent with § 290.100 (renumbered as 290.30 in the March 21, 1996 final rule) which provides that mortgages on unsubsidized projects (which include the partially assisted portfolio) shall be sold on a competitive basis.

In light of the experience of other agencies, including the Resolution Trust Corporation, and its own analysis, the Department believes that a structured finance disposition will maximize recovery on the Mortgage Loans in the Partially Assisted Sale to the benefit of the American taxpayer. A structured finance is expected to yield a higher return than a whole loan sale for a variety of reasons. Capital markets provide greater liquidity, and should enhance the Department's proceeds from the Bonds and Class A Certificate. Also, HUD's capture of a percentage of the residual value of these assets through the Class B Certificates mitigates any losses in the portfolio's value arising from market discounting due to the future expiration of project-based Section 8 HAP contracts or because of the market's unfamiliarity with the Section 8 program generally, or partially assisted projects in particular. Moreover, HUD's retention of this passive interest will enable it to share any increase in the loan portfolio's value after the sale due to favorable market conditions.

In addition, a structured finance disposition advances the Department's public policy goals without adding administrative burdens. The Department has an opportunity to develop a set of transactional documents that create accountability by the mortgage purchaser and its agents for compliance with the mortgage sale rules. (See Mortgage Sale Policy, Tenant Protections in Partially Assisted Sale.) In this transaction, the Servicer will be responsible for the project owner's execution and recordation of the covenants required in connection with a loan restructuring or discounted pay-off of a delinquent mortgage. The Servicer also must use a deed that incorporates the covenants required in the event of foreclosure or acceptance of a deed-in-lieu of foreclosure. The Trustee will oversee the Servicer's performance of such duties. If the Servicer fails to carry out these duties, the Trustee will have a contractual remedy of reducing the Servicer's fees by fifty thousand dollars ($50,000) for each breach, which sum will be paid to HUD. This remedy, which creates financial disincentives for non-compliance with the rules, would not be available in a whole loan sale without

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

allocation of the Department's limited resources. The foregoing is in addition to any other remedies that may be available to enforce the Servicer's duties.

A further advantage of a structured finance is the unique opportunity it presents for interaction between the Section 8 HAP contract administrators and the Servicer with respect to Section 8 matters. The transactional documents will obligate the Servicer to report to the Section 8 HAP contract administrator on project sales, loan restructurings, refinancings, and foreclosures, among other events. The Servicer will receive ***18655** from the HAP contract administrator any standard notices of an owner's breaches of Section 8 HAP contracts, and have an opportunity to cure. Further, the Servicer will be required to report periodically to the Trustee and the holders of the Class A and Class B Certificates on violations of Section 8 HAP contracts and on the recordation of required covenants. A whole loan sale would not lend itself to such a portfolio-based system of reporting and interaction with respect to Section 8 HAP contracts.

In sum, a structured finance, through the Servicer and the Trust, provides the opportunity not available in a whole loan sale to engineer accountability for compliance with the mortgage sale rules designed to protect tenants, and to maximize the Department's financial return.

Disposition of Project Reserves and Escrows

The mortgagor's obligation to make monthly payments to a replacement reserve account is required by the FHA Regulatory Agreement, which will be terminated at the time the Mortgage Loans are sold to the Trust (although the Regulatory Agreement will be reinstated in the event a Mortgage Loan is repurchased by FHA from the Trust). The Department will review the status of reserve for replacement accounts and other miscellaneous escrows and accounts it controls for each Mortgage Loan and related project, and make a disposition decision prior to the Partially Assisted Sale. Fund balances will either be: (i) transferred to the Trust; (ii) applied toward any outstanding delinquency under the Mortgage Loan; (iii) paid out to the mortgagor, or (iv) in the case of certain Section 8 replacement reserves, maintained by the Section 8 HAP contract administrator as described below.

In general, real estate tax and hazard insurance escrows, if any, will be transferred to the Trust at closing and administered by the Servicer. With respect to delinquent Mortgage Loans, fund balances in reserve for replacement accounts generally will be applied to the amounts owed to the Department under the Mortgage Loans. Repair reserves independently created by provisional workout agreements will be transferred to the Trust at closing.

Certain HAP Contracts for certain Section 8 New Construction and Substantial Rehabilitation projects ("New Regulation Projects") independently require the funding and maintenance of a replacement reserve ("Section 8 Reserve"). With respect to these projects, Section 8 reserves will continue to be required after the sale in accordance with the HAP contracts. The Department does not plan to apply available Section 8 Reserve funds held for such projects, in the case of delinquent Mortgage Loans, or release these funds to the mortgagor, in the case of current Mortgage Loans. The Section 8 HAP contract administrator (which presently is HUD) will retain and administer such accounts for after the sale.

Scope of Notice

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

This notice applies to the FHA Partially Assisted Sale, and does not establish the Department's policy for the sale of any other mortgage loans.

Dated: April 23, 1996.

Nicolas P. Retsinas,

Assistant Secretary for Housing-Federal Housing Commissioner.

[FR Doc. 96-10444 Filed 4-25-96; 8:45 am]

BILLING CODE 4210-27-P

61 FR 18652-01, 1996 WL 199422 (F.R.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works