WHEN RECORDED RETURN TO: Paul Renno, Office of Area Counsel
Department of Housing & Urban Development
One Embarcadero Center, Suite 1600
San Francisco, CA 94111

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
FEDERAL HOUSING ADMINISTRATION

# REGULATORY AGREEMENT FOR INSURED MULTI-FAMILY HOUSING PROJECTS

*(With Section 8 Housing Assistance Payments Contracts)*

Project No.: 125-35100-PM-L8 HAP CONTRACT NO.: SF 1846

Mortgagee SEAFIRST MORTGAGE CORPORATION, a Washington corporation

Amount of Mortgage Note $2,500,000.00 Date April 1, 1983

Mortgage: Recorded: Concurrently Herewith State Nevada County Clark Date April 1, 1983

XXXX XXXX

Originally endorsed for insurance under Section 221(d)(4) of the National Housing Act.

This Agreement entered into this 1st day of April, 19 83, between LAKE MEAD VILLA APARTMENTS, a Nevada General Partnership whose address is 3651 South Lindell Road, Suite A Las Vegas, Nevada 89103 their successors, heirs, and assigns *(jointly and severally, hereinafter referred to as Owners)* and the undersigned Secretary of Housing and Urban Development and his/her successors *(hereinafter referred to as Secretary)*.

In consideration of the endorsement for insurance by the Secretary of the above described note or in consideration of the consent of the Secretary to the transfer of the mortgaged property or the sale and conveyance of the mortgaged property by the Secretary, and in order to comply with the requirements of the National Housing Act, as amended and the Regulations adopted by the Secretary pursuant thereto, Owners agree for themselves, their successors, heirs and assigns, that in connection with the mortgaged property and the project operated thereon and so long as the contract of mortgage insurance continues in effect, and during such further period of time as the Secretary shall be the owner, holder or reinsurer of the mortgage, or during any time the Secretary is obligated to insure a mortgage on the mortgaged property:

1. Owners, except as limited by paragraph 20 hereof, assume and agree to make promptly all payments due under the note and mortgage.

2. (a) Owners shall establish or continue to maintain a reserve fund for replacements by the allocation to such reserve fund in a separate account with the mortgagee or in a safe and responsible depository designated by the mortgagee, concurrently with the beginning of payments towards amortization of the principal of the mortgage insured or held by the Secretary of an amount equal to $790.42 per month unless a different date or amount is approved in writing by the Secretary. Such fund, whether in the form of a cash deposit or invested in obligations of, or fully guaranteed as to principal by, the United States of America shall at times be under the control of the mortgagee. Disbursements from such fund, whether for the purpose of effecting replacement of structural elements, and mechanical equipment of the project or for any other purpose, may be made only after receiving the consent in writing of the Secretary. In the event of a default in the terms of the mortgage, pursuant to which the loan has been accelerated, the Secretary may apply or authorized the application of the balance in such fund to the amount due on the mortgage debt as accelerated.

   (b) Where Owners are acquiring a project already subject to an insured mortgage, the reserve fund for replacements to be established will be equal to the amount due to be in such fund under existing agreements or charter provisions at the time Owners acquire such project, and payments hereunder shall begin with the first payment due on the mortgage after acquisition, unless some other method of establishing and maining the fund is approved in writing by the Secretary.

   (c) If Owners are a nonprofit entity or a limited distribution mortgagor, Owners shall establish and maintain, in addition to the reserve fund for replacements, a residual receipts fund by depositing thereto, with the mortgagee, the residual receipts, as defined herein, with 60 days after the end of the semiannual or annual fiscal period within which such receipts are realized. Residual receipts shall be under the control of the Secretary, and shall be disbursed only on the direction of the Secretary, who shall have the power and authority to direct that the residual receipts, or any part thereof, be used for such purpose as he may determine.

3. Real property covered by the mortgage and this Agreement is described in Schedule A attached hereto.

4. Except as provided in Paragraph 5 hereof:

   (a) Owners shall make dwelling accommodations and services of the project available to occupants at charges not exceeding those established in accordance with a rental schedule approved in writing by the Secretary. Accommodations shall not be rented for a period of less than thirty (30) days, or, unless the mortgage is insured under Section 231, for more than three years. Commercial facilities shall be rented for such use and upon such terms as approved by the Secretary. Subleasing of dwelling accommodations, except for subleases of single dwelling accommodations by the tenant thereof, shall be prohibited without prior written approval of Owners and the Secretary and any lease shall so provide. Upon discovery of any unapproved sublease, Owners shall immediately demand cancellation and notify the Secretary thereof.

   (b) Upon prior written approval by the Secretary, Owners may charge to and receive from any tenant such amounts as from time to time may be mutually agreed upon between the tenant and the Owners for any facilities and/or

(2) the segregat..n of:

(i) An amount equal to the aggregate of all special funds required to be maintained by the project;

(ii) All tenant security deposits held:

(g) "Residual Receipts" *(limited distribution mortgagor)* means any cash remaining at the end of a semiannual or annual fiscal period after deducting from surplus cash the amount of distributions as that term is defined below and as limited by Paragraph 8 (e) hereof;

(h) "Distribution" means any withdrawal or taking of cash or any assets of the project, including the segregation of cash or assets for subsequent withdrawal within the limitations of Paragraph 8 (e) hereof, and excluding payment for reasonable expenses incident to the operation and maintenance of the project.

(i) "Default" means a default declared by the Secretary when a violation of this Agreement is not corrected to the satisfaction of the Secretary within the time allowed by this Agreement or such further time as may be allowed by the Secretary after written notice;

(j) "Section 8 units" refers to units assisted under Section 8 of the United States Housing Act of 1937 pursuant to a Housing Assistance Payments Contract.

(k) "Housing Assistance Payments Contract" refers to a written contract between the Owner and HUD, or the Owner and a Public Housing Agency, or the Owner and a Housing Finance Agency for the purpose of providing housing assistance payments to the Owner on behalf of eligible families under Section 8 of the United States Housing Act of 1937.

(l) "Displaced persons or families" shall means a family or families, or a person, displaced from an urban renewal area, or as a result of government action, or as a result of a major disaster, as determined by the President pursuant to the Disaster Relief Act of 1970.

(m) "Elderly persons" means any person, married or single, who is sixty-two years of age or over.

17. This instrument shall bind, and the benefits shall insure to, the respective Owners, their heirs, legal representativ ..xecutors, administrators, sucessors in office or interest, and assigns, and to the Secretary and successors of the Secretary so long as the contract of mortgage insurance continues in effect, and during such further time as the Secretary shall be the owner, holder or reinsurer of the mortgage, or obligated to reinsure the mortgage.

18. Owners warrant that they have not, and will not, execute any other agreement with provisions contradictory to, or in opposition to, the provisions hereof, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations set forth and supersede any other requirements in conflict therewith.

19. The invalidity of any clause, part or provision of this Agreement shall not affect the validity of the remaining portions thereof.

20. The following Owners: LAKE MEAD VILLA APARTMENTS, a Nevada General Partnership, all present and future partners of the mortgagor entity, as approved pursuant to HUD Regulations, do not assume personal liability for payments due under the note and mortgage, or for the payments to the reserve for replacements, or for matters not under their control, provided that said Owners shall remain liable under this Agreement only with respect to the matters hereinafter stated namely:

(a) for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain: and

(b) for their own acts and deeds or acts and deeds of others which they have authorized in violation of the provisions hereof.

IN WITNESS WHEREOF, the parties hereto have set their hands ~~and seals~~ on the date first hereinabove written.

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership
*(Owners)*

~~SEAL~~

WITNESS

By [signature]
Lewis Hildreth, General Partner

By [signature]
A. F. Henriksen, General Partner

By [signature]
Ray Henriksen, General Partner

SECRETARY OF HOUSING AND URBAN DEVELOPMENT
acting by and through the FEDERAL HOUSING COMMISSIONER

By [signature]
*(Authorized Agent)*

*(Add proper acknowledgements)*



GPO 921-... HUD ...

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SECTION 8 HOUSING ASSISTANCE PAYMENTS PROGRAM

NEW CONSTRUCTION OR SUBSTANTIAL REHABILITATION

PART I OF THE

AGREEMENT TO ENTER INTO HOUSING ASSISTANCE PAYMENTS CONTRACT

Type of Project: Private-Owner/HUD X or PHA-Owner/HUD ____

Small Project ____ or Partially-Assisted Project X or Other ____

New Construction, Part 880 X Substantial Rehabilitation, Part 881 ____

OR

Part 885 ____ Part 885 ____

Type of Financing: State Agency Tax Exempt Loan

[For example: subject to Part 811, HUD-insured; GNMA tandem; State agency tax exempt loan, not HUD-insured.]

ACC/HAP CONTRACT LIST NUMBER AND DATE: SF-83-001 (11-18-82) See amendment

SECTION 8 PROJECT NUMBER: NV39-H022-007

FHA PROJECT NUMBER (if applicable): 125-35100-PM-L8

CONTRACT NUMBER: SF-1846

This Agreement to Enter into Housing Assistance Payments Contract (Agreement) is entered into between the United States of America acting through the Department of Housing and Urban Development (HUD) and Lake Mead Villa ~~Associates~~ APARTMENTS (Owner).

The Owner proposes to complete a housing project, as described in the approved Final Proposal. Upon the acceptable completion of the project, the Owner and HUD will enter into a Housing Assistance Payments Contract (Contract) for the purpose of making housing assistance payments to enable eligible Lower-Income Families (Families) to occupy units in the project.

1.1 SIGNIFICANT DATES; CONTENTS AND SCOPE OF AGREEMENT.

(a) Effective Date of Agreement: April 21, 1983.

(b) Date for Commencement of Work. The date for commencement of work (see section 2.1(a)) is not later than fifteen calendar days after the effective date of this Agreement.

(c) Date for Commencement of Advance Marketing. The date for commencement of advance marketing under section 2.2(d)(2) is not later than thirty calendar days prior to marketing to other prospective tenants.

(d) Time for Completion of Project. The date for completion of the project (see section 2.1(b)) is not later than 240 calendar days after the date for commencement of work.

(e) Contents of Agreement. This Agreement consists of Part I, Part II (except as indicated in section 1.4), and the following exhibits:

Exhibit A: An agreement by the parties to incorporate the Final Proposal by reference, specifying the location of the Final Proposal, and identifying each part of the Final Proposal, including any amendments.

Exhibit B: The Housing Assistance Payments Contract (Contract) to be executed upon acceptable completion of the project, complete in all respects except for execution, effective date, and Exhibit 2 showing daily debt service.

Exhibit C: The schedule of completion in stages, if applicable. (This exhibit should identify the units in each stage.)

Not Applicable

| | Applic. | Not Applic. |
|---|---|---|
| (e) 2.8. Flood Insurance. Applicability: All projects in special flood hazard areas. | | X |
| (f) 2.9. Clean Air and Federal Water Pollution Control Acts. Applicability: All projects for which the total initial Contract Rents over the term of the Contract exceed $100,000. | X | |

WARNING: 18 U.S.C. 1001 provides, among other things, that whoever knowingly and willfully makes or uses a document or writing containing any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of the United States, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

United States of America
Secretary of Housing and Urban Development

By [signature]

* Director, Housing Division
(Official Title)

Date April 21, 1983

OWNER Lake Mead Villa ~~Associates~~ APARTMENTS

By [signature]

* PARTNER
(Official Title)

Date April 21, 1983

*Type name of signatory under signature line.

(g) Scope of Contract. This Contract, including the exhibits, whether attached or incorporated by reference, comprises the entire agreement between the Owner and HUD with respect to the matters contained in it. Neither party is bound by any representations or agreements of any kind except as contained in this Contract, any applicable regulations, and agreements entered into in writing by the parties which are not inconsistent with this Contract.

1.2 TERM OF CONTRACT; OBLIGATION TO OPERATE PROJECT FOR FULL TERM.

(a) Term of Contract. The term of this Contract for any unit shall be 20 years, beginning with the effective date of this Contract for such unit. [Insert number approved by HUD in accordance with the HUD regulations.] If the project is completed in stages, the term shall be separately related to the units in each stage. However, the total Contract term for all the stages, beginning with the effective date of the Contract for the first stage, shall not exceed the Contract term for any unit, plus two years.

(b) Obligation to Operate Project for Full Term. The Owner agrees to continue operation of the project in accordance with this Contract for the full term specified in paragraph (a).

1.3 HUD ASSURANCE.

The execution of this Contract by HUD is an assurance by HUD to the Owner that:

(a) The faith of the United States is solemnly pledged to the payment of housing assistance payments pursuant to this Contract, and

(b) HUD has obligated funds for these payments.

1.4 APPLICABILITY OF CERTAIN PROVISIONS OF THIS CONTRACT.

| | Applic. | Not Applic. |
|---|---|---|
| (a) 2.4(i). Payments to Trustee by FHA Where It Is the Lender. Applicability: Not applicable. | | X |
| (b) [If the Contract Rents are adjusted under section 2.4 of the Agreement, and either section 2.7(f), (g), or (h) of this Contract has been checked "applicable" at the time of execution of the Agreement, it should be changed to "not applicable" when the Contract is executed.] | X | |
| (1) 2.7(f). Adjustment of Contract Rents Based on Cost Certification. Applicability: All projects unless (1) the project is subject to Part 811: or (2) the Contract Rents do not exceed comparable rents; or (3) the Contract Rents do not exceed comparable rents by more than 10 percent, for Small and Partially-Assisted Projects. | * X | |
| (2) 2.7(g). Adjustment of Contract Rents to Reflect Actual Cost of Tax Exempt Financing Not Subject to Part 811. Applicability: All projects where financing is by tax exempt obligations not subject to Part 811 because the issuer is a participating agency under 24 CFR Part 883. | X | |
| (3) 2.7(h). Adjustment of Contract Rents: Part 811. Applicability: All HUD-insured projects subject to Part 811. | | X |

*Although partially assisted, contract rents exceed comparable rents by more than 10%.

Exhibit 3

This Exhibit shows the initial and subsequent amounts of contract and budget authority obligated for project number: NV39-H022-007. (The Housing Division shall furnish the Legal Division with the information necessary to complete this Exhibit, with appropriate supporting documentation including an ACC/HAP Contract List.)

| | Contract Authority | Budget Authority |
|---|---|---|
| As of the Effective Date of Agreement | $103,968 | $2,079,360 |
| Effective Date of Agreement Amendment: ______ | | |
| Show Increase or Decrease | N/A | N/A |
| Revised Total | | |
| Effective Date of Agreement Amendment: ______ | | |
| Show Increase or Decrease | N/A | N/A |
| Revised Total | | |

| | Contract Authority | Budget Authority |
|---|---|---|
| As of the Effective Date of Contract | | |
| Effective Date of Contract Amendment: ______ | | |
| Show Increase or Decrease | | |
| Revised Total | | |
| Effective Date of Contract Amendment: ______ | | |
| Show Increase or Decrease | | |
| Revised Total | | |

EXHIBIT 2

DAILY DEBT SERVICE

| Number of Bedrooms | Number of Units | Daily Debt Service |
|---|---|---|
| 0 | ________ | $________ |
| 1 | ________ | $________ |
| 2 | 11 | $ ** |
| 3 | 4 | $ ** |
| 4 | ________ | $________ |
| 5 | ________ | $________ |

This information is used for computing assistance payments for vacant units under section 2.4(e).

** The Daily Debt Service shall be calculated by HUD prior to execution of the HAPC. The Daily Debt Service shall be calculated pursuant to the instructions published in HUD Handbook 7420.1 CHG., Appendix 19, dated May 1978.

BOOK 1722 1681226

# DEED OF TRUST

THIS DEED OF TRUST, made and entered into this 1st day of April , in the year 19 83 , by and between LAKE MEAD VILLA APARTMENTS, a Nevada General Partnership , XXXXXXXXX organized and existing under the laws of the State of Nevada , having its principal place of business at 3651 South Lindell Road, Suite A, Las Vegas, Nevada 89103 , party hereto of the first part, hereinafter sometimes referred to as the "Grantor," and LAND TITLE OF NEVADA, INC. , of 2800 W. Sahara Avenue, Las Vegas, Nevada , as Trustee, party of the second part, hereinafter sometimes referred to as the "Trustee," and SEAFIRST MORTGAGE CORPORATION , a corporation organized and existing under the laws of the State of Washington , with its principal office in the City of Seattle , State of Washington , party hereto of the third part and hereinafter sometimes referred to as the "Beneficiary" (which designations shall include the respective successors and assigns and the successors in the interest of the several parties).

WHEREAS, the party of the first part is justly indebted to the party of the third part in full sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100------------------------Dollars ($ 2,500,000.00 ),

evidenced by its Note of even date herewith, bearing interest from date on outstanding balance at ELEVEN (11%)** per cent per annum, payable in monthly installments beginning on the first day of the month following the date hereof with a final maturity of March 1, 2014 , which Note is identified as being secured hereby by a certificate thereon. Said Note and all of its terms are incorporated herein by reference; however evidenced. **See Rider "A" attach

AND WHEREAS, the Grantor desires to secure to the Beneficiary the full and punctual payment of said debt and interest thereon, and to secure the performance of the covenants herein contained, as well as any and all renewals or extensions of said Note, or of any part thereof, with interest thereon; and also to secure the reimbursement to the holder or holders of said Note and to the Trustee or substitute trustee, for all money which may hereafter be advanced for any purpose provided for by the terms of this Deed of Trust or the covenants hereof adopted by reference, and for any and all costs and expenses (including reasonable attorney's fees) incurred or paid on account of any litigation at law or in equity which may arise in respect to this trust, or to the indebtedness or to the property herein mentioned, or in obtaining possession of the premises after any sale which may be made as hereinafter provided for;

NOW, THEREFORE, THIS DEED OF TRUST WITNESSETH: That the said Grantor, in consideration of the premises and of One Dollar ($), to it in hand paid by the Trustee (the receipt of which, before the sealing and delivery of these presents, is hereby acknowledged), has granted, bargained, sold, conveyed, and confirmed and does hereby grant, bargain, sell, convey, and confirm unto the Trustee, his successors and assigns in trust forever, the following-described land and premises with the improvements thereon, together with all privileges, hereditaments, water rights, mineral rights, easements, rights, ways and appurtenances thereunto belonging, situated and lying in Las Vegas , in the County of Clark , State of Nevada, more particularly described as follows:

See Schedule "A" attached hereto and by this reference made a part hereof for legal description.

That certain Regulatory Agreement of April 1 , 1983, between Grantor and the Nevada Housing Division ~~to be recorded upon acquisition of the loan by the Nevada Housing Division~~ is incorporated in and made a part of this Deed of Trust.

Pursuant to Section 221.524(d) of 24 C.F.R. the indebtedness represented by this Deed of Trust may not be prepaid either in whole or in part prior to the final maturity date thereof without the prior written approval of the Beneficiary and the Federal Housing Commissioner.

The consent of the Beneficiary to prepay the debt, in whole or in part, will not be unreasonably withheld and may be conditioned upon payment to the Beneficiary by the Grantor of such fees and charges which are reasonable as determined by the Commissioner and which are related to the Nevada Housing Division's cost of redeeming the bonds sold to finance the loan.

The covenant of the maker to pay principal and interest is included in the Note secured hereby for the purpose of establishing and continuing the existence of the indebtedness. However, it is a condition of said covenant and those contained herein that in the event of default under the terms hereof, the holder shall take no action against the maker(s) personally except such as may be necessary to subject to the satisfaction of the indebtedness, the property described herein and any chattels appurtenant to the use thereof, PROVIDED, that nothing in this condition and no action so taken shall operate to impair any obligation of the maker under the Building Loan Agreement and the Regulatory Agreement herein referred to and made a part hereof.

TOGETHER with all of the rents, issues, and profits which may arise or be had therefrom; and all building materials and equipment now or hereafter delivered to said premises and intended to be installed therein;

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon, and all fixtures, including but not limited to all gas and electric fixtures, engines and machinery, radiators, heaters, furnaces, heating equipment, steam and hot water boilders, stoves, ranges, elevators and motors, bathtubs, sinks, water closets, basins, pipes, faucets and other plumbing and heating equipment, cabinets, mantels, refrigerating plant and refrigerators, whether mechanical or otherwise, cooking apparatus and appurtenances, furniture, shades, awnings, screens, venetian blinds and other furnishings; and

19. The Grantor covenants and agrees that so long as this Deed of Trust and the said Note secured hereby are insured under the provisions of the National Housing Act, it will not execute or file for record any instrument which imposes a restriction upon the sale or occupancy of the mortgaged property on the basis of race, color, or creed;

20. That this Deed of Trust and the Note secured hereby were executed and delivered to secure moneys advanced or to be advanced and to be used in the construction of certain improvements on the lands herein described, in accordance with a Building Loan Agreement between the Grantor and the Beneficiary dated April 1, 1983, which Building Loan Agreement (except such part or parts thereof as may be inconsistent herewith) is incorporated herein by reference to the same extent and effect as if fully set forth and made a part of this Deed of Trust, which said Building Loan Agreement Grantor hereby covenants to perform; and if the construction of the improvements to be made pursuant to said Building Loan Agreement shall not be carried on with reasonable diligence, or shall be discontinued at any time for any reason other than strikes or lock-outs, the Trustee, at the request and on behalf of the Beneficiary after due notice to the Grantor or any subsequent owner, is hereby invested with full and complete authority to enter upon the said premises, employ watchmen to protect such improvements from depredation or injury, and to preserve and protect the personal property therein, and to continue any and all outstanding contracts for the erection and completion of said building or buildings, to make and enter into contracts and obligations wherever necessary, either in its own name or in the name of the Grantor, or other owner, and in the name and for the account of the Beneficiary to pay and discharge all debts, obligations, and liabilities incurred thereby. All such sums so advanced by and for the account of the Beneficiary (exclusive of advances of the principal of the indebtedness secured hereby) shall be added to the principal of the indebtedness secured hereby and shall be secured by this Deed of Trust and shall be due and payable on demand with interest at the rate specified in the Note, per annum, but no such advances shall be insured unless same are specifically approved by the Secretary of Housing and Urban Development, acting by and through the Federal Housing Commissioner prior to the making thereof. The principal sum, with interest and other charges provided for herein shall, at the option of the Beneficiary or holder of this Deed of Trust and the Note secured, hereby, become due and payable on the failure of the Grantor, or owner, to keep and perform any of the covenants, conditions, and agreements of said Building Loan Agreement, anything contained herein to the contrary notwithstanding. This covenant shall be terminated upon the completion of the improvements to the satisfaction of the Beneficiary and the making of the final advances as provided in said Building Loan Agreement;

21. The following covenants, to wit, Nos. 3, 5, 6, 7, 8, and 9 of Section 107.030, Title 9, Chapter 107 of the Nevada Revised Statutes, as amended, are hereby adopted and made a part of this Deed of Trust. Counsel fees under covenant No. 7 shall be one (1) percent of the amount secured but not to exceed Two Thousand Dollars ($2,000.00);

22. The Grantor shall not permit or suffer: *(a)* the use of any of the mortgaged property for any purpose other than that for which the same is now agreed upon to be used; *(b)* any alteration of or addition to the buildings or improvements hereafter constructed in or upon said real property without consent of the Beneficiary.

IN TESTIMONY WHEREOF, the said party hereto of the first part has caused these presents to be executed in its ~~corporate~~ partnership name by LEWIS HILDRETH, A. F. HENRIKSEN, and RAY HENRIKSEN, General Partners ~~xxx~~ ~~its Secretary and its corporate seal to be hereunto affixed~~, said partners being thereunto duly authorized, all as of the day, month, and year first hereinabove written.

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership
~~XXXXXXXX~~

By [signature]
Lewis Hildreth, General ~~Secretary~~ Partner

By [signature]
A. F. Henriksen, General Partner

By [signature]
Ray Henriksen, General Partner

STATE OF NEVADA )
COUNTY OF CLARK ) ss:

On this 15th day of April, A.D. 1983, personally appeared before me, LEWIS HILDRETH, A. F. HENRIKSEN and RAY HENRIKSEN General Partners of LAKE MEAD VILLA APARTMENTS known to me to be the partnership the General Partners of the partnership that executed the foregoing instrument, and upon oath did depose and say that they are the General Partners of said partnership; ~~xxxxxxxx~~ that the signatures to said instrument were made by partners of said partnership as indicated after said signatures; and that the said partnership executed the said instrument freely and voluntarily and for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal at my office in the said County of Clark, the day and year in this certificate first above written.

GLORIA J. BARNHART
Notary Public-State of Nevada
CLARK COUNTY
My Appointment Expires Nov. 30, 1985

[signature]

My commission expires

STATE OF NEVADA

Deed Of Trust

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership

Return TO:
SEAFIRST MORTGAGE CORPORATION
Fourth and Blanchard Building
Seattle, Washington 98121
Attention: Commercial Loan Deptment
SMC No. T-600189-5

Post-it™ brand fax transmittal memo 7671 # of pages ▶ 9

| | |
|---|---|
| To DOTTIE MANZ | From MAMIE CAHN |
| Co. US HUD | Co. NHD |
| Dept. | Phone # 687-4258 |
| Fax # 388-6736 | Fax # |

FHA FORM NO. 4146-e
XXXXXXXXXX)
Revised June 1964

# DEED OF TRUST NOTE

$ 2,500,000.00

Las Vegas , Nevada.
April 1 , 1983 .

FOR VALUE RECEIVED, the undersigned, LAKE MEAD VILLA APARTMENTS, a Nevada General Partnership promises to pay to SEAFIRST MORTGAGE CORPORATION a corporation of the State of Washington , or order, at its principal place of business in the city of Seattle , State of Washington , or at such other place as may be designated in writing by the holder of this Note, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100------------------------------------ Dollars ($ 2,500,000.00 ), with interest from date at the rate of TWELVE AND SEVEN/EIGHTHS per centum (12.875%) per annum on the unpaid balance ~~until paid. The principal and interest shall be payable in monthly installments as follows:~~ up to and including the cut-off date established or selected for cost certification purposes, and THIRTEEN PER CENTUM (13%) beginning with the date following cost certification cut-off up to and including the date of final endorsement (interim rate) or the scheduled date for commencement of amortization, whichever comes first. Thereafter, interest shall be payable at the rate of ELEVEN PER CENTUM (11%) per annum (permanent loan rate) on the unpaid balance until paid. In the event that the Secretary of Housing and Urban Development becomes the holder of this note before the interest rate is reduced to the said permanent loan rate, the Secretary shall have the option of reducing the interest rate to a rate no lower than the said permanent loan rate.

The said principal and interest shall be payable in monthly installments as follows: Interest alone payable on the first day of May, 1983 and on the first day of each month thereafter up to and including March, 1984. Thereafter, commencing on the first day of April, 1984 monthly installments of interest and principal shall be paid in the sum of TWENTY THREE THOUSAND EIGHT HUNDRED EIGHT AND 09/100 DOLLARS ($23,808.09) each, such payments to continue monthly thereafter on the first day of each month until the entire indebtedness has been paid. In any event, the balance of principal (if any) remaining unpaid, plus accrued interest shall be due and payable on March 1, 2014. The installments of interest and principal shall be applied first to interest at the rate of ELEVEN PER CENTUM (11%) per annum upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of**

~~Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on the principal next due, on the first day of any month prior to maturity upon at least thirty (30) days' prior written notice to the holder. If this debt is paid in full prior to maturity and while insured under the provisions of the National Housing Act, as amended, all parties liable for payment of this debt hereby agree to be jointly and severally bound to pay to the holder hereof such adjusted mortgage insurance premium as may be required by the applicable Regulations.~~

~~Notwithstanding any provision herein for a prepayment charge, such charge shall be applicable only to the amount of prepayment in any one calendar year which is in excess of fifteen per centum (15%) of the original principal sum of this Note.~~

If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice; at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this Note equals or exceeds the amount of such required installment of principal.

All parties to this Note, whether principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest and notice of dishonor.

This Note is secured by Deed of Trust upon real estate in Clark County, Nevada.

**principal. (See attached Rider incorporated herein for additional terms and conditions.)

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership

Signed ~~and sealed~~ the day and year first above written. By [signature]
Lewis Hildreth, General Partner

XXXXXXXXXXXXXXXXX

By [signature]
A. F. Henriksen, General XXXXXXXX Partner

XXXXXXX ______ XXXXXXX By [signature]
Ray Henriksen, General Partner

THIS IS TO CERTIFY that this is the Note described in and secured by Deed of Trust of even date herewith and in the same principal amount as herein stated and secured by real estate situated in Clark County, Nevada.

Dated April 21, 1983.

[signature]
Notary Public

GERALDINE CHAVIS
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
CITY AND COUNTY OF SAN FRANCISCO
My Commission Expires Oct. 26, 1984

2,490,700

# STATE OF NEVADA

LOAN NO. T-600189-5

## Deed Of Trust Note

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership
TO
SEAFIRST MORTGAGE CORPORATION

FHA No. 125-35100-PM-L8
Sec.
Insured under 221(d)(4) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on November 18, 1982

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By [signature] (Authorized Agent)

Date April 21, 1983

A total sum of $2,490,900 has been approved for insurance hereunder by the Commissioner

FEDERAL HOUSING COMMISSIONER

By [signature] (Authorized Agent)

Date June 8, 1984

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

48693-P Rev. 6/64 FHA-Wash., D. C.

PAYABLE TO THE ORDER OF THE NEVADA HOUSING DIVISION, WITHOUT RECOURSE.

SEAFIRST MORTGAGE CORPORATION

By: [signature]
G. Eric Pucher, Vice President