FEDERAL HOUSING ADMINISTRATION
Partially Assisted Loan
Williams, Adley and Company, LLP

EXHIBIT 1 - ASSET REVIEW FILE (ARF) REQUEST FORM

Please indicate (in the appropriate line) the number of books you would like to order.

| Asset ID | HUD / FHA Case Number | Project Name | ARFs Ordered |
|---|---|---|---|
| 40161 | 125-35058 | CANYON PARK APTS. | |
| 40162 | 125-35074 | MANOR AT LAKESIDE | |
| 40163 | 125-35100 | LAKE MEAD VILLA APTS | |
| 40164 | 126-94002 | DOWN MANOR APARTMENTS | |
| 40165 | 127-35344 | SOUTHPOINTE | |
| 40166 | 136-35542 | ROLLINGWOOD COMMONS | |
| 40167 | 136-35573 | DISCOVERY PARK I | |
| 40168 | 136-35589 | TANGIERS APARTMENTS | |
| 40169 | 136-35631 | COUNTRYWOOD VILLAGE APTS | |
| 40171 | 143-35091 | GREENBRIAR APARTMENTS | |
| 40172 | 112-35276 | REGENCY PLACE APTS. | |
| 40173 | 136-35652 | COUNTRYWOOD VILLAGE EAST | |
| 40174 | 085-35313 | COLUMBUS SQUARE I | |
| 40175 | 033-35096A | PINETREE VILLAGE II | |
| 40176 | 033-35096B | PINETREE VILLAGE 3 | |
| 40177 | 053-15003 | MEADOWBROOK | |
| 40178 | 122-94019 | WILSHIRE VILLAS NORTH | |
| 40181 | 064-35219 | CYPRESS APARTMENTS | |
| 40182 | 073-35364 | SUMMERDALE APARTMENTS | |
| 40183 | 082-11011 | TERRACE APARTMENTS | |
| 40184 | 112-35320 | NEW WEST APARTMENTS | |
| 40185 | 114-35219 | BAYOU WILLOWS APARTMENTS | |
| 40186 | 136-35651 | LINCOLN DISCOVERY PARK IV | |
| 40187 | 071-15012 | MORNINGSIDE GREEN | |
| 40188 | 136-35580 | DISCOVERY PARK II | |
| 40189 | 136-35630 | DISCOVERY PARK III | |

EXHIBIT 1 - ASSET REVIEW FILE (ARF) REQUEST FORM

Please indicate (in the appropriate line) the number of books you would like to order.

| Asset ID | HUD / FHA Case Number | Project Name | ARFs Ordered |
|---|---|---|---|
| 40190 | 102-35167 | KINKAID PARK APARTMENTS | |

157

Bidder Name: ______________________

Date Requested: ______________________

**For External Use Only:**

Date Received: ______________________

Bidder ID #: ______________________

Order #: ______________________

# TAB V

Office of Thrift Supervision
Department of the Treasury
1700 G Street, N.W., Washington, D.C. 20552 • (202) 906-6000

RECEIVED

February 2, 1995

Mr. Nicolas P. Retsinas
Assistant Secretary for Housing -
Federal Housing Commissioner
U.S. Department of Housing and
Urban Development
Washington, D.C. 20410-8000

Dear Mr. Retsinas:

Thank you for your letter of January 4, 1995, which was delivered to me on January 12. Your letter asks whether an institution supervised by the Office of Thrift Supervision (OTS) would receive "credit" under the Community Reinvestment Act (CRA) for purchasing certain multifamily loans that the Federal Housing Administration (FHA) plans to sell. You specifically ask how the purchase of these loans would be considered under the existing CRA regulation as well as the proposed CRA regulation issued for public comment on October 7, 1994.

As explained in your submission, the FHA plans to sell 2,200 multifamily loans it holds in portfolio. Some of these loans are subsidized and some are not. Over half of the units in projects financed with subsidized loans are occupied by low- and moderate-income tenants and will be sold with FHA mortgage insurance, or with assurances that the project will continue to operate in a manner at least as advantageous to the tenants. You expect to sell the unsubsidized loans without FHA mortgage insurance in most cases. However, some of the performing unsubsidized loans will carry FHA mortgage insurance. You anticipate that federally-supervised financial institutions will be among the purchasers of, and investors in, the loans to be sold. In addition to whole-loan purchases, investment vehicles will include participations, mortgage-backed securities, REMICs, and trusts.

**Treatment Under Existing CRA Regulations**

As you know, the agencies expect that an institution's activities be consistent with safe and sound banking practices. This would include the purchase of loans or securities made available under your program. The position contained in this letter reiterates the present policy position of the agencies as reflected in regulation and published guidance, and is not intended to broaden or otherwise modify, the agencies' policies with respect to these matters.

We believe that the analysis in your letter with respect to the treatment under the current regulation and the Interagency Questions and Answers on CRA is generally consistent with existing policy guidance and, in that vein, that the purchase of loans or securities under your program that help meet the credit needs of low- and moderate-income individuals would generally be viewed favorably under our CRA regulations, subject to certain limitations. For properties located within an institution's delineated community, the purchase of such loans or securities would receive positive consideration in a CRA examination. An institution would also receive positive consideration for the purchase of loans or securities involving property located outside its delineated community provided the purchase augments or complements an overall CRA program that is already responsive to the credit needs of the institution's delineated community. The Interagency Questions and Answers document indicates that support of low- and moderate-income housing in areas outside the institution's community would be considered favorably, though it would not be sufficient to compensate for an otherwise unacceptable record within the institution's community.

**Proposed CRA Regulation**

As you are aware, we have issued a proposed CRA rule for comment, and are in the process of evaluating the comments received and developing a final regulation. Consequently, we cannot provide you with specific guidance as to how an institution's participation in your program might be viewed under a final rule. We do not envision, however, that the favorable treatment accorded to programs that assist institutions in helping to meet the credit needs of their communities, would be substantially affected by changes to the CRA regulations.

I trust this information is helpful to you. Please let me know if you have any further questions.

Sincerely,

Timothy R. Burniston

Timothy R. Burniston
Assistant Director For Compliance Policy

cc: Jonathan L. Fiechter

Comptroller of the Currency
Administrator of National Banks

Washington, D.C. 20219

February 9, 1995

Mr. Nicolas P. Retsinas
Assistant Secretary for Housing
Federal Housing Commissioner
U.S. Department of Housing and
Urban Development
Washington, D.C. 20410-8000

Dear Mr. Retsinas:

Thank you for your letter of January 4, 1995, which was delivered to us on January 12. Your letter asks whether an institution supervised by the Office of the Comptroller of the Currency (OCC) would receive "favorable consideration" under the Community Reinvestment Act (CRA) for purchasing certain multifamily loans that the Federal Housing Administration (FHA) plans to sell. You specifically ask how the purchase of these loans would be considered under the existing CRA regulation as well as the proposed CRA regulation issued for public comment on October 7, 1994.

As explained in your submission, the FHA plans to sell 2,200 multifamily loans it holds in its portfolio. Some of these loans are subsidized and some are not. Over half of the units in projects financed with subsidized loans are occupied by low- and moderate-income tenants and will be sold with FHA mortgage insurance, or with assurances that the project will continue to operate in a manner at least as advantageous to the tenants. You expect to sell the unsubsidized loans without FHA mortgage insurance in most cases. However, some of the performing unsubsidized loans will carry FHA mortgage insurance. You anticipate that federally supervised financial institutions will be among the purchasers of, and investors in, the loans to be sold. In addition to whole-loan purchases, investment vehicles will include participations, mortgage-backed securities, REMICs, and trusts.

## Treatment Under Existing CRA Regulations

As you know, the agencies expect an institution's activities to be consistent with safe and sound banking practices. This would include the purchase of loans or securities made available under your program.

The purchase of loans or securities that help meet the credit needs of low- and moderate-income individuals would generally be viewed favorably under our CRA regulations, subject to certain limitations. Specifically, for properties located within an institution's delineated community, the purchase of such loans or securities would receive positive consideration in a CRA examination. An institution would also receive positive consideration for the purchase of loans or securities involving property located outside its delineated community provided the purchase augmented or complemented an overall CRA program that is already responsive to the credit needs of the institution's delineated community. The Interagency Questions and Answers on CRA indicate that support of low- and moderate-income housing in areas outside the institution's community would be considered favorably, though it would not be sufficient to compensate for an unacceptable record within the institution's community.

This letter reiterates the present policy position of the agencies as reflected in regulation and published guidance, and is not intended to broaden or otherwise modify the agencies' policies with respect to these matters. We believe that the analysis in your letter with respect to the treatment under the current regulation and the Interagency Questions and Answers on CRA is generally consistent with existing policy guidance.

**Proposed CRA Regulation**

As you indicated in your letter, we have issued a proposed CRA rule for comment and are in the process of evaluating the comments received and developing a final regulation. Consequently, we cannot provide you with specific guidance as to how an institution's participation in your program might be viewed under a final rule. We do not envision, however, that the favorable treatment currently accorded to programs that assist institutions in helping to meet the credit needs of their communities would be substantially affected by changes to the CRA regulations.

I trust this information is helpful to you. Please let me know if you have any further questions.

Sincerely,

Stephen M. Cross
Deputy Comptroller, Compliance Management

Federal Deposit Insurance Corporation
Washington, DC 20429
Office of the Director
Division of Compliance and Consumer Affairs

February 3, 1995

Mr. Nicolas P. Retsinas
Assistant Secretary for Housing
Federal Housing Commissioner
U.S. Department of Housing and
Urban Development
Washington, D.C. 20410-3000

Dear Mr. Retsinas:

Thank you for your letter of January 4, 1995, which asks whether an institution supervised by the FDIC would receive "credit" under the Community Reinvestment Act (CRA) for purchasing certain multifamily loans that the Federal Housing Administration (FHA) plans to sell. You specifically ask how the purchase of these loans would be considered under the existing CRA regulation as well as the proposed CRA regulation issued for public comment on October 7, 1994.

Treatment Under Existing CRA Regulations

As you know, the agencies expect that an institution's activities be consistent with safe and sound banking practices. This would include the purchase of loans or securities made available under your program. The position contained in this letter reiterates the present policy position of the agencies as reflected in regulation and published guidance, and is not intended to broaden or otherwise modify, the agencies' policies with respect to these matters.

We believe that the analysis in your letter with respect to the treatment under the current regulation and the Interagency Questions and Answers on CRA is generally consistent with existing policy guidance and, in that vein, that the purchase of loans or securities under your program that help meet the credit needs of low- and moderate-income individuals would generally be viewed favorably under our CRA regulations, subject to certain limitations. An institution would also receive positive consideration for the purchase of loans or securities involving property located outside its delineated community provided the purchase augments or complements an overall CRA program that is already responsive to the credit needs of the institution's delineated community. The Interagency Questions and Answers document indicates that support of low- and moderate-income housing in areas outside the institution's community would be considered favorably, though it would not be sufficient to compensate for an otherwise unacceptable record within the institution's community.

Proposed CRA Regulation

As you know, we have issued a proposed CRA rule for comment, an are in the process of evaluating the comments received and developing a final regulation. Consequently, we cannot provide you with specific guidance as to how an institution's participation in your program might be viewed under a final rul However, we envision that the favorable treatment currently accorded to programs that assist institutions in helping to mee the credit needs of their communities would not be substantiall affected by changes to the CRA regulations.

I trust this information is helpful to you. Please let me know if you have any further questions.

Sincerely,

Paul L. Sachtleben
Director

cc: Chairman Ricki Tigert Helfer

BOARD OF GOVERNORS
OF THE
FEDERAL RESERVE SYSTEM
WASHINGTON, D. C. 20551

GRIFFITH L. GARWOOD
DIRECTOR
DIVISION OF CONSUMER
AND COMMUNITY AFFAIRS

February 6, 1995

Mr. Nicholas P. Retsinas
Assistant Secretary for Housing-
Federal Housing Commissioner
U.S. Department of Housing and
Urban Development
Washington, DC 20410-8000

Dear Mr. Retsinas:

This responds to your January 4 letter concerning the treatment that would be accorded to certain mortgage loans your agency plans to sell under the Multifamily Property Disposition Reform Act of 1994. I have reviewed Timothy R. Burniston's February 2 letter to you responding to a similar inquiry you sent to the Office of Thrift Supervision. I believe that letter appropriately responds to your letter to me, as well.

I trust this is responsive to your needs.

Very truly yours,

Griffith L. Garwood

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

January 4, 1995

Mr. Paul Sachtleben, Director
Division of Compliance & Consumer Affairs
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429

Re: CRA Credit for Loan Sales/Purchases

Dear Mr. Sachtleben:

The U.S. Department of Housing and Urban Development ("HUD") plans to sell certain loans held by HUD, as provided in Section 101(b) of the Multifamily Property Disposition Reform Act of 1994, Pub. L. No. 103-233 (April 11, 1994), which amended 12 U.S.C. § 1701z-11. We seek your opinion as to whether some or all of such loans, if purchased by a financial institution supervised by you, are eligible for credit both under your existing regulations and under your proposed regulations implementing the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901 et seq.

Facts

All but a few of the loans to be sold were made by HUD-approved lenders under mortgage insurance programs administered by the Federal Housing Administration ("FHA"); the few non-insured loans were direct loans made by HUD. Under the Multifamily Property Disposition Act, the loans are classified as either subsidized loans or unsubsidized loans.

"Subsidized loans" include loans secured by liens on multifamily housing projects (i) in which over 50 percent of the units are covered by subsidy contracts under Section 8 of the United States Housing Act of 1937, or by similarly structured subsidies; or (ii) which had been financed by loans insured by HUD under Section 202, 221(d)(3), 221(d)(5) or 236 of the National Housing Act. In either case, over 50 percent of the units in projects financed with subsidized loans are occupied by tenants of low or moderate income (i.e.,

with incomes at or below 50 percent of area median income or 80 percent of area median income). Subsidized loans will be sold with FHA mortgage insurance, or with assurances that the project will continue to operate in a manner at least as advantageous to the tenants.

"Unsubsidized loans" (i.e., loans other than subsidized loans) are expected to be sold without FHA mortgage insurance in most cases, but some performing unsubsidized loans may be sold with insurance.

It is anticipated that federally supervised financial institutions will be among the purchasers of and investors in the loans to be sold. Investment vehicles will include, but will not be limited to, whole-loan purchases, participations, mortgage-backed securities, REMICs and trusts.

Existing CRA Regulations

It is clear that subsidized loans, because they demonstrably serve low- and moderate-income tenants, are eligible for credit under the CRA if held by a federally supervised financial institution. The pertinent language is as follows:

> In connection with its examination of a bank, the FDIC shall assess the record of performance of the bank in helping to meet the credit needs of its entire community, including low- and moderate-income neighborhoods, consistent with safe and sound operation of the bank. ....

12 CFR § 345.7. CRA Factor J clarifies that the unsubsidized loans, as well, are eligible for CRA credit:

> (j) The bank's participation in governmentally insured, guaranteed, or subsidized loan programs for housing, small businesses, or small farms ....

12 CFR § 345.7(j). All of the loans to be sold (with the exception of the few direct loans) were originated under FHA's insurance programs. The fact that most unsubsidized loans are expected to be sold without FHA insurance is not relevant; the significant point is that the loans were initially made under FHA insurance programs.

The loans to be sold are multifamily loans; the examples given by the supervisory agencies in their Statement Regarding the Community Reinvestment Act, 54 Fed. Reg. 13742, 13744 (April 5, 1989), indicate that lending on multifamily housing for low- and moderate-income occupants is considered favorably in CRA examinations, as is single-family lending to low- and moderate-income borrowers.

Factor J imposes no express requirement that property securing a loan must be within the institution's community in order for it to be considered favorably in a CRA examination. Indeed, Section II-D of the FDIC examination manual instructs examiners to look at an institution's participation in government programs outside of its delineated community as

well as its in-community participation. Further, the federal supervisory agencies, in their answer to Question 30 of the Interagency Questions and Answers Regarding Community Reinvestment, indicated that support of low- and moderate-income housing in areas outside an institution's community will be considered favorably in reaching an overall CRA conclusion. (Of course, such activities would not be sufficient to compensate for an otherwise unacceptable CRA record within the institution's community.)

The answer to Question 29 indicates that full service institutions may use purchases of housing loans and "FHA guaranteed" loans to augment their other CRA lending activities, and limited purpose institutions may include such loans as well.

If the property securing a loan is located within the purchasing institution's community, Factors E, H, I and L, 12 CFR § 345.7 would also support your conclusion that the loan qualifies for CRA credit.

In view of the foregoing, we think you will have no difficulty concluding that the loans to be sold by HUD are eligible for credit under the existing CRA regulations.

Proposed CRA Regulations

It is clear that the subsidized loans "primarily benefit low- or moderate-income individuals." The unsubsidized loans, because they were originated under HUD's mortgage insurance programs, as stated above, should likewise be categorized as primarily for the benefit of low- or moderate-income individuals. All of the loans address affordable multifamily housing needs to some degree. Therefore, under your proposed CRA regulations issued on October 7, 1994, the loans to be sold would be "qualified investments" under the "investment test" in [proposed] 12 CFR § 345.23 as long as the security property is located within the supervised institution's service area. For the same reasons and within the same parameters, the loans would also qualify for credit under the community development test for wholesale or limited-purpose institutions, [proposed] 12 CFR § 345.25, and, if appropriate, under an institution's strategic plan in accordance with 12 CFR § 345.27. The principles discussed in the answers to Question 29 and Question 30 (see above), we believe, should continue to apply under the proposed rule, and therefore we urge you to conclude that the loans to be sold would be eligible for CRA credit even if they are outside an institution's service area.

Conclusion

For the reasons discussed above, we believe you can, and should, conclude that the loans to be sold by HUD are eligible for credit under the CRA. We ask that you confirm this conclusion in writing.

WAS-73217.1

The first marketing materials regarding the loans to be sold will be distributed shortly. Accordingly, we request your immediate attention and prompt response to this inquiry. If you have any questions, comments or concerns, please contact Stephanie Smith at 202-708-0579. Thank you for your time and attention to this matter.

Very truly yours,

Nicolas P. Retsinas

Nicolas P. Retsinas