U.S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

January 4, 1995

Mr. Griff Garwood, Director
Division of Consumer and Community Affairs
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue
Washington, D.C. 20551

Re: CRA Credit for Loan Sales/Purchases

Dear Mr. Garwood:

The U.S. Department of Housing and Urban Development ("HUD") plans to sell certain loans held by HUD, as provided in Section 101(b) of the Multifamily Property Disposition Reform Act of 1994, Pub. L. No. 103-233 (April 11, 1994), which amended 12 U.S.C. § 1701z-11. We seek your opinion as to whether some or all of such loans, if purchased by a financial institution supervised by you, are eligible for credit both under your existing regulations and under your proposed regulations implementing the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901 et seq.

Facts

All but a few of the loans to be sold were made by HUD-approved lenders under mortgage insurance programs administered by the Federal Housing Administration ("FHA"); the few non-insured loans were direct loans made by HUD. Under the Multifamily Property Disposition Act, the loans are classified as either subsidized loans or unsubsidized loans.

"Subsidized loans" include loans secured by liens on multifamily housing projects (i) in which over 50 percent of the units are covered by subsidy contracts under Section 8 of the United States Housing Act of 1937, or by similarly structured subsidies; or (ii) which had been financed by loans insured by HUD under Section 202, 221(d)(3), 221(d)(5) or 236 of the National Housing Act. In either case, over 50 percent of the units in projects financed with subsidized loans are occupied by tenants of low or moderate income (i.e.,

WAS-79213.1

with incomes at or below 50 percent of area median income or 80 percent of area median income). Subsidized loans will be sold with FHA mortgage insurance, or with assurances that the project will continue to operate in a manner at least as advantageous to the tenants.

"Unsubsidized loans" (i.e., loans other than subsidized loans) are expected to be sold without FHA mortgage insurance in most cases, but some performing unsubsidized loans may be sold with insurance.

It is anticipated that federally supervised financial institutions will be among the purchasers of and investors in the loans to be sold. Investment vehicles will include, but will not be limited to, whole-loan purchases, participations, mortgage-backed securities, REMICs and trusts.

Existing CRA Regulations

It is clear that subsidized loans, because they demonstrably serve low- and moderate-income tenants, are eligible for credit under the CRA if held by a federally supervised financial institution. The pertinent language is as follows:

> In connection with its examination of a State member bank, the Board shall assess the record of performance of the bank in helping to meet the credit needs of its entire community, including low- and moderate-income neighborhoods, consistent with safe and sound operation of the bank. ....

12 CFR § 228.7. CRA Factor J clarifies that the unsubsidized loans, as well, are eligible for CRA credit:

> (j) The bank's participation in governmentally insured, guaranteed, or subsidized loan programs for housing, small businesses, or small farms ....

12 CFR § 228.7(j). All of the loans to be sold (with the exception of the few direct loans) were originated under FHA's insurance programs. The fact that most unsubsidized loans are expected to be sold without FHA insurance is not relevant; the significant point is that the loans were initially made under FHA insurance programs.

The loans to be sold are multifamily loans; the examples given by the supervisory agencies in their Statement Regarding the Community Reinvestment Act, 54 Fed. Reg. 13742, 13744 (April 5, 1989), indicate that lending on multifamily housing for low- and moderate-income occupants is considered favorably in CRA examinations, as is single-family lending to low- and moderate-income borrowers.

Factor J imposes no express requirement that property securing a loan must be within the institution's community in order for it to be considered favorably in a CRA examination. Indeed, Section II-D of the FDIC examination manual instructs examiners to look at an institution's participation in government programs outside of its delineated community as

well as its in-community participation. Further, the federal supervisory agencies, in their answer to Question 30 of the Interagency Questions and Answers Regarding Community Reinvestment, indicated that support of low- and moderate-income housing in areas outside an institution's community will be considered favorably in reaching an overall CRA conclusion. (Of course, such activities would not be sufficient to compensate for an otherwise unacceptable CRA record within the institution's community.)

The answer to Question 29 indicates that full service institutions may use purchases of housing loans and "FHA guaranteed" loans to augment their other CRA lending activities, and limited purpose institutions may include such loans as well.

If the property securing a loan is located within the purchasing institution's community, Factors E, H, I and L, 12 CFR § 228.7 would also support your conclusion that the loan qualifies for CRA credit.

In view of the foregoing, we think you will have no difficulty concluding that the loans to be sold by HUD are eligible for credit under the existing CRA regulations.

Proposed CRA Regulations

It is clear that the subsidized loans "primarily benefit low- or moderate-income individuals." The unsubsidized loans, because they were originated under HUD's mortgage insurance programs, as stated above, should likewise be categorized as primarily for the benefit of low- or moderate-income individuals. All of the loans address affordable multifamily housing needs to some degree. Therefore, under your proposed CRA regulations issued on October 7, 1994, the loans to be sold would be "qualified investments" under the "investment test" in [proposed] 12 CFR § 228.23 as long as the security property is located within the supervised institution's service area. For the same reasons and within the same parameters, the loans would also qualify for credit under the community development test for wholesale or limited-purpose institutions, [proposed] 12 CFR § 228.25, and, if appropriate, under an institution's strategic plan in accordance with 12 CFR § 228.27. The principles discussed in the answers to Question 29 and Question 30 (see above), we believe, should continue to apply under the proposed rule, and therefore we urge you to conclude that the loans to be sold would be eligible for CRA credit even if they are outside an institution's service area.

Conclusion

For the reasons discussed above, we believe you can, and should, conclude that the loans to be sold by HUD are eligible for credit under the CRA. We ask that you confirm this conclusion in writing.

The first marketing materials regarding the loans to be sold will be distributed shortly. Accordingly, we request your immediate attention and prompt response to this inquiry. If you have any questions, comments or concerns, please contact Stephanie Smith at 202-708-0579. Thank you for your time and attention to this matter.

Very truly yours,

Nicolas P. Retsinas

Nicolas P. Retsinas

U. S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

January 4, 1995

Mr. Stephen M. Cross
Deputy Comptroller for Compliance
Office of the Comptroller of the Currency
250 E Street, S.W.
Washington, D.C. 20219

Re: CRA Credit for Loan Sales/Purchases

Dear Mr. Cross:

The U.S. Department of Housing and Urban Development ("HUD") plans to sell certain loans held by HUD, as provided in Section 101(b) of the Multifamily Property Disposition Reform Act of 1994, Pub. L. No. 103-233 (April 11, 1994), which amended 12 U.S.C. § 1701z-11. We seek your opinion as to whether some or all of such loans, if purchased by a financial institution supervised by you, are eligible for credit both under your existing regulations and under your proposed regulations implementing the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901 et seq.

Facts

All but a few of the loans to be sold were made by HUD-approved lenders under mortgage insurance programs administered by the Federal Housing Administration ("FHA"); the few non-insured loans were direct loans made by HUD. Under the Multifamily Property Disposition Act, the loans are classified as either subsidized loans or unsubsidized loans.

"Subsidized loans" include loans secured by liens on multifamily housing projects (i) in which over 50 percent of the units are covered by subsidy contracts under Section 8 of the United States Housing Act of 1937, or by similarly structured subsidies; or (ii) which had been financed by loans insured by HUD under Section 202, 221(d)(3), 221(d)(5) or 236 of the National Housing Act. In either case, over 50 percent of the units in projects financed with subsidized loans are occupied by tenants of low or moderate income (i.e., with incomes at or below 50 percent of area median income or 80 percent of area median

income). Subsidized loans will be sold with FHA mortgage insurance, or with assurances that the project will continue to operate in a manner at least as advantageous to the tenants.

"Unsubsidized loans" (i.e., loans other than subsidized loans) are expected to be sold without FHA mortgage insurance in most cases, but some performing unsubsidized loans may be sold with insurance.

It is anticipated that federally supervised financial institutions will be among the purchasers of and investors in the loans to be sold. Investment vehicles will include, but will not be limited to, whole-loan purchases, participations, mortgage-backed securities, REMICs and trusts.

Existing CRA Regulations

It is clear that subsidized loans, because they demonstrably serve low- and moderate-income tenants, are eligible for credit under the CRA if held by a federally supervised financial institution. The pertinent language is as follows:

> In connection with its examination of a national bank, the OCC shall assess the record of performance of the bank in helping to meet the credit needs of its entire community, including low- and moderate-income neighborhoods, consistent with safe and sound operation of the bank. ....

12 CFR § 25.7. CRA Factor J clarifies that the unsubsidized loans, as well, are eligible for CRA credit:

> (j) The bank's participation in governmentally insured, guaranteed, or subsidized loan programs for housing, small businesses, or small farms ....

12 CFR § 25.7(j). All of the loans to be sold (with the exception of the few direct loans) were originated under FHA's insurance programs. The fact that most unsubsidized loans are expected to be sold without FHA insurance is not relevant; the significant point is that the loans were initially made under FHA insurance programs.

The loans to be sold are multifamily loans; the examples given by the supervisory agencies in their Statement Regarding the Community Reinvestment Act, 54 Fed. Reg. 13742, 13744 (April 5, 1989), indicate that lending on multifamily housing for low- and moderate-income occupants is considered favorably in CRA examinations, as is single-family lending to low- and moderate-income borrowers.

Factor J imposes no express requirement that property securing a loan must be within the institution's community in order for it to be considered favorably in a CRA examination. Indeed, Section II-D of the FDIC examination manual instructs examiners to look at an institution's participation in government programs outside of its delineated community as well as its in-community participation. Further, the federal supervisory agencies, in their

answer to Question 30 of the Interagency Questions and Answers Regarding Community Reinvestment, indicated that support of low- and moderate-income housing in areas outside an institution's community will be considered favorably in reaching an overall CRA conclusion. (Of course, such activities would not be sufficient to compensate for an otherwise unacceptable CRA record within the institution's community.)

The answer to Question 29 indicates that full service institutions may use purchases of housing loans and "FHA guaranteed" loans to augment their other CRA lending activities, and limited purpose institutions may include such loans as well.

If the property securing a loan is located within the purchasing institution's community, Factors E, H, I and L, 12 CFR § 25.7 would also support your conclusion that the loan qualifies for CRA credit.

In view of the foregoing, we think you will have no difficulty concluding that the loans to be sold by HUD are eligible for credit under the existing CRA regulations.

Proposed CRA Regulations

It is clear that the subsidized loans "primarily benefit low- or moderate-income individuals." The unsubsidized loans, because they were originated under HUD's mortgage insurance programs, as stated above, should likewise be categorized as primarily for the benefit of low- or moderate-income individuals. All of the loans address affordable multifamily housing needs to some degree. Therefore, under your proposed CRA regulations issued on October 7, 1994, the loans to be sold would be "qualified investments" under the "investment test" in [proposed] 12 CFR § 25.23 as long as the security property is located within the supervised institution's service area. For the same reasons and within the same parameters, the loans would also qualify for credit under the community development test for wholesale or limited-purpose institutions, [proposed] 12 CFR § 25.25, and, if appropriate, under an institution's strategic plan in accordance with 12 CFR § 25.27. The principles discussed in the answers to Question 29 and Question 30 (see above), we believe, should continue to apply under the proposed rule, and therefore we urge you to conclude that the loans to be sold would be eligible for CRA credit even if they are outside an institution's service area.

Conclusion

For the reasons discussed above, we believe you can, and should, conclude that the loans to be sold by HUD are eligible for credit under the CRA. We ask that you confirm this conclusion in writing.

WAS-79035.1

The first marketing materials regarding the loans to be sold will be distributed shortly. Accordingly, we request your immediate attention and prompt response to this inquiry. If you have any questions, comments or concerns, please contact Stephanie Smith at 202-708-0579. Thank you for your time and attention to this matter.

Very truly yours,

Nicolas P. Retsinas

Nicolas P. Retsinas
Assistant Secretary for Housing -
Federal Housing Commissioner

U. S. Department of Housing and Urban Development
Washington, D.C.

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

January 4, 1995

Mr. Timothy R. Burniston
Deputy Assistant Director for Policy
Office of Thrift Supervision
1700 G Street, N.W.
Washington, D.C. 20552

Re: CRA Credit for Loan Sales/Purchases

Dear Mr. Burniston:

The U.S. Department of Housing and Urban Development ("HUD") plans to sell certain loans held by HUD, as provided in Section 101(b) of the Multifamily Property Disposition Reform Act of 1994, Pub. L. No. 103-233 (April 11, 1994), which amended 12 U.S.C. § 1701z-11. We seek your opinion as to whether some or all of such loans, if purchased by a financial institution supervised by you, are eligible for credit both under your existing regulations and under your proposed regulations implementing the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901 et seq.

Facts

All but a few of the loans to be sold were made by HUD-approved lenders under mortgage insurance programs administered by the Federal Housing Administration ("FHA"); the few non-insured loans were direct loans made by HUD. Under the Multifamily Property Disposition Act, the loans are classified as either subsidized loans or unsubsidized loans.

"Subsidized loans" include loans secured by liens on multifamily housing projects (i) in which over 50 percent of the units are covered by subsidy contracts under Section 8 of the United States Housing Act of 1937, or by similarly structured subsidies; or (ii) which had been financed by loans insured by HUD under Section 202, 221(d)(3), 221(d)(5) or 236 of the National Housing Act. In either case, over 50 percent of the units in projects financed with subsidized loans are occupied by tenants of low or moderate income (i.e.,

with incomes at or below 50 percent of area median income or 80 percent of area med income). Subsidized loans will be sold with FHA mortgage insurance, or with assuran that the project will continue to operate in a manner at least as advantageous to the tenan

"Unsubsidized loans" (i.e., loans other than subsidized loans) are expected to be sc without FHA mortgage insurance in most cases, but some performing unsubsidized loa may be sold with insurance.

It is anticipated that federally supervised financial institutions will be among t purchasers of and investors in the loans to be sold. Investment vehicles will include, b will not be limited to, whole-loan purchases, participations, mortgage-backed securiti REMICs and trusts.

Existing CRA Regulations

It is clear that subsidized loans, because they demonstrably serve low- and moderat income tenants, are eligible for credit under the CRA if held by a federally supervised fina cial institution. The pertinent language is as follows:

> In connection with its examination of a savings association, the OTS sha assess the record of performance of the association in helping to meet the cred needs of its entire community, including low- and moderate-income neighborhood consistent with safe and sound operation of the association. ....

12 CFR § 563e.7. CRA Factor J clarifies that the unsubsidized loans, as well, are eligibl for CRA credit:

> (j) The savings association's participation in governmentally insured guaranteed, or subsidized loan programs for housing, small businesses, or small farm ....

12 CFR § 563e.7(j). All of the loans to be sold (with the exception of the few direct loan were originated under FHA's insurance programs. The fact that most unsubsidized loan are expected to be sold without FHA insurance is not relevant; the significant point is tha the loans were initially made under FHA insurance programs.

The loans to be sold are multifamily loans; the examples given by the supervisor agencies in their Statement Regarding the Community Reinvestment Act, 54 Fed. Reg 13742, 13744 (April 5, 1989), indicate that lending on multifamily housing for low- and moderate-income occupants is considered favorably in CRA examinations, as is single-famil lending to low- and moderate-income borrowers.

Factor J imposes no express requirement that property securing a loan must be within the institution's community in order for it to be considered favorably in a CRA examination

Indeed, Section II-D of the FDIC examination manual instructs examiners to look at an institution's participation in government programs outside of its delineated community as well as its in-community participation. Further, the federal supervisory agencies, in their answer to Question 30 of the Interagency Questions and Answers Regarding Community Reinvestment, indicated that support of low- and moderate-income housing in areas outside an institution's community will be considered favorably in reaching an overall CRA conclusion. (Of course, such activities would not be sufficient to compensate for an otherwise unacceptable CRA record within the institution's community.)

The answer to Question 29 indicates that full service institutions may use purchases of housing loans and "FHA guaranteed" loans to augment their other CRA lending activities, and limited purpose institutions may include such loans as well.

If the property securing a loan is located within the purchasing institution's community, Factors E, H, I and L, 12 CFR § 563e.7 would also support your conclusion that the loan qualifies for CRA credit.

In view of the foregoing, we think you will have no difficulty concluding that the loans to be sold by HUD are eligible for credit under the existing CRA regulations.

Proposed CRA Regulations

It is clear that the subsidized loans "primarily benefit low- or moderate-income individuals." The unsubsidized loans, because they were originated under HUD's mortgage insurance programs, as stated above, should likewise be categorized as primarily for the benefit of low- or moderate-income individuals. All of the loans address affordable multifamily housing needs to some degree. Therefore, under your proposed CRA regulations issued on October 7, 1994, the loans to be sold would be "qualified investments" under the "investment test" in [proposed] 12 CFR § 563e.23 as long as the security property is located within the supervised institution's service area. For the same reasons and within the same parameters, the loans would also qualify for credit under the community development test for wholesale or limited-purpose institutions, [proposed] 12 CFR § 563e.25, and, if appropriate, under an institution's strategic plan in accordance with 12 CFR § 563e.27. The principles discussed in the answers to Question 29 and Question 30 (see above), we believe, should continue to apply under the proposed rule, and therefore we urge you to conclude that the loans to be sold would be eligible for CRA credit even if they are outside an institution's service area.

Conclusion

For the reasons discussed above, we believe you can, and should, conclude that the loans to be sold by HUD are eligible for credit under the CRA. We ask that you confirm this conclusion in writing.

The first marketing materials regarding the loans to be sold will be distributed shortly. Accordingly, we request your immediate attention and prompt response to this inquiry. If you have any questions, comments or concerns, please contact Stephanie Smith at 202-708-0579. Thank you for your time and attention to this matter.

Very truly yours,

Nicolas P. Retsinas

U.S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

January 4, 1995

Honorable Jonathan Fiechter
Director
Office of Thrift Supervision
1700 G Street, N.W.
Washington, D.C. 20552

Dear Jonathan:

HUD's Federal Housing Administration is preparing to sell multifamily loans that it holds in portfolio. FHA's plan to sell these 2,200 mortgages ($7 billion in principal) is an important part of our efforts to strengthen management of FHA's insured mortgage portfolio.

HUD is requesting that OTS provide it with an opinion as to whether some or all of these loans, if purchased by a financial institution supervised by OTS, would be eligible for CRA credit. A copy of HUD's request for an opinion, addressed to Deputy Assistant Director Burniston, is attached for your information.

We look forward to working with your staff on this request.

Sincerely,

Nicolas P. Retsinas

U. S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

January 4, 1995

Honorable Eugene Ludwig
Comptroller of the Currency
250 E Street, S.W.
Washington, D.C. 20219

Dear Gene:

HUD's Federal Housing Administration is preparing to sell multifamily loans that it holds in portfolio. FHA's plan to sell these 2,200 mortgages ($7 billion in principal) is an important part of our efforts to strengthen management of FHA's insured mortgage portfolio.

HUD is requesting that OCC provide it with an opinion as to whether some o all of these loans, if purchased by a financial institution supervised by OCC, would be eligible for CRA credit. A copy of HUD's request for an opinion, addressed to Deputy Comptroller Cross, is attached for your information.

We look forward to working with your staff on this request.

Sincerely,

Nicolas P. Retsinas

U. S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

January 4, 1995

Honorable Ricki R. Tigert
Chairman
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429

Dear Chairman Tigert:

HUD's Federal Housing Administration is preparing to sell multifamily loans that it holds in portfolio. FHA's plan to sell these 2,200 mortgages ($7 billion in principal) is an important part of our efforts to strengthen management of FHA's insured mortgage portfolio.

HUD is requesting that FDIC provide it with an opinion as to whether some or all of these loans, if purchased by a financial institution supervised by FDIC, would be eligible for CRA credit. A copy of HUD's request for an opinion, addressed to Mr. Paul Sachtleben, is attached for your information.

We look forward to working with your staff on this request.

Sincerely,

Nicolas P. Retsinas

TAB VI

# Partially Assisted Multifamily Sale Confidentiality Agreement

THE CONFIDENTIALITY AGREEMENT (the "Agreement") is made and agreed to by the person designated as the Reviewer on the signature page hereof (the "Reviewer).

## Preamble

The U.S. Department of Housing and Urban Development has determined to offer for sale, employing a structured financing, certain HUD-held mortgage loans (the "Mortgage Loans"). In connection therewith, HUD has determined to permit the Reviewer to review and inspect certain documents, files, data (including computerized data on tape or other media) and other information relating to the Mortgage Loans (including the whole or any portion thereof, the "Asset Review Files") on the condition that the Reviewer execute and deliver this Agreement.

In consideration of being granted the opportunity to review and inspect the Asset Review Files, the Reviewer agrees as follows:

## Agreement

*Section 1. **Purpose.*** The Reviewer agrees that its review and inspection of the Asset Review Files shall be solely to conduct due diligence, on its own behalf and not as an agent, representative or broker of any undisclosed party, for one or more of the following purposes: (i) determining whether or not to submit a bid to purchase debt or equity of the trust in which the Mortgage Loans have been pooled; (ii) determining whether or not to provide financing with respect to the purchase of an interest in the trust; or (iii) determining whether or not to provide insurance or other credit enhancement with respect to one or more of the Mortgage Loans or with respect to any securities issued by the trust.

***Section 2. Non-Disclosure and Use of Asset Review Files.*** (a) The Reviewer agrees that, except as set forth below, all Asset Review Files shall be used by the Reviewer solely for one or more of the purposes stated in Section 1 of this Agreement. The Reviewer further agrees that it shall not, without the prior written consent of HUD, disclose any of the Asset Review Files, or any notes, summaries or other information prepared by or on behalf of the Reviewer using the Asset Review Files (the "Related Information"), to any party other than to (i) the Reviewer's employees, officers, and directors (including those of affiliates), (ii) the Reviewer's agents and representatives, including attorneys, accountants and financial advisors, (iii) prospective providers of financing, (iv) insurance firms, (v) credit rating agencies, and (vi) prospective purchasers of any interests in the trust to be purchased by the Reviewer (collectively, "the representatives"). No Representative shall be permitted to review any of the Asset Review Files or the Related Information unless such Representative: (i) has a need to review the Asset Review Files and/or the Related Information for one or more of the purposes stated in Section 1 hereof, and (ii) has entered into an agreement with the Reviewer substantially in the form of this Agreement.

(a) The term "Asset Review Files" shall not include information which: (i) is already available to the general public other than as a result of disclosure by the Reviewer or any of the Representatives, and which information is not subject to any confidentiality obligations to HUD; or (ii) is required to be disclosed by law or by regulatory or judicial process.

(b) The Reviewer shall defend, indemnify and hold HUD harmless from and against any and all claims, demands, cause of action, losses, damages, liabilities, judgments, costs and expenses (including attorney's fees) asserted against or incurred by HUD as a result of the terms and conditions of this Agreement by the Reviewer or any other person or entity to whom the Reviewer has disclosed the Asset Review Files and/or

the Related Information. In addition, if HUD determines that the Reviewer has violated any of the terms or conditions of this Agreement, HUD may refuse to accept any bids made by or on behalf of the Reviewer.

(c) The rights, powers and remedies provided for in preceding subsection (c) shall be in addition to and do not preclude the exercise of any other right, power or remedy available to HUD under law or in equity. No forbearance, failure or delay in exercising any such right, power or remedy shall operate as a waiver thereof or preclude its further exercise.

*Section 3. **Duplication.*** The Reviewer shall not, without the prior written consent of HUD, make any reproductions of the Asset Review Files or the Related Information for any person other than a Representative.

*Section 4. **Limited Access.*** The Reviewer shall inform each of its Representatives that receives any of the Asset Review Files and/or the Related Information of the requirements of this Agreement and shall require each such Representative to comply with such requirements.

*Section 5. **Termination.*** The restrictions in this Agreement shall terminate if the Reviewer acquires an interest in the trust or if the Reviewer provides, directly or indirectly, financing, insurance, or other credit enhancement; provided, however, that any claim by HUD based on a breach of this Agreement occurring prior to such acquisition or provision of financing, insurance or other credit enhancement shall survive the acquisition or provision of financing, insurance or other credit enhancement unless waived by HUD in writing. The terms and conditions of this Agreement shall remain in full force and effect if the Reviewer does not acquire an interest in the trust or does not provide such financing, insurance or other credit enhancement. The Reviewer shall promptly destroy any Asset Review Files or Related Information relating to the Mortgage Loans should the Reviewer not acquire an interest in the trust or does not provide such financing, insurance or other credit enhancement.

*Section 6. **Entire Agreement.*** This Agreement represents the entire agreement between the Reviewer and HUD relating to the treatment of the Asset Review Files and the Related Information heretofore or hereafter reviewed or inspected by the Reviewer. This Agreement supersedes all other agreements relating to such matters which have previously been executed by the Reviewer.

**IN WITNESS WHEREOF,** a duly authorized representative of the Reviewer has executed this Agreement as of the date set forth below.

REVIEWER:

______________________________
(Name of Reviewer)

By:______________________________ Date of Execution:______________________

Printed Name:______________________________

Title:______________________________

Company Name:______________________________

Address:______________________________

______________________________

Phone:______________________ Fax:______________________

***Complete and fax to (202) 496-6777 to register for bid package***

# PARTIALLY ASSISTED MULTIFAMILY SALE
# BIDDER QUALIFICATION STATEMENT

Gentlemen:

This letter of representation (the "Letter") is delivered by the undersigned (the "Investor") in connection with the receipt and review by such Investor of materials (the "Materials") from Hamilton Securities Advisory Services, Inc. ("Hamilton") relating to the securitization of certain partially assisted, multifamily mortgage loans currently held by the U.S. Department of Housing and Urban Development ("HUD").

I. Investor Information (identify Investor exactly as the name will appear on all Bidding and Closing Documentation):

A. ______________________________
Name of Investor Entity (or Individual, if Investor is purchasing in its individual capacity)

B. ______________________________
Corporate or Partnership Designation and State of Formation/Origination (if applicable)

C. ______________________________
Name of Person who will execute Bidding and Closing Documentation on behalf of Investor

D. ______________________________
Title of Person who will execute Bidding and Closing Documentation on behalf of Investor

E. ______________________________
Address of Investor

F. ______________________________
City, State, Zip Code

G. ______________ H. ______________ I. ______________
Phone Telecopy Investor Tax I.D./S.S. No.

Tracking No.______

Investor Affiliation

By checking the applicable box below, the investor hereby certifies that it is

☐ An affiliate of a mortgagor with respect to certain loans in the trust

or is

☐ Not affiliated with any mortgagor with respect to loans in the trust.

If applicable, indicate affiliation:

| FHA Project No. | Project Name |
|---|---|

If applicable, describe Investor's relationship to the mortgagor:

________________________________________

________________________________________

________________________________________

________________________________________

____________________________

Investor Qualification

With respect to the receipt and review of Materials and a potential investment in the securitization trust (the "Trust"), the Investor represents and agrees as follows:

(a) The Investor has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of any investment it may make in such Trust and is able to bear the economic risk of such investment. The Investor will, independently and without reliance upon Hamilton, HUD or any agent thereof, and based on such documents and information as it will deem appropriate, make its own appraisal of and investigation into the business, operations, property, financial and other condition and creditworthiness of the Trust, and make its own decision whether to make any such investment.

(b) The Investor is an "accredited investor", as defined in Rule 501 promulgated by the Securities and Exchange Commission under the Securities Act of 1933, as amended (the "Securities Act") and as indicated below:

By checking the applicable box below, the Investor hereby certifies that it is:

☐ a bank as defined in section 3(a)(2) of the Securities Act of 1933, as amended (the "Act"), or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions for the benefit of its employees, if such plan has total assets in excess of $5,000,000; employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

☐ a private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

☐ (i) an organization described in Section 501(c)(3) of the Internal Revenue Code, (ii) a corporation, (iii) a Massachusetts or similar business trust or (iv) a partnership, in each case not formed for the specific purpose of acquiring the securities offered, and with total assets in excess of $5,000,000;

☐ a natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000;

☐ a natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

☐ a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in CFR § 230.506(b)(2)(ii); or

☐ an entity in which all of the equity owners are accredited investors.

The Investor understands that the offer and sale of any securities issued by the Trust has not been and will not be registered under the Securities Act and has not been and will not be registered or qualified under any applicable "Blue Sky" law, and that the offer and sale of such securities will not be reviewed by, passed on or submitted to any federal or state agency or commission, securities exchange or other regulatory body.

(a) The Investor will make any proposed investment in the Trust without a view to any distribution or other transfer thereof, except in a transaction exempt from the registration requirements of the Securities Act and applicable state securities or "Blue Sky" laws. In connection therewith, the Investor hereby acknowledges that should it determine to make any investment in the Trust, the Investor will be required to execute an investment letter substantially to the effect of this Letter, with such changes or additions as you may deem necessary.

(b) The Investor agrees to comply with the confidentiality provisions contained in the Materials.

(c) This Letter has been duly executed and delivered and constitutes the legal, valid and binding obligation of the Investor, enforceable against the Investor in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or equitable principles affecting the enforcement of creditors' rights generally and general principles of equity.

Dated:____________________

Very truly yours,

Investor:______________________________

By:__________________________________

Name:_____________________________

Title:______________________________

***Complete and fax to (202) 496-6777 to register for bid package***