# TAB VII

Tuesday
February 6, 1996

federal register

Part III

# Department of Housing and Urban Development

Office of the Assistant Secretary for Housing—Federal Housing Commissioner

24 CFR Part 290
Sale of HUD-Held Multifamily Mortgages; Final Rule

4580 Federal Register / Vol. 61, No. 25 / Tuesday, February 6, 1996 / Rules and Regulations

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**Office of the Assistant Secretary for Housing-Federal Housing Commissioner**

**24 CFR Part 290**

[Docket No. FR–3970–I–01]

RIN 2502–AG59

## Sale of HUD-Held Multifamily Mortgages

**AGENCY:** Office of the Assistant Secretary for Housing-Federal Housing Commissioner, HUD.

**ACTION:** Interim rule.

**SUMMARY:** This rule adds two provisions which conform the mortgage sale regulations to Departmental policy statements made in the preamble to the proposed and final rule.[1] First, in the sale of delinquent mortgages on partially-assisted and subsidized projects, HUD will require the assumption of federal rental subsidy contracts by project purchasers, including foreclosure purchasers. In addition, mortgage purchasers may not foreclose in a manner that would terminate such assisted tenants' leases. Second, owners of partially-assisted and subsidized projects will continue to be subject to a prohibition against discriminating against certificate and voucher holders after a mortgage sale without insurance. In addition, owners of both subsidized and unsubsidized projects with mortgages that are delinquent when sold by HUD must agree to record a covenant running with the land to continue this obligation through the maturity date of the mortgage, as part of the consideration of a loan restructuring or compromise of the mortgage indebtedness with the mortgage purchaser. Alternatively, if the mortgage purchaser forecloses, this nondiscrimination obligation would become applicable to the project purchaser at foreclosure.

The Department is also providing guidance to the public on its interpretation of the current rule excluding delinquent unsubsidized mortgages from sale where HUD believes that foreclosure is unavoidable and the project is occupied by unassisted very low-income tenants who would be likely to pay in excess of 30 percent of their adjusted monthly income if the mortgage were to be sold and then foreclosed.

**DATES:** Effective date: March 7, 1996.

Comment due date: April 8, 1996.

**ADDRESSES:** Interested persons are invited to submit comments regarding this interim rule to the Rules Docket Clerk, Office of General Counsel, Room 10276, Department of Housing and Urban Development, 451 Seventh Street SW., Washington, DC 20410. Communications should refer to the above docket number and title. A copy of each communication submitted will be available for public inspection and copying between 7:30 a.m. and 5:30 p.m. weekdays at the above address. Faxed comments will not be accepted.

**FOR FURTHER INFORMATION CONTACT:** Audrey Hinton, Associate Director for Program Operations, Office of Multifamily Asset Management and Disposition, Office of Housing, Room 6160, Department of Housing and Urban Development, 451 Seventh Street, S.W., Washington, D.C. 20410, telephone (202) 708–3730, Ext. 2691. Hearing or speech-impaired individuals may call HUD's TDD number (202) 708–4594 or 1–800–877–8399 (Federal Information Relay Service TDD). (Other than the "800" number, these are not toll-free numbers.)

**SUPPLEMENTARY INFORMATION:**

### Background

The source of the Secretary's authority to sell, transfer and otherwise deal with multifamily mortgages is section 207(l) of the National Housing Act (12 U.S.C. 1713(l)), section 7(i) of the Department of Housing and Urban Development Act (42 U.S.C. 3535(i)), and section 203 of the Housing and Community Development Act Amendments of 1978, as amended, (12 U.S.C. 1701z-11) ("the 1978 Act"). Section 203 of the 1978 Act also addresses the terms and conditions under which HUD-held mortgages may be sold, distinguishing between mortgages securing subsidized and unsubsidized projects and authorizing the Secretary to enter into negotiated sales of mortgages on subsidized projects with state and local housing agencies.

A final mortgage sale rule was published on September 22, 1994 at 59 FR 48725, following public notice and a 60-day comment period on a proposed rule, published on April 11, 1994 at 59 FR 17300. The final rule became effective on October 24, 1994.

Subsequently, the mortgage sale regulations were included in a comprehensive revision of 24 CFR part 290. This is an interim rule, published and made effective on March 2, 1995 at 60 FR 11487. The September 22, 1994 mortgage sale rules were renumbered. Moreover, the final rule text was adapted to a new question and answer format, designed to enhance the accessibility of HUD's regulations to the general public. The March 2, 1995 interim rule includes a new goal section for the mortgage sale program, 24 CFR 290.3(b), based on language in the preamble to the proposed rule. It also includes a definition section, 24 CFR 290.5, applicable to all subparts of the 290 regulations. The mortgage sale regulations are currently codified at 24 CFR part 290, subpart I, in the April 1, 1995 edition of the Code of Federal Regulations.

The following section-by-section analysis describes the amendments made by this rule and related matters.

*Section 290.110 How will HUD sell unsubsidized mortgages?*

This rule does not amend § 290.110. Rather, the preamble provides an informational explanation of how this provision has been and will be implemented by HUD and in particular, discusses the provision requiring the exclusion of certain delinquent mortgages from sale.

By way of background, Congress clarified the Secretary's broad discretion in selling mortgages on unsubsidized projects in section 101(b) of the Multifamily Housing Property Disposition Reform Act of 1994 ("the 1994 Act") by adding section 203(k)(4) to the 1978 Act, as amended (12 U.S.C. 1701z-11(k)(4)). Under section 203(k)(4), the Secretary is expressly authorized to sell mortgages held on unsubsidized projects on any terms and conditions the Secretary prescribes, notwithstanding any other provision of law. The 1994 Act also changed the definitions of "subsidized" and "unsubsidized" projects, set forth in section 203(b)(2) of the 1978 Act, as amended. The category of unsubsidized projects was expanded to include partially-assisted projects (those projects without mortgage interest subsidies and with project-based rental subsidies for 50% or less of the units). (12 U.S.C. 1701z-11(b)(2); 24 CFR 290.5.) The final mortgage sale rule, published on September 22, 1994, as well as the March 2, 1995 interim rule, reflect the changes made in the 1994 Act.

Consistent with the current rule, the Department plans to sell unsubsidized mortgages without FHA insurance, on a competitive basis. Section 290.110 permits the sale of unsubsidized mortgages with or without FHA mortgage insurance. To date, HUD has sold all such mortgages (current and delinquent) without insurance and

[1] This rule and the policies contained in this rule are intended to satisfy HUD's obligations under the settlement agreement in *Walker v. Kemp*, No. C 87 2628 (N.D. Cal.).

intends to continue this policy and practice for all future sales. Further, § 290.100 is explicit that all unsubsidized mortgages will be sold on a competitive basis. This reflects the Department's policy and practice, including plans for the sale of mortgages on partially-assisted projects. The preamble to the September 24, 1994 final rule (59 FR 48727) suggested the possibility of specialized auctions for these mortgages involving a group of investors selected, in part, on the basis of their commitment to preserving the economically integrated rental use of the housing. This is no longer the Department's plan. The mechanism for preserving the mixed-income nature of partially-assisted housing will be the continuation of federal rental subsidies pursuant to § 290.112 and continuation of the owners' duty to refrain from unreasonably refusing to lease units to certificate and voucher holders, including current and future tenants, pursuant to § 290.114 of this interim rule.

Section 290.110(b) permits the sale of delinquent unsubsidized mortgages without FHA mortgage insurance but excludes certain mortgages from sale. Under § 290.110(b), HUD will not sell a mortgage if HUD believes that foreclosure is unavoidable and the project securing the mortgage is occupied by very low-income tenants who are not receiving federal rental housing assistance and who are or might become rent-burdened (paying rent in excess of 30% of adjusted monthly income) if the mortgage were to be sold and foreclosed. When formulating this rule, HUD took into consideration tenant protections under the property disposition provisions of the statute, section 203(g) of the 1978 Act, as amended (12 U.S.C. 1701z-11(g)). If HUD forecloses on a mortgage, then for a two-year period following disposition of the project, rents for pre-existing unassisted very low-income tenants cannot be increased by the purchaser to such an extent that these tenants would become rent-burdened. Further, such tenants, who were already rent-burdened prior to disposition, receive a rent freeze for a two-year period. (See preamble to the proposed rule, 59 FR 17502 (April 13, 1994) and to the final rule, 59 FR 48727 (September 22, 1994).)

The preambles to the proposed and final rules do not indicate how HUD would interpret and apply the phrase "foreclosure is unavoidable" and no public comments were offered on this specific issue. HUD's practice has been to consider foreclosure to be "unavoidable" if legal notice of the foreclosure sale has been published or HUD has initiated foreclosure sale marketing activities. Picking one or more procedural steps results in the application of a uniform, objective standard by the agency. However, these benchmarks are not predictive of whether "foreclosure is unavoidable" in any given situation and have been questioned by owners and other affected parties in specific cases. In theory and in practice, a borrower might offer HUD (or a mortgage purchaser if the loan were to be sold) an acceptable workout agreement late in the foreclosure process or seek approval to transfer the property to a purchaser who offers to invest resources to cure the mortgage delinquency.

HUD has reconsidered its practice and decided to advise the public of the circumstances that will give rise to a determination that foreclosure is unavoidable for purposes of § 290.110(b). In the future, HUD plans to use different but objective guidelines, ones that relate more closely to Congressional intent in giving HUD broad discretion in the management and disposition of its portfolio of unsubsidized mortgages. In the sale of delinquent unsubsidized mortgages, HUD's primary objective is to avoid foreclosures by maximizing opportunities for private sector loan restructurings. This is the most expeditious way to restore properties to stable operating condition, which benefits all current and future tenants and affected communities.

First, HUD's general practice will be to consider foreclosure to be unavoidable if the project is occupied and HUD is mortgagee-in-possession ("MIP"). Typically, HUD seeks MIP status where the owner has abandoned the property or where necessary to protect the health and safety of residents while HUD pursues a foreclosure action. In these circumstances, prospects for a successful loan restructuring are remote and the probability of foreclosure is high. While not a constraint on the exercise of the Secretary's discretion to sell unsubsidized mortgages under section 203(k)(4) of the 1978 Act, as amended, it should be noted that, when HUD is MIP, it has certain statutory duties with respect to the operation of a project. (See, e.g., sections 203(d)(2) and 203(j)(1) of the 1978 Act.)

Second, even when the agency is not MIP, HUD's general practice will be to consider foreclosure to be unavoidable where HUD has determined that the property may be vacated by a foreclosure sale purchaser for demolition, rebuilding, conversion of use or substantial rehabilitation resulting in temporary relocation of more than 90 days or permanent displacement of residents. (See section 203 (g) and (j) of the 1978 Act, as amended; 24 CFR 290.42 and 290.38.) Typically, HUD's decision will be reflected in the foreclosure sale bid package and in its foreclosure sale notices sent to tenants and local government pursuant to section 203(c)(3)(A) of the 1978 Act, as amended; 24 CFR 290.22. Implementation of such foreclosure terms, including provision of tenant relocation assistance, requires ongoing HUD involvement and control. HUD's general practice will be to exclude the mortgages on such projects from its sale program.

Neither HUD's earlier practice nor this revised guideline is intended to create new binding norms. It simply interprets the underlying standard which continues to be whether foreclosure is unavoidable and whether unassisted very low-income tenants are or would become rent-burdened if the mortgage were to be sold and foreclosed.

*Section 290.112 What are the requirements for continuing federal rental subsidy contracts?*

The preamble to the proposed mortgage sale rule stated that "The Department will sell delinquent mortgages on such projects that it believes can be worked out. While the Department would not expect it to be needed, purchasers of such mortgages would retain the option of foreclosure because the ability to foreclose facilitates workout activity." (See 59 FR 17501.) As discussed earlier, this reflects the Department's current policy and experience. Yet, no matter how prescient the Department might be in selecting delinquent mortgages for sale, some post-sale foreclosures will inevitably occur. HUD believes that this eventuality must be addressed more fully and prescriptively than it was in the proposed and final rule. Potential investors, project owners and tenants would benefit from a clearer statement of HUD's policies and loan sale requirements.

In the preamble to the April 13, 1994 proposed rule, HUD stated that "Under this rule, HUD would require that purchasers of mortgages agree not to induce any project owner to terminate a project-based Section 8 assistance contract, and, in the event of foreclosure, to assume any Section 8 contract." (59 FR 17502) HUD received a comment that this policy and related statements should be included in the rule text and that "purchasers of mortgages should be required to impose

upon any purchaser of a project at foreclosure the obligation to accept the existing Section 8 contract." (National Housing Law Project letter, June 10, 1994, page 6.) In the preamble to the September 22, 1994 final rule, HUD rejected this change as unnecessary while agreeing with the policy content of the comment. (59 FR 48727) Section 8 housing assistance continues when a purchaser at foreclosure, with HUD's approval, agrees to assume the obligations of the housing assistance payments contract. However, the legal basis for requiring the assumption of such contracts by a project purchaser, including a foreclosure purchaser, warrants clarification.

Section 290.112 of this rule implements HUD's authority under section 203(k) of the 1978 Act to include this requirement in its mortgage sale documents. As a term or condition of buying a delinquent HUD-held mortgage, the mortgage purchaser and its successors or assigns must agree to assume project-based and tenant-based rental subsidy contracts, in the event it acquires title to the project. Further, the mortgage purchaser and its successors and assigns must also agree to record a covenant as a condition of a loan restructuring, or acceptance of an owner's discounted pay-off of the debt, or in the event of foreclosure, in the foreclosure deed. The covenant will require the assumption of any federal rental subsidy contract by any project purchaser, for any sale occurring during the life of such subsidy contract. The covenant will expire on the date the last project-based federal rental subsidy contract expires by its own terms.

Imposition of this condition on a mortgage purchaser and indirectly, on a current or future project owner, is well within the scope of HUD's discretion. If an owner has been spared from foreclosure, which typically carries significant adverse tax consequences, and has received the benefit of a loan restructuring or discounted pay-off from the mortgage sale purchaser, the owner has received consideration for recording this covenant. Extracting a public policy *quid pro quo* from the owner, in the form of a covenant requiring future owners to assume federal project-based and tenant-based rental assistance contracts, further assures that HUD's mortgage sale program benefits low-income tenants.

As indicated by the "except where otherwise approved by HUD" language in § 290.112, HUD retains its authority under the rental subsidy contract and applicable program regulations to reject the assignment of a subsidy contract to a foreclosure purchaser or other purchaser, to terminate the contract, and to provide certificates or vouchers to assisted tenants. The obligation of a purchaser to assume a federal subsidy contract does not imply any obligation on the part of HUD to approve the assignment of the contract to a new project owner.

In HUD's discussion of the ongoing nature of Section 8 contracts post-foreclosure in the preamble to the proposed rule, it was assumed, *sub silentio*, that tenant leases entered into pursuant to such contracts would also remain in effect. Under most state laws, these leases could be terminated by foreclosure, raising a question about the rights of assisted tenants in occupancy. This rule is intended to eliminate any uncertainty about this by requiring the mortgage purchaser and its successors and assigns, in the event of a foreclosure of the mortgage, to foreclose in a manner that does not interfere with any lease of tenants receiving existing federal project-based or tenant-based rental assistance. Subject to this limitation, the rule is not intended to alter or otherwise affect the good cause eviction standards or other procedural requirements provided by HUD's regulations. (*See, e.g.*, 24 CFR part 247 and §§ 880.607 and 881.607.)

The Department is considering adopting requirements safeguarding the possessory rights of unassisted tenants in the event of a foreclosure. This is consistent with the congressional statement of policy that the administration of federal housing and development programs should minimize involuntary displacement of persons from homes and neighborhoods, 42 U.S.C. 5313 (note). Specifically, HUD would require that existing leases of unassisted tenants be maintained after foreclosure for a period equal to the remaining term of the lease or one year, whichever period is shorter, if the leases could otherwise be extinguished under state foreclosure law. This is analogous to the obligation imposed on foreclosure sale purchasers when HUD forecloses under the Multifamily Mortgage Foreclosure Act of 1981, as amended, 12 U.S.C. 3713(c); 24 CFR 27.45(b). This requirement was not raised in the April 13, 1994 proposed rule. HUD has not included a provision in this rule and will take public comment into consideration before adding such a provision through a final rule.

On or about the mortgage sale closing date, HUD also will take steps to provide notice, through posting or otherwise, to tenants in projects covered by § 290.112. The notice will inform tenants that HUD has sold the mortgage on their project and will advise them of the continuation of federal rent subsidy and of the tenant lease protections in event of foreclosure. HUD will advise tenants of their right to enforce these requirements.

*Section 290.114 What policies apply concerning nondiscrimination in admitting certificate and voucher holders?*

This new section would continue in effect, after a mortgage sale without FHA mortgage insurance, policies against an owner's unreasonable refusal to lease to Section 8 certificate and voucher holders. As explained herein, owners of subsidized and some unsubsidized (partially-assisted) projects are bound by this nondiscrimination provision while HUD insures or holds the mortgage. All purchasers of HUD foreclosed properties, whether formerly subsidized or unsubsidized, are subject to a comparable requirement.

This rule effectuates HUD's intent, as set forth in the preamble to the proposed mortgage sale rule. (59 FR 17502) In response to public comment, HUD declined to include in the regulation, itself, a nondiscrimination prohibition on the grounds that the requirement was imposed by other regulations. (59 FR 48727) The Department had in mind section 8(t) of the United States Housing Act of 1937 (42 U.S.C. 1437f(t)), which contains a prohibition against refusing to lease to certificate or voucher holders. Its applicability to project owners that have received Section 8 is not affected by HUD's sale of these mortgages. However, HUD now recognizes that another applicable provision, section 183(c) of the Housing and Community Development Act of 1987 (42 U.S.C. § 1437f note)(the "1987 Act"), covers additional types of projects (such as a 221(d)(3)(BMIR) or Section 236 project without Section 8 LMSA). Upon sale of the mortgage without insurance, section 183(c) coverage would be terminated.

Section 183(c) of the 1987 Act provides that, while HUD insures or holds a mortgage, "No owner of a subsidized project, as defined in section 203(i)(2) of the Housing and Community Development Amendments of 1978 Act, as amended by section 181(h) of this Act [the 1987 Act]" shall refuse to lease any available unit to Section 8 certificate or voucher holders." Section 203(i)(2) was repealed by the complete amendment of section 203 in section 101 of the 1994 Act. Section 203(b) of the 1978 Act, as amended by the 1994 Act, nonetheless, makes it clear that the previous definition of "subsidized project" continues to apply for purposes of

section 183(c). Therefore, although partially-assisted projects (projects with market-rate mortgages and with project-based rental assistance, but on no more than 50 percent of the units) are "unsubsidized projects" for purposes of mortgage sales and project sales under section 203 of the 1978 Act, they are "subsidized projects" for purposes of section 183(c).

The purpose of this new § 290.114 is to provide a clear basis for HUD to impose, as a term or condition in its sale of certain mortgages, a prohibition on discrimination against Section 8 certificate or voucher holders. Section 290.114(a) contains a nondiscrimination requirement comparable to section 183(c). Section 290.114(c) applies this requirement to all projects that were subject to section 183(c) immediately before a mortgage sale without FHA mortgage insurance. If HUD continued to hold the mortgage, the nondiscrimination obligation would terminate when the mortgage obligation was satisfied, whether through a prepayment or regular mortgage amortization. Therefore, the rule similarly limits the period of this obligation with respect to current mortgages on partially-assisted projects and subsidized projects sold without FHA insurance.

Section 290.114(d) requires, for any mortgage that is delinquent at the time HUD offers it for sale, that the mortgage purchaser impose a nondiscrimination covenant as a condition of any loan restructuring, acceptance of a discounted pay-off of the debt from the owner, or in the event of foreclosure, in the foreclosure deed. The covenant would be applicable for a period equal to the remaining term of the HUD mortgage. For the reasons discussed in the explanation of § 290.112, extracting a public policy *quid pro quo* from the owner, in the form of a covenant not to discriminate against Section 8 certificate or voucher holders, is an appropriate means to further assure that HUD's mortgage sale program benefits lower income tenants.

With respect to delinquent mortgages that are foreclosed by mortgage purchasers, or their successors or assigns, the rule simply assures parity with the treatment of projects foreclosed by HUD. Section 204 of the 1978 Act (12 U.S.C. 1701z-12), directs HUD to require a purchaser of any HUD-owned multifamily project to not unreasonably refuse to lease units to certificate holders that rent at or below Section 8 fair market rents. This provision also applies to a party that outbids HUD at the foreclosure sale and acquire title. (See 24 CFR 290.30 and 290.46.)

Accordingly, § 290.114(d) applies to the sale of all delinquent HUD-held mortgages, including delinquent mortgages securing unsubsidized projects with no project-based assistance.

Section 290.114(a) excludes unsubsidized mortgages securing projects with no project-based assistance if they are current at the time HUD offers them for sale. The Department has excluded these projects because they are not subject to section 183(c) of the 1987 Act immediately before HUD sells the mortgages and are not at risk of foreclosure, making future coverage under section 204 of the 1978 Act, discussed below, an irrelevant factor.

## Other Matters

*Executive Order 12866*

This rule was reviewed by the Office of Management and Budget (OMB) under Executive Order 12866, Regulatory Planning and Review. Any changes made to the rule as a result of that review are clearly identified in the docket file, which is available for public inspection in the office of the Department's Rules Docket Clerk, room 10276, 451 Seventh Street SW, Washington, D.C.

*Regulatory Reinvention*

Consistent with Executive Order 12866, and President Clinton's memorandum of March 4, 1995 to all Federal Departments and Agencies on the subject of Regulatory Reinvention, the Department is reviewing all its regulations to determine whether certain regulations can be eliminated, streamlined or consolidated with other regulations. As part of this review, this interim rule, at the final rule stage, may undergo revisions at the final rule stage in accordance with the President's regulatory reform initiatives. In addition to comments on the substance of these regulations, the Department welcomes comments on how this interim rule may be made more understandable and less burdensome.

*Environmental Impact*

In accordance with 40 CFR 1508.4 of the regulations of the Council on Environmental Quality and 24 CFR 50.20(k) of the HUD regulations, the policies and procedures contained in this rule relate only to HUD administrative procedures and, therefore, are categorically excluded from the requirements of the National Environmental Policy Act.

*Executive Order 12612, Federalism*

The General Counsel, as the Designated Official under section 6(a) of Executive Order 12612, *Federalism*, has determined that the policies contained in this rule will not have substantial direct effects on States or their political subdivisions, or the relationship between the federal government and the States, or on the distribution of power and responsibilities among the various levels of government. As a result, the rule is not subject to review under the Order. Specifically, the requirements of this rule are directed to HUD administrative procedures, and do not impinge upon the relationship between Federal government and State and local governments.

*Executive Order 12606, the Family*

The General Counsel, as the Designated Official under Executive order 12606, *The Family*, has determined that this rule does not have potential for significant impact on family formation, maintenance, and general well-being, and, thus, is not subject to review under the order. No significant change in existing HUD policies or programs will result from promulgation of this rule, as those policies and programs relate to family concerns.

*Regulatory Flexibility Act*

The Secretary, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)) has reviewed and approved this rule, and in so doing certifies that this rule will not have a significant economic impact on a substantial number of small entities. This rule will not affect the ability of small entities, relative to larger entities, to bid for and acquire HUD-held mortgages that HUD decides to sell.

*Justification for Interim Rulemaking*

In general, the Department publishes a rule for public comment before issuing a rule for effect, in accordance with its own regulations on rulemaking, 24 CFR part 10. However, part 10 provides for exceptions from that general rule where the agency finds good cause to omit advance notice and public participation. The good cause requirement is satisfied when prior public procedure is "impracticable, unnecessary, or contrary to the public interest." (24 CFR 10.1) The Department finds that prior public comment is unnecessary because adequate opportunity to comment on the two regulatory provisions added by this rule has already been provided. The policies implemented by §§ 290.112 and 290.114 were discussed in the April 1994 proposed mortgage sale rule and in

the September 1994 final rule. In both documents, these policies were described as existing HUD policy, and HUD received public comment requesting that the policies be included in the rule itself. When the Department published the September 1994 final rule, it did not include the policies in the rule, not from a disagreement with the commenter over the substance of the policy, but because the Department believed that the policies could be implemented without adding regulatory provisions. As discussed above in the section-by-section analysis, there are limitations in existing authority that could allow for less than full and effective implementation of either of these policies. Further, inclusion of these requirements in announcements of future mortgage sales or in HUD loan sale documents may not provide adequate notice to tenants, owners and prospective investors of these obligations. On further consideration, therefore, the Department is establishing express regulatory bases for these policies.

List of Subjects in 24 CFR part 290

Low and moderate income housing, Mortgage insurance.

Accordingly part 290 of Title 24 of the Code of Federal Regulations is amended as follows:

## PART 290—MANAGEMENT AND DISPOSITION OF HUD-OWNED MULTIFAMILY PROJECTS AND CERTAIN MULTIFAMILY PROJECTS SUBJECT TO HUD-HELD MORTGAGES

1. The authority citation for part 290 is revised to read as follows:

Authority: 12 U.S.C. 1701z–11, 1701z–12, 1713, 1715b, 1715z–1b; 42 U.S.C. 3535(d) and 3535(i).

2. New §§ 290.112 and 290.114 are added to read as follows:

**§ 290.112 What are the requirements for continuing federal rental subsidy contracts?**

For any mortgage that, at the time HUD offers the mortgage for sale without FHA mortgage insurance, is delinquent and secures a subsidized project or unsubsidized project that receives any of the forms of assistance enumerated in paragraph (4)(i) to (4)(iv) of the "subsidized project" definition in § 290.5:

(a) The mortgage purchaser and its successors and assigns shall require the mortgagor to record a covenant running with the land as part of any loan restructuring or of a final compromise of the mortgage debt and shall include a covenant in any foreclosure deed executed in connection with the mortgage. The covenant shall continue in effect until the last federal project-based rental assistance contract expires by its own terms. The covenant shall provide that, except where otherwise approved by HUD, a project purchaser shall agree to assume the obligations of any outstanding—

(1) Project-based federal rental subsidy contract; and

(2) Tenant-based Section 8 housing assistance payments contract with a public housing agency and the related lease.

(b) In the event of foreclosure of the mortgage sold by HUD, the mortgage purchaser and its successors and assigns shall not foreclose in a manner that interferes with any lease related to federal project-based assistance or any lease related to tenant-based, Section 8 housing assistance payments.

**§ 290.114 What policies apply concerning nondiscrimination in admitting certificate and voucher holders?**

(a) *Nondiscrimination requirement.* For any mortgage described in paragraph (c) or (d) of this section that HUD sells without FHA mortgage insurance, the project owner shall not unreasonably refuse to lease a dwelling unit offered for rent, offer or sell cooperative stock, or otherwise discriminate in the terms of tenancy or cooperative purchase and sale because any tenant or purchaser is a certificate or voucher holder under 24 CFR part 982.

(b) *Inapplicability to current mortgages securing unsubsidized projects that receive no project-based assistance.* The nondiscrimination requirements of this section do not apply to any mortgage, that is current under the terms of the mortgage, at the time HUD offers it for sale, if the mortgage secures an unsubsidized project that does not receive any of the forms of project-based assistance enumerated in paragraph (4)(i) to (4)(iv) of the "subsidized project" definition in § 290.5.

(c) *Applicability to mortgages securing unsubsidized projects receiving project-based assistance (partially-assisted projects) or securing subsidized projects.* (1) The nondiscrimination requirement in paragraph (a) of this section applies to the project owner upon the sale of a mortgage without FHA mortgage insurance if, at the time HUD offers the it for sale, the mortgage secures:

(i) An unsubsidized project that receives any of the forms of assistance enumerated in paragraph (4)(i) to (4)(iv) of the "subsidized project" definition in § 290.5; or

(ii) A subsidized project, as defined in § 290.5.

(2) This requirement shall continue in effect until the mortgage is paid in full, including by a mortgage prepayment, except as provided in paragraph (d) of this section.

(d) *Covenant requirement for all delinquent mortgages sold without FHA mortgage insurance.* This paragraph (d) applies to the sale of any mortgage that is delinquent at the time HUD offers it for sale without FHA mortgage insurance, without regard to the subsidy status of the project. The mortgage purchaser and its successors and assigns shall require the mortgagor to record a covenant running with the land as part of any loan restructuring or final compromise of the mortgage debt and shall include a covenant in any foreclosure deed executed in connection with the mortgage. The covenant shall set forth the nondiscrimination requirement in paragraph (a) of this section. The covenant shall continue in effect until a date that is the same as the maturity date of the mortgage sold by HUD.

Dated: January 11, 1996.

Nicolas P. Retsinas,

*Assistant Secretary for Housing—Federal Housing Commissioner.*

[FR Doc. 96–2455 Filed 2–5–96; 8:45 am]

BILLING CODE 4210–27–P

# TAB VIII

# PARTIALLY ASSISTED MULTIFAMILY SALE
# SERVICER LETTER OF REPRESENTATION

Ladies and Gentlemen:

This servicer letter of representation (the "Letter") is delivered to the United States Department of Housing and Urban Development ("HUD") by the undersigned (the "Servicer") in connection with the bid by the investor named below (the "Investor") on the trust certificate (the "Class A Trust Certificate") relating to the securitization and servicing of certain partially assisted, multifamily mortgage loans currently held by HUD. Capitalized terms used herein but not defined shall have the meanings set forth in the Preliminary Bidding Materials dated May 13, 1996 (as revised and supplemented, the "Bidding Materials") or if not defined therein, in the form of Trust Agreement distributed to the Purchaser.

I. <u>Investor and Servicer Information</u> (identify the Investor and Servicer exactly as the name will appear on all Closing Documentation:

A. ______________________________
Name of Investor Entity

B. ______________________________
Name of Servicer Entity

C. ______________________________
Corporate or Partnership Designation and
State of Formation/Origination of the Servicer

D. ______________________________
Name of Person who will execute the
Servicing Agreement on behalf of the Servicer

E. ______________________________
Address of Servicer

F. ______________________________
City, State, Zip Code

H. ________ I. ________ G. ______________
Phone Telecopy Servicer Tax I.D.

II. Servicer Qualification:

The Servicer hereby represents and warrants as follows:

(A) the Servicer has been approved as at least an "Above Average Special Servicer" by Fitch Investors Service, L.P. ("Fitch") and as an "Approved" special servicer by Standard & Poor's Rating Group ("S&P");

(B) the Servicer is not:

(i) an entity debarred from doing business with FHA pursuant to Title 24 of the Code of Federal Regulations, Part 24;

(ii) an entity controlled by an FHA employee or by a member of such employee's household;

(iii) an entity which employs or uses the services of an FHA employee involved in the FHA Partially Assisted Sale other than in such employee's official capacity;

(iv) an entity employing the services of an FHA employee to assist in the preparation of the Servicer's bid;

(v) a contractor, subcontractor and/or consultant (including any agent of the foregoing) who performed or is performing services for, or on behalf of, FHA in connection with the FHA Partially Assisted Sale or any Affiliate of such contractor, subcontractor, consultant or agent;

(vi) an entity using the services for its servicing, of an employee or former employee of an entity listed in (v) above;

(vii) an entity that served as a loan servicer or performed other services for, or on behalf of, FHA, with respect to any of the Mortgage Loans at any time during the two (2) year period prior to May 22, 1996, or any Affiliate thereof; or

(viii) any Mortgagor or an entity affiliated with any such Mortgagor;

(C) in the event that the Investor's bid is the winning bid, the Servicer agrees that it will act as servicer on the terms set forth in the form of Servicing Agreement provided with the Bidding Materials; and

(D) the Servicer agrees to furnish customary information about itself for purposes of providing appropriate disclosure in the PPM; and

(E) The Servicer hereby agrees to execute and deliver the Servicing Agreement in the form included in the Bidding Materials on the Closing Date, subject to satisfaction of the conditions set forth in Section 5(a) of the Investor's Trust Certificate Purchaser Agreement.

This Letter has been duly executed and delivered and constitutes the legal, valid and binding obligation of the Servicer, enforceable against the Servicer in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws or equitable principals affecting the enforcement of creditors' rights generally and general principles of equity.

Dated:____________

Very truly yours,

Servicer:______________________

By:__________________________

Name:__________________

Title:___________________

TAB IX

## REQUEST FOR RECEIPT OF INDICATIVE BOND BIDS

## FHA PARTIALLY ASSISTED SALE

To: Hamilton Securities Advisory Services, Inc.
Attn: Rick Wolf

From: Bidder Name:

______________________________

Address:

______________________________

City, State, Zip:

______________________________

Authorized Contact Person:

______________________________

Phone:

______________________________

Fax:

______________________________

This form should be submitted via fax to Hamilton Securities Advisory Services, Inc., Attn: Rick Wolf, at (202) 496-6777, by 3:30 P.M., May 20, 1996.