905

TRUST CERTIFICATE PURCHASE AGREEMENT

United States Department of Housing
and Urban Development ("HUD")

Re: Multifamily Mortgage Trust 1996-1

Ladies and Gentlemen:

1. Purchase; Terms.

The undersigned purchaser (the "Purchaser") hereby offers to purchase the Class A Trust Certificate (the "Class A Trust Certificate") issued by Multifamily Mortgage Trust 1996-1 (the "Issuing Trust") pursuant to the terms and conditions set forth herein and in the Purchaser's Class A Trust Certificate Bid Form submitted herewith (the "Purchaser's Bid"), which terms and conditions are hereby incorporated by reference herein. This offer may not be revoked by the Purchaser for any reason; provided, however, that this offer will expire if not accepted by you on or before June 5, 1996. This offer may be rejected by you, in whole or in part, for any reason. It is understood that the Class A Trust Certificate will be issued pursuant to the terms of the Trust Agreement (the "Trust Agreement") to be entered into by the Purchaser and the Owner Trustee thereunder (the "Owner Trustee"). The Trust Agreement and the other Transaction Documents shall be in the form submitted with the Bidding Materials (defined herein) with only such changes as may be required to reflect the terms of the final Bond structure.

Terms not defined herein shall have the meanings set forth in the Preliminary Bidding Materials, dated May 13, 1996, as may have been revised or supplemented prior to the date hereof (the "Bidding Materials") or if not defined therein, in the form of the Trust Agreement distributed to the Purchaser.

2. Purchaser Representations, Warranties and Covenants.

In connection with such purchase, the Purchaser agrees to the following terms and conditions and represents and warrants as follows:

(a) The Class A Trust Certificate is being purchased by the Purchaser for investment purposes only, for

the Purchaser's own account and not with a view to the distribution thereof, and the Purchaser is not participating directly or indirectly, in an underwriting or any such undertaking, and under no circumstances will the Purchaser attempt to sell, transfer, pledge or otherwise dispose of all or any portion of the Purchaser's interest in the Class A Trust Certificate except in accordance with the terms of the Class A Trust Certificate and the Trust Agreement.

(b) The Purchaser will not take, or cause to be taken, any action that would cause the Purchaser to be deemed an underwriter, as defined in Section 2(11) of the Securities Act of 1933, as amended (the "Act"), of the Class A Trust Certificate. The Purchaser represents that it has not distributed this Trust Certificate Purchase Agreement (the "Agreement"), the Transaction Documents, or any other Bidding Materials to anyone other than (i) any accountant and attorney or other advisor for the Purchaser, (ii) an entity reasonably believed to be a qualified institutional buyer as defined under Rule 144A of the Act, and (iii) an entity reasonably believed to be an accredited investor as defined under Rule 501(a)(1), (2), (3) or (7) of the Act and that no one other than such persons has used the Bidding Materials.

(c) The Purchaser has been furnished the Bidding Materials and has received and reviewed information with respect to all matters the Purchaser considers material to the Purchaser's decision to purchase the Class A Trust Certificate. The Purchaser understands that you make no representations as to the accuracy or completeness of the information in the Bidding Materials. In making its decision, the Purchaser has relied solely on (i) the review by it and its agents of the Asset Review Files and the related data, (ii) its own assessment of applicable laws, policies and procedures relating to the Mortgage Loans and (iii) the specific representations and covenants to be contained in the Transaction Documents.

(d) The Purchaser acknowledges that the Purchaser, its attorney and/or any accountant, and the other persons the Purchaser has retained to advise it with respect to this investment have had the opportunity to ask questions of and receive answers from a person acting on behalf of the Issuing Trust concerning this investment. The Purchaser represents, by reason of the Purchaser's business and financial experience, that the Purchaser has the capacity to evaluate the merits and risks of this investment.

(e) The Purchaser is aware of the inability readily to liquidate its investment in the Class A Trust Certificate and the fact that the Class A Trust Certificate being purchased may have to be held indefinitely. The Class A Trust Certificate being purchased has not been and will not be

registered under the Act, in reliance on the exemptions found in Section 4(2) of the Act, and under any applicable state securities laws, and the Purchaser will not make any sale, transfer, pledge or other disposition of any such Class A Trust Certificate, unless an exemption from such registration under the Act (including Rule 144A promulgated under the Act) and under any applicable state laws is available.

(f) Information supplied by the Purchaser to HUD and the Issuing Trust with respect to income, net worth and accredited investor status is true and accurate.

(g) The Purchaser understands that no state or government authority has made any finding or determination relating to the fairness or suitability of an investment in the Class A Trust Certificate.

(h) The Purchaser understands that the representations, understandings and agreements set forth herein are being relied upon by HUD and the Issuing Trust in issuing the Class A Trust Certificate in order that such issuance may be exempt from registration under the Act by reason of Section 4(2) of the Act and from registration or qualification under state securities or "Blue Sky" laws.

IN CONNECTION THEREWITH, THE PURCHASER REPRESENTS AND WARRANTS THAT:

The Purchaser is:

(1) an institutional investor with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Class A Trust Certificate and is able to bear the economic risk of investment in the Class A Trust Certificate; and

(2) an "accredited investor" as defined in Rule 501(a) promulgated under the Act, with such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of an investment in the Class A Trust Certificate and is able to bear the economic risk of an investment in the Class A Trust Certificate.

(i) The Purchaser agrees that the Class A Trust Certificate being purchased will be subject to the provisions of the Trust Agreement. The Purchaser understands and agrees that it shall be bound by the terms and conditions of the Trust Agreement which, among other provisions, places restrictions on the transfer of the Class A Trust Certificate.

The Purchaser also understands that any certificate or certificates delivered to it evidencing the Class A Trust Certificate will contain the following legend:

> THIS TRUST CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER ANY STATE SECURITIES OR "BLUE SKY" LAWS. THIS TRUST CERTIFICATE MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION UNDER SUCH LAWS OR QUALIFICATION FOR AN EXEMPTION FROM SUCH REGISTRATION. THE OWNER TRUSTEE SHALL REQUIRE A RULE 144A AGREEMENT OR A TRANSFEREE AGREEMENT DEMONSTRATING COMPLIANCE WITH APPLICABLE SECURITIES LAWS AND, UNDER CERTAIN CIRCUMSTANCES, THE OWNER TRUSTEE MAY REQUIRE AN OPINION OF COUNSEL WITH RESPECT TO SUCH REGISTRATION OR QUALIFICATION. FURTHER, ANY TRANSFEREE OF THIS TRUST CERTIFICATE MUST DELIVER TO THE OWNER TRUSTEE, THE DEPOSITOR AND THE SERVICER A BENEFIT PLAN AFFIDAVIT. MOREOVER, THIS TRUST CERTIFICATE MAY NOT BE TRANSFERRED WITHOUT THE CONSENT OF A MAJORITY IN INTEREST IN THE CLASS B TRUST CERTIFICATES. RESTRICTIONS ON TRANSFER OF THIS TRUST CERTIFICATE ARE DESCRIBED MORE FULLY HEREIN.

(j) The Purchaser is not: (i) an entity debarred from doing business with FHA pursuant to Title 24 of the Code of Federal Regulations, Part 24; (ii) an entity controlled by an FHA employee or by a member of such employee's household; (iii) an entity which employs or uses the services of an FHA employee involved in the FHA Partially Assisted Sale other than in such employee's official capacity; (iv) an entity employing the services of an FHA employee to assist in the preparation of the Purchaser's Bid; (v) a contractor, subcontractor and/or consultant (including any agent of the foregoing) who performed or is performing services for, or on behalf of, FHA in connection with the FHA Partially Assisted Sale or any affiliate of such contractor, subcontractor, consultant or agent; (vi) an entity using the services for the Purchaser's Bid, of an employee or former employee of an entity listed in (v) above; (vii) an entity that served as a loan servicer or performed other services for, or on behalf of, FHA, with respect to any of the Mortgage Loans at any time during the two (2) year period prior to April 29, 1996, or any affiliate thereof; or (viii) any Mortgagor or an entity affiliated with any such Mortgagor. For purposes hereof, an "affiliate" of, or an entity or person "affiliated" with, a specified entity or person, is an entity or person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the entity or person specified, and "control" means the

possession, direct or indirect, of the power to direct or cause the direction of the management and policies of the entity; provided, that an equity interest in such entity in excess of 25% shall be deemed to be "control" of such entity (unless established to FHA's satisfaction that such interest in excess of 25% does not constitute "control").

(k) The Purchaser agrees not to transfer the Class A Trust Certificates in whole or in part, except in accordance with the provisions of the Class A Trust Certificate and the Trust Agreement.

(l) The Purchaser is authorized to invest in the Class A Trust Certificate.

(m) If applicable, the Purchaser certifies that in acquiring the Class A Trust Certificate it has complied with any applicable guidelines or regulations for or limitations on investments established by any regulatory agency or body which has jurisdiction over investments made by it and that the Purchaser's acquisition and retention of the Class A Trust Certificate will not violate the limitations on possession contained in any such guidelines, regulations or limitations.

(n) The Purchaser is not an employee benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or the Internal Revenue Code of 1986, as amended (the "Code"), nor a Person (as such term is defined in the Trust Agreement) acting, directly or indirectly, on behalf of or using the assets of any such plan.

3. <u>Closing</u>.

(a) The Purchaser understands that, if you accept the Purchaser's Bid, subject to satisfaction of the conditions set forth in Section 5(a), the Purchaser must deliver by wire transfer to an account designated by HUD, which wire transfer must be received by HUD prior to 1:00 p.m. on the Closing Date, in accordance with the instructions provided in the Bidding Materials, an amount (the "Closing Date Payment"), which shall equal (i) the Purchaser's Bid of $141,100,000, less the sum of (A) the Initial Trust Certificate Deposit (defined herein) and (B) the Final Trust Certificate Deposit (defined herein) (together with the Initial Trust Certificate Deposit, the "Total Trust Certificate Deposit"), less any interest accrued on the Total Trust Certificate Deposit as set forth in Section 4(c) below, and (ii) $7,636,522.50, which amount shall equal the difference between the initial aggregate principal amount of the Bonds being issued by the Issuing Trust, and the discounted price paid for the Bonds (1.5% of the initial aggregate principal amount of the Bonds).

(b) Payment of the Closing Date Payment will be made against delivery of the Class A Trust Certificate (the "Closing") at the offices of Dewey Ballantine, 1301 Avenue of the Americas, New York, New York, on June 27, 1996 (the "Closing Date").

4. Agreements.

(a) Purchaser has transferred to the account specified by HUD an initial deposit in the amount of $2,000,000 (the "Initial Trust Certificate Deposit"), in accordance with the instructions contained in the Bidding Materials.

(b) If you accept Purchaser's Bid, on June 3, 1996 the Purchaser will transfer to the account specified by HUD, a final deposit of $12,110,000 (the "Final Trust Certificate Deposit"), representing an amount, which when added to the Initial Trust Certificate Deposit equals at least 10% of the Purchaser's Bid, in accordance with the instructions contained in the Bidding Materials.

(c) No interest shall accrue for the benefit of Purchaser on the Initial Trust Certificate Deposit if Purchaser's bid is rejected. In the event that the Purchaser's bid is rejected as provided herein, HUD shall make all reasonable effort to return to the Purchaser the Initial Trust Certificate Deposit within four (4) Business Days after the date of such rejection. Upon HUD's return of the Initial Trust Certificate Deposit, all terms, conditions and obligations of this Agreement shall terminate, with the exception of Section 8, which shall survive any such termination of the remainder of this Agreement. If the Purchaser's Bid is accepted, then interest will accrue on the Total Trust Certificate Deposit from the day after Purchaser's Final Trust Certificate Deposit is received, to (and excluding) the Closing Date at a rate equal to the daily investment rate that the Federal Home Loan Bank of Atlanta makes available to HUD, minus 185 basis points. Interest so accrued on the Total Trust Certificate Deposit will be credited against the Closing Date Payment.

(d) Purchaser has submitted herewith a Servicer Letter of Representation in the form of Exhibit A attached hereto originally executed by the entity that will service the Mortgage Loans (whether such entity is the Purchaser or another entity). Purchaser agrees to establish, operate and manage the Trust in accordance with the terms of the Trust Agreement in the form included in the Bidding Materials and to execute and deliver, or if the Purchaser is not the Servicer, to cause the entity that has submitted a Servicer Letter of Representation in the form of Exhibit B attached hereto in connection with the Purchaser's bid to execute and deliver the

Servicing Agreement in the form included in the Bidding Materials.

(e) Purchaser agrees to pay all costs and expenses that it incurs in connection with the purchase of the Class A Trust Certificate and execution of this Agreement, the Trust Agreement and the Servicing Agreement. In addition, the Purchaser will also pay (i) any transfer taxes or recordation or filing fees related to the transfer of the Mortgage Loans to the Issuing Trust; (ii) any title commitment and/or title insurance costs related to the Mortgage Loans that were ordered by the Purchaser; (iii) up-front fees and expenses of the Owner Trustee; and (iv) expenses of forming the Issuing Trust.

(f) HUD agrees to pay all costs and expenses that it incurs in connection with the preparation, execution and delivery of the Transaction Documents and Mortgage Documents and the issuance and sale of the Trust Certificates and the Bonds, including, but not limited to, (i) the preparation and reproduction of this Agreement, the Bonds, the Transaction documents, the Bidding Materials, and any amendment of such documents prior to the Closing Date and (ii) the fees of Standard & Poor's Ratings Services, a division of The McGraw Hill Companies, Inc. and Fitch Investors Service, L.P. in connection with the rating of the Bonds; provided, however, that the purchaser of the Bonds will pay any fees related to obtaining the final rating letters.

(g) In the event that the Purchaser shall fail to perform any of its obligations under this Agreement, including, without limitation, the payment of any portion of the Final Trust Certificate Deposit and/or the Closing Date Payment to HUD, at the option of HUD, this Agreement shall terminate as to any and all further obligations of HUD hereunder and (i) if such termination occurs prior to the Class A Certificate Award Date, HUD shall immediately be entitled to retain the Initial Trust Certificate Deposit, plus any interest earned thereon, and (ii) if such termination occurs after the Class A Certificate Award Date, HUD shall immediately be entitled to retain the Total Trust Certificate Deposit, plus any interest earned thereon. HUD and the Purchaser agree that any payment to HUD hereunder of an amount equal to either the Initial Trust Certificate Deposit or the Total Trust Certificate Deposit, as the case may be, plus any interest earned thereon, shall be liquidated damages and not a penalty, that actual damages resulting to HUD from the Purchaser's breach of this Agreement would be difficult or impossible to measure because of the uncertainties of the market and fluctuations in the value of mortgage loans and differences with respect thereto, and that an amount equal to either the Initial Trust Certificate Deposit or the Total Trust Certificate Deposit, as the case may be, plus any

interest earned thereon, is a reasonable estimate of what those damages would be. Upon payment in full to HUD of an amount equal to either the Initial Trust Certificate Deposit or the Total Trust Certificate Deposit, as the case may be, plus any interest earned thereon, the Purchaser shall be relieved of any and all further obligations under this Agreement, except with respect to the releases granted by the Purchaser under Section 8, which shall remain in effect. Upon the termination of HUD's obligations pursuant to this Section 4(g), HUD shall be entitled to sell the Class A Trust Certificate and the Mortgage Loans in any manner that HUD deems appropriate, free and clear of any and all claims of the Purchaser.

(h) HUD agrees to reject any bid for the Bonds that is not in conformity with the requirements of the Bidding Materials to the extent that such lack of conformity would be adverse to the Class A Trust Certificateholder.

(i) HUD has provided the Purchaser with a schedule of Mortgage Loans dated as of April 30, 1996. Any principal payments received with respect to the Mortgage Loans after the date of such schedule shall be payable to the Issuing Trust. HUD will provide a revised schedule (the "Mortgage Loan Schedule"), dated as of May 31, 1996, on or before the Closing Date, which Mortgage Loan Schedule will be attached to the Loan Sale Agreement. Mortgage Loans withdrawn by HUD prior to Closing (voluntarily or at the election of the Class A Trust Certificateholder) will be deleted from the Mortgage Loan Schedule. All payments on the Mortgage Loans received after May 31, 1996 will be payable to the Issuing Trust.

(j) Purchaser agrees to cause the entity identified in the Purchaser's bid form as the Owner Trustee to act as Owner Trustee for the fee stated in such bid form.

(k) Purchaser agrees to furnish customary information about itself for purposes of providing appropriate disclosure in the final PPM.

(l) Purchaser agrees to furnish HUD no later than July 17, 1996, a form that (i) identifies the name in which the Class A Trust Certificate is to be registered, (ii) identifies the individual(s) designated by the Purchaser and the Servicer (as the case may be) to execute the Trust Agreement and Servicing Agreement and to receive the Class A Trust Certificate, (iii) indicate the type of identification such persons will provide to confirm their identities and (iv) releases HUD from any and all liability relating to HUD's delivery of documents.

(m) Purchaser and one or more eligible bidders may submit a Purchaser's Bid jointly so long as each eligible

bidder has submitted a Qualification Statement in accordance with the Bidding Materials. Each eligible bidder who executes this Trust Certificate Purchase Agreement will be jointly and severally liable to purchase the Class A Trust Certificate if the conditions in Section 5(a) are met and shall constitute the "Purchaser" for all purposes of this Trust Certificate Purchase Agreement.

5. Conditions to Closing. (a) The obligation of the Purchaser to purchase the Class A Trust Certificate as provided in this Agreement shall be subject to the following conditions:

(i) HUD shall not have withdrawn from the sale of the Mortgage Loans to the Issuing Trust, Mortgage Loans having Loan Repurchase Prices in the aggregate in excess of $25.455 million, excluding any Mortgage Loans that the Purchaser elects not to have assigned in accordance with Section 6 hereof.

(ii) HUD shall have transferred the Mortgage Loans and other property to the Issuing Trust pursuant to the terms of the Loan Sale Agreement and shall have performed all of its obligations thereunder, to the extent required to be performed prior to the Closing Date.

(iii) The Indenture Trustee shall have executed and delivered the Servicing Agreement in the form included in the Bidding Materials.

(iv) The Indenture Trustee shall have executed the Indenture in the form included in the Bidding Materials, with only such changes as may be required to reflect the final Bond structure, and the Bonds shall have been issued by the Issuing Trust and authenticated and delivered by the Indenture Trustee in accordance with the terms of the Indenture.

(v) HUD shall have approved and authorized the execution and delivery of the Class A Trust Certificate, authenticated by the Owner Trustee, to the Purchaser and the Owner Trustee shall have executed, authenticated and delivered such Class A Trust Certificate.

(vi) The Purchaser shall have received from Dewey Ballantine, counsel to HUD, one or more opinions, dated the Closing Date.

(vii) The Purchaser shall have received customary opinions of counsel as to authority and enforceability with respect to the Indenture Trustee, the Owner Trustee, the Servicer and the Cap Provider.

(viii) To the knowledge of persons at HUD who are aware of and involved in the FHA Partially Assisted Sale, there shall be no material litigation pending or threatened in writing to restrain or enjoin the issuance of delivery of the Class A Trust Certificate or the Bonds, or in any way contesting or affecting the validity of the Class A Trust Certificate, the Transaction Documents, or this Agreement, or contesting the powers of the Issuing Trust or contesting the authorization of the Class A Trust Certificate.

(ix) The Purchaser shall have received from HUD, a certificate, dated the Closing Date, in the form of Exhibit B hereto.

(x) The Closing shall have occurred prior to July 31, 1996.

(b) The obligation of HUD and the Issuing Trust to issue the Class A Trust Certificate to Purchaser as provided in the Trust Agreement shall be subject to the following conditions:

(i) The representations and warranties of the Purchaser shall be true and correct and the Purchaser shall have complied with all of its obligations under this Agreement.

(ii) The closing of the sale of the Bonds shall have occurred.

(iii) The Servicer, the Indenture Trustee, the Owner Trustee and the Purchaser shall have executed and delivered the Servicing Agreement in the form included in the Bidding Materials.

(iv) HUD shall have received customary opinions as to authority and enforceability with respect to the Class A Trust Certificateholder, the Servicer, the Owner Trustee, the Indenture Trustee and the Cap Provider.

(v) To the knowledge of persons at HUD who are aware of and are involved in the FHA Partially Assisted Sale, there shall be no material litigation pending or threatened in writing to restrain or enjoin the issuance or delivery of the Class A Trust Certificate or the Bonds or in any way contesting or affecting the validity of the Class A Trust Certificate, the validity of the Bonds or the validity of the enforcement of the Loan Sale Agreement or the Transaction Documents or contesting the authority of HUD to engage in the transactions contemplated by this Agreement.

(vi) The Closing shall have occurred prior to July 31, 1996.

(vii) The Purchaser shall have executed a letter in the form attached hereto as Exhibit C.

(c) If any of the conditions specified in this Section 5 shall not have been fulfilled in all material respects when and as provided by this Agreement, this Agreement and all obligations thereunder other than Section 8 hereunder, may be canceled (i) in the case of (a) above, by the Purchaser on the fifth Business Day after notice to HUD, which shall have the opportunity to cure such failed condition and (ii) in the case of (b) above, by HUD on the fifth Business Day after notice to the Purchaser, which shall have the opportunity to cure such failed condition. Notice of such intended cancellation shall be given to HUD in writing, or by facsimile confirmed in writing. Either party may so cancel this Agreement in the case of the failure of (b) above.

6. Rights in the Event of Casualty Loss and/or Condemnation.
(a) If, prior to the Cut-off Date, HUD or the Purchaser has received written notice that a Mortgaged Property, or any part thereof, is damaged as the result of fire or other casualty, or is taken by eminent domain, such that the cost of repair or replacement, or the award proposed by the condemning authority is reasonably likely to equal or exceed twenty percent (20%) of the then Unpaid Principal Balance of such Mortgage Loan, such party shall promptly notify the other party in writing of such damage, destruction or taking (a "Casualty/Condemnation Notice"). The Purchaser, within five (5) Business Days after it has knowledge of such damage, destruction or taking (whether as a result of a Casualty/Condemnation Notice from HUD or otherwise), by written notice to HUD (which notice shall be delivered to HUD no later than the fifth (5th) Business Day prior to the Closing Date), may elect:

(i) not to have the Mortgage Loan transferred;

(ii) to complete the sale, assignment and transfer of such Mortgage Loan without any adjustment of the Transferred Amount whatsoever, in which event, on the Closing Date, HUD shall assign to the Issuing Trust all of the insurance or condemnation proceeds, if any, paid to HUD prior to the Closing Date, to the extent such proceeds have not already been applied in accordance with the terms of the applicable Mortgage and applicable law, as well as all of HUD's rights, if any, with respect to any insurance or condemnation proceeds that may be paid or become due after the Closing Date (and upon receipt thereof, the Issuing Trust shall be required to apply such proceeds in accordance with the terms of the applicable Mortgage and applicable law).

(b) If the Purchaser elects not to have the Mortgage Loan transferred, the initial principal balance of the Bonds shall be reduced in accordance with Section 3(c) of the Bond Purchase Agreement. If the Purchaser does not make such election as provided above, the Purchaser shall be deemed to have elected to proceed with the sale, transfer and assignment of the Mortgage Loan as described in (a)(ii) above.

7. Successors and Assigns.

Neither party hereto may assign its obligations hereunder without the prior written consent of the other party; except that Purchaser may assign its rights and obligations hereunder to an Affiliate qualified to hold the Class A Trust Certificate; provided that Purchaser shall be obligated, notwithstanding such assignment, either to purchase or to cause such assignee to purchase the Class A Trust Certificate if the conditions in Section 5(a) are satisfied. Otherwise, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and to the successors and assigns of HUD and the Issuing Trust and to the successors and permitted assignees of the Purchaser.

8. Applicable Law; Consent to Jurisdiction.

This Agreement shall be governed by and construed in accordance with federal law and, to the extent that there is no applicable federal law, the laws of the District of Columbia. Each party hereby irrevocably and unconditionally agrees (i) to be subject to the exclusive jurisdiction of the United States Court of Federal Claims and (ii) (A) to the extent such party is not otherwise subject to service of process in the District of Columbia, to appoint and maintain an agent in the District of Columbia as such party's agent for acceptance of legal process, and (B) that service of process may also be made on such party by prepaid certified mail with proof of mailing receipt validated by the United States Postal Service constituting evidence of valid service, and that service made pursuant to (ii) (A) or (B) above shall have the same force and legal effect as if served upon such party personally within the District of Columbia.

9. Waiver and Release.

The Purchaser, its affiliates, officers, directors, successors or assignees thereof, and all subsequent purchasers and transferees of the Class A Trust Certificate or any interest therein, and all others claiming by or through the Purchaser or subsequent purchasers and transferees, hereby disclaim and waive any right or cause of action they may now or in the future have against HUD, or any Person acting on HUD's behalf, arising out of or relating to the sale of the Class A Trust Certificate and/or the sale, assignment and transfer of the Mortgage Loan(s); provided, however, that this waiver and release shall not extend to any liability of HUD arising from HUD's failure to perform its obligations in accordance with the terms of this Agreement. In addition, the Purchaser, its affiliates, officers, directors, successors or assignees thereof, and all subsequent purchasers and transferees of the Class A Trust Certificate or any interest therein, and all others claiming by or through the Purchaser or subsequent purchasers and transferees, hereby release HUD, or any Person acting on HUD's behalf, from any claim, demand, cause of action, judgment, loss, damage, liability, cost and expense (including attorneys' fees, whether suit is instituted or not), whether known or unknown, liquidated or contingent, arising from or related to the Class A Trust Certificate or any interest therein, or any Mortgage Loan, and Mortgage Loan Documents, or the sale, assignment or transfer thereof or arising out of the violation of any applicable laws (including, without limitation, state and federal securities laws and/or environmental laws). In the event HUD fails to comply with any of its obligations under this Agreement, the sole remedy available to the Purchaser shall be (i) prior to the Class A Trust Certificate Award Date, the return of its Initial Trust Certificate Deposit, and (ii) prior to the Closing Date, but after the Class A Trust Certificate Award Date, the return of its Total Trust Certificate Deposit, plus any interest earned thereon, as applicable. The Purchaser also hereby acknowledges and agrees that, except for any representations and warranties of HUD under Section 2 of this Agreement, by closing on the Class A Trust Certificate on the Closing Date, the Purchaser shall waive any failure by HUD prior to the Closing Date to comply with the obligations and liabilities imposed upon HUD by the terms of this Agreement.

10. Effectiveness.

This Agreement shall be effective as to HUD only upon the acceptance of the Purchaser's Bid by HUD and HUD's execution and delivery of this Agreement to the Purchaser.

11. Survival of Representations and Warranties and Waiver and Release.

The representations and warranties made by the Purchaser in Section 2 hereunder, and the waiver and release provided by the Purchaser in Section 8 hereunder and the other agreements contained herein shall remain in full force and effect, regardless of any investigation by or on behalf of HUD, and will survive delivery of the Class A Trust Certificate.

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the 29 day of May 1996.

WHUDA Real Estate Limited Partnership
By: WHUDA Gen-Par, Inc.
______________________________, general partner
The Purchaser

By: ____________________
Name: David A. Viniar
Title: Vice President

Accepted and Agreed:

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

By: ____________________
Name:
Title: