# PURCHASE AGREEMENT AND EARNEST MONEY RECEIPT

October 20, 1991

RECEIVED FROM Edward T. Arakaki, as Buyer(s),

the sum of Fifteen thousand and----------------------------no/100 (dollars) ($ 15,000.00)

receipt of which is hereby acknowledged in the form of ☐ Cash, ☒ Personal Check, ☐ Certified Check, ☐ or other, explain ________,

as earnest money to be deposited into ☐ Broker's Trust Account ☒ Escrow, ☐ other, explain ________.

UPON THE ACCEPTANCE OF THIS OFFER and to be applied to the purchase price on the property described as: Parcel Map File 39 Page 98, Lot 1 PT SW4 NW4 SEC 24-20-60 Assessor Parcel Number: 01A-310-010

commonly known as 2115 Winnwood (a 76 unit apartment building) located in the City of Las Vegas, County of Clark, State of Nevada,

FOR THE TOTAL SUM OF $ Three Million and no/100--------------------------------- (dollars) ($3,000,000.00) hereinafter referred to as the purchase price. The balance of the purchase price to be paid as follows:

$3,000,000 payable as follows: (See attached addendum)

THIS OFFER SUBJECT TO: 1) Physical inspection and approval of each and every unit. 2) Approval of all income and expense records for the past 12 months. 3) Approval of any and all existing contracts that go with the property. 4) All appliances, heating and air conditioning, electrical, plumbing to be in good repair and working order at close of escrow. 5) Roof to be in good repair. 6) Seller to deliver the property free of existing management contract. 7) Any and all warrantees to be transferred to Buyer at close of escrow.

The Buyer to review and approve existing loan agreement. Seller to furnish the Buyer an ALTA policy on the property. Buyer to approve preliminary title report. Seller not to enter into any new contracts with the exception of rental or lease agreements without expressed approval of the Buyer. All rents to be prorated to close of escrow. All deposits

SEE ATTACHED: ________

BOTH PARTIES FURTHER AGREE TO THE FOLLOWING:

1. CLOSING AND POSSESSION. Close of escrow shall be on or before 12/20/91 or sooner and date of possession shall be closing. Any rental prior to or after the close of escrow, by either Buyer or Seller, shall be by separate agreement.
2. VESTING. Title to be vested in to be determined (Show Marital Status and Tenancy).
3. PRORATIONS. Insurance premiums, taxes, interest, association fees, sewer fees, and other expenses shall be ☐ prorated ☐ not prorated, to close of escrow.
4. FHA MORTGAGE INSURANCE PREMIUM (MIP). Should the subject property have an FHA loan, the Mortgage Insurance Premium should be ☐ prorated ☐ not prorated to close of escrow.
5. ASSESSMENTS. Special assessments, namely none that are not delinquent, shall be assumed by the Buyer unless stated otherwise herein or made a requirement of the lender.
6. ESCROW HOLDER. On acceptance of this offer an escrow shall be expeditiously opened with Eileen Bechtol of Chicago Title, who shall act as escrow agent. All necessary funds and instruments shall be deposited into the escrow from time to time as required. At the request of the escrow agent, the Buyer and the Seller shall execute escrow instructions not inconsistent with this instrument. Cost of escrow, title insurance and necessary recording fees and document and transfer taxes shall be paid by the parties as follows: Buyer and seller to pay their own closing costs as customary in the State of Nevada.
7. EVIDENCE OF TITLE. Title conveyed is subject to easements, encumbrances, zoning, rights of way, restrictions, covenants, and conditions of record, unless stated otherwise herein. Seller agrees to deliver at his expense, good and marketable title as evidenced by a policy of title insurance furnished by Chicago Title. The undersigned parties hereby acknowledge that the real estate Brokers do not represent the quality or the extent of coverage of the title insurance, and further agree to hold the Brokers harmless for any deficiency in the policy.
8. DISCOUNT POINTS. If the Buyer is to obtain new FHA or VA financing, Seller shall pay the necessary discount points effective at the close of escrow for securing said Loan not to exceed N/A points. However, the Seller, at his option, may pay more than the maximum points stated herein. In the event new Conventional financing is a part of this transaction, loan fees and/or loan discount points will be paid as follows: N/A
9. LOAN APPLICATION. If Buyer is to obtain new financing, or if required by lender, buyer further agrees to make application for said loan within five (5) days from acceptance of this offer and furnish all necessary documentation for securing said loan. Otherwise, the Buyer will be in default of this contract and the Seller may seek any available remedy provided herein or by law.
10. APPRAISAL CONDITIONS. If the Buyer is to obtain new financing, the Seller agrees to obtain the appropriate appraisal in an amount not less than the sales price. Should the appraisal be less than this amount, the Buyer at his option may pay the required difference in cash, or the Seller, at his option, may reduce the purchase price accordingly. The Seller also agrees to satisfy any and all appraisal conditions contained therein, not to exceed N/A ($________).
11. OFFER EXPIRATION. Unless the Seller accepts this offer to purchase by 5:00 p.m. A.M./P.M. October 22, 1991, this offer shall be deemed revoked and the above Earnest Money shall be returned to the Buyer herein on request.
12. SELLER'S DEFAULT AND RISK OF LOSS. The Buyer, at his option, may terminate this offer to purchase and deman all monies returned if the Seller fails to deliver as herein provided or if the improvements on said property are substantially destroyed or materially damaged prior to the transfer of title. In this event, Seller will be obligated to pay all costs incurred in connection with the examination of title and escrow fees on the above described property.
13. BUYER'S DEFAULT AND RISK OF LOSS. In the event the Buyer fails to complete the purchase as herein provided, the total Earnest Money described herein less incurred expenses, may, at the option of the Seller, be retained for Liquidation Damages and as consideration for the execution of this agreement, and all rights of the Buyer hereunder shall then terminate.
14. TIME. It is understood that time is of the essence of this agreement, but at the request of any one of the parties hereto, The Prudential Hallmark Realty shall be authorized to extend for a period not to exceed thirty-one (31) days the escrow closing date and/or possession date for the purpose of completing any documentation or obtaining any approvals necessary to close said escrow.
15. CHANGES. Buyer and Seller have no power to modify in any way any right or obligation of The Prudential Hallmark Realty or any other real estate agents, including the right to compensation for its services rendered to the transaction, without first obtaining the written consent of The Prudential Hallmark Realty and the other agents.
16. VERBAL AGREEMENTS. The aforesaid constitutes the whole agreement between the parties and no verbal statements made by any party are a part hereof unless included in writing. The Buyer declares that in making this offer he is not relying upon any prior negotiations, agreements, memoranda, representations, or statements concerning the property or its uses or values made by either the Seller or any real estate agent unless set forth specifically herein.
17. LEGAL FEES. In the event either party shall prevail in any legal action commenced to enforce this agreement, he shall be entitled to all costs incurred in such actions including reasonable attorney fees.
18. BINDING AGREEMENT. This agreement shall be binding upon all parties, respective heirs, executor, assigns and/or successors in interest.
19. MULTIPLE LISTING SERVICE RELEASE. The undersigned parties agree and are aware that the terms of this sale may be released to the Las Vegas Multiple Listing Service.
20. HOME WARRANTY. Should any party hereto request or provide a Protection Plan or Home Warranty Plan, the Brokers herein do not represent the extent, duration or quality of the coverage of said plan.
21. AGENCY DISCLOSURE. The Prudential Hallmark Realty is acting in this transaction as the agent of the:
    ☐ Sub-agent of the Seller ☐ Buyer ☒ Both Buyer and Seller
    If acting as a Buyer's Agent in this transaction, the amount, form and party responsible for compensating the buyer's agent will be by separate written agreement.
22. FACSIMILE TRANSMISSIONS. Negotiations may be conducted using a facsimile machine and will be considered binding on the parties.

WHEN PROPERLY COMPLETED THIS IS A BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK COMPETENT LEGAL AID AND/OR COUNSEL BEFORE SIGNING.

The undersigned Buyer, having inspected the above described property and its appurtenances, offers and agrees to [illegible] the terms and conditions herein stated and acknowledges [illegible] of a copy of this Agreement [illegible].

[signature] BUYER — DATE: [illegible], 19 [illegible] — AM/PM

BUYER — TIME

The undersigned Seller accepts the foregoing offer to purchase and agrees to sell the above described property on the terms and conditions as stated herein and acknowledges receipt of a copy of this Agreement. Seller agrees to pay The Prudential Hallmark Realty for services rendered as per listing agreement, or one-half (1/2) of the above Earnest Money Deposit should same be forfeited by Buyer not to exceed the full amount of the fee. All brokerage fees are due to be by separate agreement

The Prudential
Hallmark Realty
An independently owned and operated member of The Prudential Real Estate Affiliates, Inc.

[signature] Ace Henriksen SELLER — DATE 10-22-91, 19 — AM/PM

[signature] SELLER — TIME

[signature] AUTHORIZED AGENT - THE PRUDENTIAL-HALLMARK REALTY — BRANCH Commercial — PHONE 251-1310

he Prudential
Hallmark Realty

# SALES CONTRACT ADDENDUM

Re: Contract for the sale and purchase of real property known as 2115 Winwood

between Edward T. Arakaki (Purchaser)

and Lewis Hildreth (Seller),

and dated October 20 19 91.

It is agreed that the following provisions are included in the aforesaid contract:

Continued:

1. All deposits to become the property of the buyer at close of escrow.
2. An inventory of personal property to be furnished to the Buyer prior to the close of escrow.
3. Pool and pool equipment to be in good working order at close of escrow.

Any and all inspections requested by buyer to be the sole responsibility of the buyer and or his agents.

All approvals or disapprovals to be in writing and furnished to the escrow company within 15 days of inspections by buyer and or his agents.

Payable as follows: $500,000.00 cash down to include aforementioned earnest money at close of escrow. $90,000.00 an approximate amount by Seller carrying a second trust deed payable monthly at 9% annual interest only with balance in full due at end of 36 months with payments to be approximately $675.00 (or more) a month with no prepayment penalty. There is a due on sale clause on this second trust deed. $2,410,000.00 by purchaser assuming and qualifying for the existing first trust deed. Purchaser to approve existing first trust deed and apply for such upon acceptance of offer.

[signature] 20 Oct 91
Purchaser Date

BROKER: Prudential Hallmark

[signature]
Purchaser Date

By: Terry & Karen Rosenquist

[signature]
Seller Date

x [signature] 10-22-91
Seller Date

PLEASE NOTE:
This form is to be used only when executed simultaneously with the execution of the aforesaid contract, and it should be attached thereto and referenced therein.

SCA90. SALES CONTRACT ADDENDUM

LAW OFFICES OF

ALSTON, COURTNAGE, MACAULAY & PROCTOR

SUITE 3900 · KEY TOWER
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104-1054

THADDAS L. ALSTON
MICHAEL S. COURTNAGE
ROBERT C. MACAULAY
CONSTANCE L. PROCTOR
ANDREW B. BASSETTI
DENISE D. WIEST

TELEPHONE
(206) 623-7600
TELECOPIER
(206) 623-1752

October 28, 1991

VIA FACSIMILE/FEDERAL EXPRESS
Chief, Multifamily Claims Section
U.S. Department of Housing and Urban Development
Office of Mortgage Insurance Accounting and Servicing
Attn: Multifamily Accounting and Servicing Division HOMMI
Washington, D.C. 20410-800
Attention Mr. Starcher

Re: Lake Mead Villa Apartments
Project No. 125-35100

Dear Mr. Starcher:

The Assignment of mortgage (the deed of trust) for Lake Mead Villa Apartments, Project No. 125-35100 was filed for record and endorsements of hazard insurance policies was accomplished today, on October 28, 1991. Following is the additional information required pursuant to your letter of instructions as provided by Seattle First National Bank, which is servicing the loan.

| | |
|---|---|
| Date of Default: | 12/1/90 |
| Unpaid Principal Balance: | $2,377,153.59 (as of date of default and date of assignment). |
| Monthly Amounts Due: | Principal and Interest - $23,626.19<br>Tax Escrow - $2,267.72<br>Insurance- $385.50<br>MIP - $1,000.00<br>Replacement Reserves - $790.42 |
| Date and Amount of Last Taxes Paid | 4/19/91 (second half taxes for 1990, including penalties) - $16,234.76 |
| Due Date of Next Taxes Payable | 1st Installment - 8/20/91 - $7,393.99<br>2nd Installment - 19/7/91 - $7,391.00<br>Tax Parcel No. 01A-310-010-92 |
| Escrow Balances | Taxes - $0.00<br>Insurance - $0.00<br>MIP - $0.00 |

R/R $410.15

US0025

Chief of Multifamily Claims Div.
U.S. Dept. of Housing and Urban Development
October 28, 1991
Page 2

| | |
|---|---|
| Initial and Final Endorsement Dates | Initial - (Seafirst Mortgage Corporation to Nevada Housing Division) - ~~No Date~~ 4-21-83<br>Final - (Nevada Housing Division to Secretary of Housing and Urban Development, his successor or assigns) ~~-October 23, 1991~~ 6-8-84 |
| COMMITTMENT | 11-18-82 |
| Our Telefax No. | 206 - 6231752 |
| Mortgagor | Name: Lake Mead Villa Apartments, a Nevada Corporation<br>Address: 5280 Valley View, Suite B Las Vegas, Nevada, 89118<br>Tax Identification No. 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 |
| Mortgagor Type of Entity | a Nevada Corporation |
| Company Managing Project | Name: Equinox<br>Address: 3100 West Charleston Blvd. Suite 202 Las Vegas, Nevada 89102-1900 |

Please contact the undersigned should you need additional information. Thank you for your assistance.

Very truly yours,

ALSTON, COURTNAGE, MacAULAY & PROCTOR

Constance L. Proctor

CLP/clp
cc. Lauria Johnson- Seafirst
Mamie Chinn - Nevada Housing

US0026

U.S. Department of Housing and Urban Development
Las Vegas Office, Region IX
1500 East Tropicana
Las Vegas, Nevada 89119-6516

OCT 2 2 1992

Mr. Edward Arakaki
Lake Mead Villa Apartments
98-1746 Hapaki Street
Aiea, HI 96701

Dear Mr. Arakaki:

SUBJECT: Provisional Workout Arrangement
Lake Mead Villa Apartments
Project Number 125-35100

Enclosed is an executed copy of the provisional workout arrangement for Lake Mead Villa Apartments. This workout states you will make your normal mortgage payment of $27,595.68 plus $6,210.86 for a period of 36 months starting January 1, 1993. This workout must bring the complex totally current.

If you have any questions, please contact David F. Ewing on (702) 388-6247.

Very sincerely yours,

Andrew Robertson
Office Manager

Enclosure

NEV 000728

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

PROJECT NO. 125-35100-PM-L8 EFFECTIVE DATE January 1, 1993

PROJECT NAME Lake Mead Villas Apartments EXPIRATION DATE December 31, 1995

LOCATION 2115 Winwood St. Las Vegas, NV 89108

PROVISIONAL WORKOUT ARRANGEMENT

The undersigned mortgagor hereby expressly acknowledges that the mortgage and note secured by the above project is in default. To afford an opportunity to effect reinstatement, the mortgagor requests the Secretary, Department of Housi[ng] and Urban Developement, to hold the defaulted note and mortgage on the subject project under the terms and conditions stated herein:

1. Possession. The mortgagor acknowledges that the default entitles HUD to assume possession of the encumbered premises, but that possession has not been demanded. As an inducement for HUD approval of this Arrangement, the mortgagor agrees that it will not oppose or interefere in any way should HUD demand possession by reason of subsequent default under the terms of this arrangement.

2. Junior Obligations. The mortgagor agrees that project revenues will not b[e] used to repay either interest or principal for any project obligation (oth[er] than reasonable and necessary operating expenses) that is junior to the Secretary's lien.

3. Payment Provision.

* a. Beginning 01/01/93 and continuing through 12/01/95 the mortgagor will remit by the first of the month a minimum payment sufficient to cover full monthly mortgage payments through principal, plus $6,210.86 This payment will be $ 33,806.54 per month.

b. Past delinquency, if any, in the Reserve for Replacement is hereby forgiven. Payments into the Reserve for duration of this workout period are hereby waived.

c. Any funds remaining in the operating account each month after payment of project operating expenses will be remitted in addition to the minimum monthly payment. This item is N/A due to payments in item 3a.

d. A two percent late charge may be assessed against payments not receive[d] by the fifteenth of the month.

NEV 000729

e. At no time will the owner permit any delinquency to accrue in either the service charge due HUD or tax escrow as billed by HUD each month.

4. Lump Sum Payments. The mortgagor agrees to make the following lump sum payments, to be applied to mortgage delinquencies, on the dates indicated:

| | |
|---|---|
| At ____________ | $ N/A |
| At ____________ | $ N/A |
| At ____________ | Payment in an amount to bring the mortgage current through (interest) (principal) (approximately $ ____________) |

5. Repairs. The mortgagor agrees to escrow $ N/A for repairs upon (TPA approval) (execution of this Workout Arrangement). The monies will be escrowed in a separate repair fund. All disbursements from this fund may be made only with the prior approval of HUD. (The attached MIO plan is incorporated and made part of the terms of this Workout arrangement.)

6. Mortgage Modification.

a. If the mortgagor has fully complied with the terms of this Arrangement, as of N/A HUD agrees to recast any delinquent principal at _____ percent interest amortized over the remaining term of the mortgage.

b. The mortgagor agrees to modify the note and mortgage to insert a call provision. The call provision gives the holder the option to declare the entire indebtedness due and payable at or after (ten years) (the longer of ten years or the remaining term of the Section 8 contract) from the date of the mortgage modification.

7. Accounting Reports. During the term of this Arrangement, the mortgagor shall submit Monthly Reports for Establishing Net Income (Forms HUD-93479, 93480 and 93481) for all project receipts, disbursements and accounts payable. The first report shall be for the month of January 1993. The original copy of each report is to be mailed to the Department of Housing and Urban Development, Office of Multifamily Housing Management, 451 7th Street, SW, Washington, DC 20410-8000.

8. Distribution. The mortgagor agrees not to take any distributions while the mortgage is being held in default under the terms of this arrangem— and of the original Note, Mortgage and Regulatory Agreement. NEV 000730

9. Cancellation Clause. This Arrangement is on a month-to-month basis. The Secretary agrees to take no action because of the existing monetary default, provided that the mortgagor remits the required minimum monthly payment and satisfactorily performs the other requirements of this arrangement. Failure of the mortgagor to meet the terms of this Arrangement will be sufficient cause for the Secretary to immediately terminate this Arrangement and to commence foreclosure action. Failure of the mortgagor to meet the terms of the arrangement is also grounds to the Department to consider taking administrative sanctions against the mortgagor including, but not limited to, suspension or debarment from participation in HUD programs.

10. Criminal Sanctions for Misuse of Project Funds. The mortgagor acknowledges that the use of project funds derived from the project covered by this arrangement for any purpose other than to meet actual and necessary project expenses is a criminal offense punishable by a fine of not more than $5,000 and imprisonment of not more than three (3) years or both.

APPROVED:

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

BY: Andrew Robertson

TITLE: Office Manager

10/22/92

MORTGAGOR: Lake Mead Villas Apartments

BY:

TITLE: Owner

DATE: October 19, 1992

** ACKNOWLEDGED:

MORTGAGOR-SELLER:

BY: N/A

DATE:

Escrow No. 91-11-0173 EB

WHEN RECORDED, MAIL TO:
Edward T. Arakaki
98-1746 Hapaki Street
Aiea, Hawaii 96701

RPTT 867.10

GRANT, BARGAIN and SALE DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Lake Mead Villa Apartments, a Nevada General Partnership

do(es) hereby GRANT, BARGAIN and SELL to

Helen H. Arakaki, a married woman, and Edward T. Arakaki, an unmarried man, as Joint Tenants

the real property situate in the County of Clark, State of Nevada described as follows:

That portion of the West Half (1/2) of the Northwest Quarter (NW 1/4) of Section 24, Township 20 South, Range 60 East, M.D.B.&M., described as follows:

Lot one (1) as shown by map thereof on file in file 39 of parcel maps, page 98 recorded March 10, 1983 in Book 1701 of Official Records, Document No. 1660407, Clark County, Nevada records.

APN 01A 310 010

TOGETHER with all tenements, hereditaments and appurtenances, including easements and water rights, if any thereto belonging or appertaining, and any reversions, remainders, rents, issues or profits thereof.

Dated February 1, 1992

Lake Mead Villa Apartments,
a Nevada General Partnership

By: [signature]
Lewis Hildreth, General Partner

By: [signature]
A.F. Henriksen, General Partner

By: [signature]
Ray Henriksen, General Partner

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
CONNIE S. WHITE
My Appointment Expires Feb. 27, 1996

STATE OF NEVADA
: ss.
County of Clark )

On 10/27/92 personally appeared before me, a Notary Public,
Lewis Hildreth,
A. F. Henriksen, and
Ray Henriksen

who acknowledged that they executed the above instrument.

[signature]
Notary Public

Space below this line for recorder's use.

THIS IS CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE SIGNED ORIGINAL BY CHICAGO TITLE AGENCY OF LAS VEGAS.
BY: [signature]

CLARK COUNTY, NEVADA
JOAN L. SWIFT, RECORDER
RECORDED AT REQUEST OF:
CHICAGO TITLE OF LAS VEGAS

10-29-92 16:43 PDR 1
BOOK: 921029 INST: 03064

FEE: 5.00 RPTT: 867.75
DEED

CONFORMED COPY-HAS NOT BEEN COMPARED TO THE ORIGINAL

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

PROJECT NO: 125-35100

EFFECTIVE DATE: March 1, 1993

PROJECT NAME: Lake Mead Villas

EXPIRATION DATE: February 29, 1996

LOCATION: 2115 Winwood Street
Las Vegas, Nevada

PROVISIONAL WORKOUT ARRANGEMENT

The undersigned Mortgagor hereby expressly acknowledges that the mortgage (Deed of Trust) and note secured by the above project is in default. To afford an opportunity to effect reinstatement, the Mortgagor requests the Secretary, Department of Housing and Urban Development, to hold the defaulted note and mortgage on the subject property under the terms and conditions stated herein:

1. Possession. The Mortgagor acknowledges that the default entitles HUD to assume possession of the encumbered premises, but that possession has not been demanded. As an inducement for HUD approval of this Arrangement, the Mortgagor agrees that it will not oppose or interfere in any way should HUD demand possession by reason of subsequent default under the terms of this Arrangement.

2. Junior Obligations. The Mortgagor agrees that project revenues will not be used to repay either interest or principal for any project obligation (other than reasonable and necessary operating expenses) that is junior to the Secretary's lien.

3. Payment Provision.

Beginning March 1, 1993, and continuing through February 29, 1996, the mortgagor will remit by the first of the month a minimum payment sufficient to pay seventy percent (70 %) of interest. This payment is currently $21,790.57 per month. We propose that the monthly mortgage payments be calculated as follows:

| | |
|---|---|
| First Year | 70% of Accruing Interest ($15,253.40) |
| Second Year | 75% of Accruing Interest ($16,342.93) |
| Third Year | 80% of Accruing Interest ($17,432.46) |

b. Past delinquency, if any, in the Reserve for Replacement is hereby forgiven. Payments in the Reserve for the duration of this workout period are hereby waived.

c. Any funds over $24,034.27 (approximately one month's principal and interest) remaining in the operating account each month after payment of project operating expenses will be remitted in addition to the minimum monthly payment.

d. A two percent late charge may be assessed against payments not received by the fifteenth of the month.

e. At no time will the Owner permit any delinquency to accrue in either the service charge due HUD or tax escrow as billed by HUD each month.

4. Lump Sum Payments. The mortgagor agrees to make the following lump sum payments, to be applied to mortgage delinquencies, on the dates indicated:

$0.00 on or before March 1, 1993

5. Repairs. The mortgagor agrees to escrow $0.00 for repairs upon execution of this Workout Arrangement.

5. Mortgage Modification.

a. If the Mortgagor has fully complied with the terms of this Arrangement, and HUD has determined that it is financially feasible, as of March 1, 1996 HUD agrees to recast any delinquent principal at eleven percent (11%) interest amortized over the remaining term of the mortgage. We propose that, as an alternative option, HUD simply extend the note for the number of months necessary to fully amortize the amount deferred.

b. The mortgagor agrees to modify the note and mortgage to insert a call provision. The call provision give the mortgagee the option to declare the entire indebtedness due and payable at or after ten years.

Equity Kicker. Mortgagor agrees to pay to HUD five percent of the gross sales price for a sale or conversion; or five percent of a refinancing (the amount needed to payoff or refinance the mortgages securing the real estate plus any equity "pulled"). This paragraph is not applicable to this situation and no "equity kicker" is due the Secretary.

Accounting Reports. During the term of this Arrangement, the Mortgagor shall submit Monthly Reports for Establishing Net Income (Forms HUD-93479, 93480 and 93481) for all project receipts, disbursements and accounts payable. We will continue to submit these reports monthly.

The original copy of each report is to be mailed to the Department of Housing and Urban Development, Office of Multifamily Housing Management, 1500 East Tropicana Avenue, Suite 205, Las Vegas, NV 89119-6516.

9. Distributions. The mortgagor agrees not to take any distributions while the mortgage is being held in default under the terms of this arrangement and of the original Note, Mortgage and Regulatory Agreement.

10. Cancellation Clause. This Arrangement is on a month-to-month basis, based on a three year plan. The Secretary agrees to take no action because of the existing monetary default, provided that the Mortgagor remits the required minimum monthly payment and satisfactorily performs the other requirements of this Arrangement. Failure of the Mortgagor to meet the terms of this Arrangement will be sufficient cause for the Secretary to immediately terminate this Arrangement and to commence foreclosure action. Failure of the Mortgagor to meet the terms of the Arrangement is also grounds to the Department to consider taking administrative sanctions against the Mortgagor including, but not limited to, suspension or debarment from participation in HUD programs.

11. Criminal Sanctions for Misuse of Project Funds. The Mortgagor acknowledges that the use of project funds derived from the project covered by this Arrangement for any purpose other than to meet actual and necessary project expenses is a criminal offense punishable by a fine of not more that $5,000 and imprisonment of not more than three (3) years or both.

APPROVED:
MORTGAGOR: LAKE MEAD VILLAS

BY: [signature]

TITLE: General Partner

DATE: JAN 26 1993

ASSISTANT SECRETARY FOR HOUSING-FEDERAL HOUSING COMMISSIONER

BY: [signature]

TITLE: Office Manager

DATE: 2/2/93

U. S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

July 5, 1995

Edward T. Arakaki
98-1746 Hapaki St.
Aiea, HI 96701
FHA Case Number: 125-35100

Dear Mr Arakaki:

The U.S. Department of Housing and Urban Development (HUD) plans to include the mortgage on the referenced property in an upcoming sale of partially assisted HUD-held multifamily mortgages secured by properties located nationwide. HUD is defining the partially assisted portfolios as loans where up to 50% of the units are associated with project-based Section 8.

The Department, together with the U.S. Congress, has determined that it is in the taxpayers' best interest to sell the multifamily mortgages that HUD has acquired so that the Department can focus more of its asset management staff and resources on proactive oversight of its insured mortgage portfolio. We expect to solicit bids for this mortgage sale sometime in the fall of 1995.

These HUD-held mortgage notes may be sold in a competitive auction or through negotiated transactions. The details of the auction will be published in an Auction Announcement which the project owner will receive approximately 100 days before the sale. The project owner's name will automatically be included in the distribution list of information related to the sale and they will receive the information consistent with the timing for all interested parties. When the sale of the mortgage on the property is closed, there will be a new mortgagee servicing the loan. HUD will notify you of the name and address of the new servicer as soon as possible after closing.

All of the loans in this sale will be sold without FHA mortgage insurance. Accordingly, the HUD Regulatory Agreement will no longer apply after the sales are closed. Because the mortgage will no longer be held by HUD, and since the HUD Regulatory Agreement will no longer apply, you will be relieved of your obligations to pay service charges and to make deposits to the reserve for replacement account.

You are reminded that, even though the mortgage on this project is offered for sale, you are required to continue sending your monthly payments to HUD until notified that the mortgage has been sold and closed. You may be assessed a late charge by HUD if payments are not received on time.

US0020

In preparation for the loan sale, we require access to the property securing this loan, as provided for in the HUD Regulatory Agreement, for purposes of performing an environmental assessment and physical inspection. We request that you grant access to representatives of Castillo Company, which has been retained by Williams, Adley & Company, to provide environmental assessments and project physical inspections on behalf of HUD. This firm will be contacting the property manager to arrange a time for a visit in the near future. We appreciate your cooperation in this matter.

If you have any questions, you may contact Ray L. Curtis of Williams, Adley & Company, HUD's Due Diligence contractor, at 202-496-0170, or Robin Rains of Hamilton Securities, HUD's Financial Advisor, at 202-483-6009, extension 231.

Sincerely,

Albert B. Sullivan

Albert B. Sullivan
Director,
Office of Multifamily Housing Management

US0021

CLASS A TRUST CERTIFICATE

THIS TRUST CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER ANY STATE SECURITIES OR "BLUE SKY" LAWS. THIS TRUST CERTIFICATE MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION UNDER SUCH LAWS OR QUALIFICATION FOR AN EXEMPTION FROM SUCH REGISTRATION. THE OWNER TRUSTEE SHALL REQUIRE A RULE 144A AGREEMENT OR A TRANSFEREE AGREEMENT DEMONSTRATING COMPLIANCE WITH APPLICABLE SECURITIES LAWS AND, UNDER CERTAIN CIRCUMSTANCES, THE OWNER TRUSTEE MAY REQUIRE AN OPINION OF COUNSEL WITH RESPECT TO SUCH REGISTRATION OR QUALIFICATION. FURTHER, ANY TRANSFEREE OF THIS TRUST CERTIFICATE MUST DELIVER TO THE OWNER TRUSTEE, THE DEPOSITOR AND THE SERVICER A BENEFIT PLAN AFFIDAVIT. MOREOVER, THIS TRUST CERTIFICATE MAY NOT BE TRANSFERRED WITHOUT THE CONSENT OF ALL OF THE HOLDERS OF THE CLASS B TRUST CERTIFICATES AND A MAJORITY OF THE HOLDERS OF THE CLASS F AND CLASS G BONDS WHICH ARE NOT AFFILIATES OF THE CLASS A TRUST CERTIFICATEHOLDER. RESTRICTIONS ON TRANSFER OF THIS TRUST CERTIFICATE ARE DESCRIBED MORE FULLY HEREIN.

<u>CLASS A TRUST CERTIFICATE</u>

MULTIFAMILY MORTGAGE TRUST 1996-1

COPY

No. 1

THIS CERTIFIES THAT WHUDA REAL ESTATE LIMITED PARTNERSHIP (the "Owner") is the registered owner of a 70% undivided beneficial interest in the assets of the Issuing Trust existing under the laws of the State of Delaware pursuant to the Trust Agreement (the "Agreement"; the terms herein are used as therein defined) dated June 27, 1996, between WHUDA Real Estate Limited Partnership, as Class A Trust Certificateholder and Wilmington Trust Company, as owner trustee (the "Owner Trustee"). The Owner Trustee has executed and attested this Trust Certificate by one of its duly authorized signatories as set forth below. This Trust Certificate is one of the Trust Certificates referred to in the Agreement and is issued under and is subject to the terms, provisions and conditions of the Agreement to which the holder of this Certificate by virtue of the acceptance hereof agrees and by which the holder hereof is bound. The holder hereof agrees not to transfer this Trust Certificate except in accordance with the Agreement. Reference is hereby made to the Agreement for a statement of the rights of the holder of this Trust Certificate, as well as for a

statement of the terms and conditions of the Issuing Trust created by the Agreement.

The holder of this Trust Certificate, by its acceptance hereof agrees (i) that the holder is jointly and severally liable for all taxes, liabilities, contracts, expenses, indemnity payments and other charges of the Issuing Trust (other than the principal of and interest on Bonds and other matters specified in Section 7.03 of the Agreement) pursuant to the Agreement and (ii) not to transfer this Trust Certificate except in accordance with the Agreement.

Capitalized terms used and not defined herein have the meanings assigned to such terms in the Agreement.

IN WITNESS WHEREOF, the Owner Trustee has caused this Trust Certificate to be executed on behalf of the Issuing Trust as of the date hereof by one of its Authorized Officers by his signature and its corporate seal or a facsimile thereof to be hereunto affixed or hereon imprinted. This Trust Certificate shall not be valid or enforceable for any purpose until it shall have been so signed by an Authorized Officer and the corporate seal so affixed.

Dated: June 27, 1996

COPY

MULTIFAMILY MORTGAGE TRUST 1996-1

WILMINGTON TRUST COMPANY,
as Owner Trustee

By: ______________________
Name: Emmett R. Harmon
Title: Vice President

[Seal]

CLASS B TRUST CERTIFICATE

THIS TRUST CERTIFICATE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER ANY STATE SECURITIES OR "BLUE SKY" LAWS. THIS TRUST CERTIFICATE MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF REGISTRATION UNDER SUCH LAWS OR QUALIFICATION FOR AN EXEMPTION FROM SUCH REGISTRATION. THE OWNER TRUSTEE SHALL REQUIRE A RULE 144A AGREEMENT OR A TRANSFEREE AGREEMENT DEMONSTRATING COMPLIANCE WITH APPLICABLE SECURITIES LAWS AND, UNDER CERTAIN CIRCUMSTANCES, THE OWNER TRUSTEE MAY REQUIRE AN OPINION OF COUNSEL WITH RESPECT TO SUCH REGISTRATION OR QUALIFICATION. FURTHER, ANY TRANSFEREE OF THIS TRUST CERTIFICATE MUST DELIVER TO THE OWNER TRUSTEE, THE DEPOSITOR AND THE SERVICER A BENEFIT PLAN AFFIDAVIT. RESTRICTIONS ON TRANSFER OF THIS TRUST CERTIFICATE ARE DESCRIBED MORE FULLY HEREIN.

CLASS B TRUST CERTIFICATE

MULTIFAMILY MORTGAGE TRUST 1996-1

COPY

No. 1 Percentage Interest: 30%

THIS CERTIFIES THAT the FEDERAL HOUSING ADMINISTRATION OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (the "Owner") is the registered owner of a 30% undivided beneficial interest in the assets of the Issuing Trust existing under the laws of the State of Delaware pursuant to the Trust Agreement (the "Agreement"; the terms herein are used as therein defined) dated June 27, 1996, between WHUDA Real Estate Limited Partnership, as Class A Trust Certificateholder and Wilmington Trust Company, as owner trustee (the "Owner Trustee"). The Owner Trustee has executed and attested this Trust Certificate by one of its duly authorized signatories as set forth below. This Trust Certificate is one of the Trust Certificates referred to in the Agreement and is issued under and is subject to the terms, provisions and conditions of the Agreement to which the holder of this Certificate by virtue of the acceptance hereof agrees and by which the holder hereof is bound. The holder hereof agrees not to transfer this Trust Certificate except in accordance with the Agreement. Reference is hereby made to the Agreement for a statement of the rights of the holder of this Trust Certificate, as well as for a statement of the terms and conditions of the Issuing Trust created by the Agreement.

The holder of this Trust Certificate, by its acceptance hereof agrees not to transfer this Trust Certificate except in accordance with the Agreement.

Capitalized terms used and not defined herein have the meanings assigned to such terms in the Agreement.

IN WITNESS WHEREOF, the Owner Trustee has caused this Trust Certificate to be executed on behalf of the Issuing Trust as of the date hereof by one of its Authorized Officers by his signature and its corporate seal or a facsimile thereof to be hereunto affixed or hereon imprinted. This Trust Certificate shall not be valid or enforceable for any purpose until it shall have been so signed by an Authorized Officer and the corporate seal so affixed.

Dated: June 27, 1996

MULTIFAMILY MORTGAGE TRUST
1996-1

WILMINGTON TRUST COMPANY,
as Owner Trustee

By: ______________________
Name: Emmett R. Harmon
Title: Vice President

COPY

[Seal]

U.S.Department of Housing and Urban Development
Nevada State Office
Atrium Building
333 North Rancho, Suite 700
Las Vegas, NV 89106
http://www.hud.gov

June 28, 1996

Mr. Mark P. Levy
Levy, Levy & Levy
595 Market Street, Suite 2400
San Francisco, CA 94105

Dear Mr. Levy:

SUBJECT: Project No. 125-35100
Lake Mead Villa Apartments
Las Vegas, NV

This is in response to your letter of June 7, 1996.

When Mr. Hildreth sold this project in 1993, the loan was in a delinquent status, and had been assigned to the Department of Housing and Urban Development (HUD). HUD entered into a workout agreement with the buyer, in an effort to allow the buyer to cure the delinquency. An agreement was made between the buyer and seller that funds would be paid to the sellers from the first available surplus cash. Unfortunately, the current owners did not cure the delinquency during the workout period, as we had anticipated.

(3) J.L.K.

At the time of final approval of the transfer of physical assets, June 4, 1995, the HUD-held loan was delinquent $359,823.00. As of June 20, 1996, the delinquency was $713,127.69. As long as the loan is in a delinquent status, there is no surplus cash. We cannot allow the current owner to repay Mr. Hildreth from project funds except from surplus cash, when and if it becomes available.

Please direct all inquiries and responses concerning this matter to David F. Ewing, Multifamily Asset Management Branch; telephone number (702) 388-6500, extension 1820.

Very sincerely yours,

D. Manz

Dorothy A. Manz
Chief, Multifamily Asset
Management Branch

LAKE MEAD VILLA APTS MORTGAGE ACCOUNT
FROM 11/91 TO 6/96

PURPOSE: To determine whether Lake Mead was current under its workout agreement period from 3/1/93-2/29/96.

SOURCES: Statements of Mutifamily Mortgage Account, obtained from Michael Novakowski,
Multifamily Notes Servicing Branch, Washington, D.C.
(202) 708-0614 X 2763
Provisional Workout Agreement, effective March 1, 1993 to February 29, 1996

According to the workout agreement, the following minimum monthly payments were to be made:

| First Year | |
|---|---|
| 15,253.40 | (70% of accuring interest) |
| 959.55 | service charge |
| 2,748.36 | tax escrow |
| 18,961.31 | |

| Second Year | |
|---|---|
| 16,342.93 | (75% of accuring interest) |
| 946.32 | service charge |
| 2,748.36 | tax escrow |
| 20,037.61 | |

| Third Year | |
|---|---|
| 17,432.46 | (80% of accuring interest) |
| 931.55 | service charge |
| 2,045.48 | tax escrow |
| 20,409.49 | |

According to Michael Kovakowski, the service charge changed once a year based on the unpaid principle balance; and the tax escrow varied based on a reanalyzation of tax needs.

| MONTH/YEAR | MINIMUM DUE | AMOUNT PAID | |
|---|---|---|---|
| Mar-93 | 18,961.31 | 22,145.42 | |
| Apr-93 | 18,961.31 | - | |
| May-93 | 18,961.31 | 30,508.00 | |
| Jun-93 | 18,961.31 | 30,085.04 | |
| Jul-93 | 18,961.31 | 18,961.31 | |
| Aug-93 | 18,961.31 | 18,961.31 | |
| Sep-93 | 18,961.31 | 18,961.31 | |
| Oct-93 | 18,961.31 | 18,961.31 | |
| Nov-93 | 18,961.31 | 18,961.31 | |
| Dec-93 | 18,961.31 | 18,961.31 | |
| Jan-94 | 18,961.31 | 18,961.31 | (statement missing–payment deduced from available records) |
| Feb-94 | 18,961.31 | 18,961.31 | (statement missing–payment deduced from available records) |
| Mar-94 | 20,037.61 | 18,961.31 | (statement missing–payment deduced from available records) |
| Apr-94 | 20,037.61 | 18,961.31 | |
| May-94 | 20,037.61 | 18,961.31 | |
| Jun-94 | 20,037.61 | 18,961.31 | |
| Jul-94 | 20,037.61 | 24,356.07 | |
| Aug-94 | 20,037.61 | 20,090.65 | |
| Sep-94 | 20,037.61 | 20,037.61 | |

| | | | |
|---|---|---|---|
| Oct-94 | 20,037.61 | 20,037.61 | |
| Nov-94 | 20,037.61 | 20,037.61 | |
| Dec-94 | 20,037.61 | 20,037.61 | |
| Jan-95 | 19,334.73 | 20,037.61 | (tax escrow reduced to 2045.48) |
| Feb-95 | 20,424.24 | 20,037.61 | (80% of interest charged beginning here) |
| Mar-95 | 20,409.49 | 20,424.24 | (service charged reduced to 931.55) |
| Apr-95 | 20,409.49 | 20,424.24 | |
| May-95 | 20,409.49 | 20,424.24 | |
| Jun-95 | 20,409.49 | 43,935.00 | |
| Jul-95 | 20,409.49 | 20,424.24 | |
| Aug-95 | 20,409.49 | 20,424.24 | |
| Sep-95 | 20,409.49 | 20,424.24 | |
| Oct-95 | 20,409.49 | 20,424.24 | |
| Nov-95 | 20,409.49 | 20,424.24 | |
| Dec-95 | 20,409.49 | - | |
| Jan-96 | 20,817.17 | 40,848.48 | (tax escrow increased to 2453.16) |
| Feb-96 | 20,817.17 | 20,424.24 | |
| TOTALS | $713,400.03 | $743,548.20 | |

| | | | |
|---|---|---|---|
| Mar-96 | 29,741.88 | - | (Workout expired.) |
| Apr-96 | 29,772.64 | - | |
| May-96 | 29,803.70 | - | |
| Jun-96 | 29,835.04 | - | |
| | | (no payments) | |

RESULTS: Lake Mead Villa Apartments was current under its 3-yr. workout agreement.
Once the agreement expired on Feb. 29, 1996, Lake Mead stopped making mortgage paymen
HUD stopped issuing mortgage statements after June 1996 once the note was sold.
Only three mortgage payments was made between Nov. 91 and Feb. 93, prior to the workout agreement beginning Mar. 1, 1993. These were $12,805 in 8/92; $7,472 in 12/92; and $374,236.05 in 1/93.
No Section 8 payments were applied to the mortgage from Nov. 1991 through June 1996.

# STATEMENT OF MULTIFAMILY MORTGAGE ACCOUNT

Notice of Mortgage Payment Due

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

| For Hud Use Only |
|---|
| Amount Enclosed |
| Date |
| Control Number |
| Allocation |
| Check Number |

LAKE MEAD VILLA APTS
ED ARAKAKI
P O OBX 17980
HONOLULU, HI 96817

**Return Part B** of the statement with your remittance prior to the Payment Due Date. Include the FHA Project Number on your check made payable to the Federal Housing Administration and forward to the

**Multifamily Payment Processing Center,**
**P.O.Box 70764; Chicago, IL 60673.**

A pre-addressed envelope is enclosed for your convenience.

**Send all Inquiries regarding this statement to:**

**U.S. Department of Housing and Urban Development**
**Mortgage Insurance Accounting and Servicing**
**Multifamily Notes Branch**
**P.O. Box 44804**
**Washington, D.C. 20026-4804**

| FHA Project Number and Name | Statement Date | Payment Due Date |
|---|---|---|
| 125-35100 MNA LAKE MEAD VILLA APTS | 06/20/1996 | 07/01/1996 |

| Account Items | Billing Summary: Amount Due (Prior Statement) | Funds Applied | Delinquent Amount | Monthly Payment | Total Amount Due |
|---|---|---|---|---|---|
| Interest on Advances | .00 | .00 | .00 | .00 | .00 |
| Operating Advances | .00 | .00 | .00 | .00 | .00 |
| Service Charge | 3676.82 | .00 | 3676.82 | 915.08 | 4591.90 |
| Tax Escrow | 9812.64 | .00 | 9812.64 | 2453.16 | 12265.80 |
| Interest | 525289.79 | .00 | 525289.79 | 21790.57 | 547080.36 |
| Principal | 168800.17 | .00 | 168800.17 | 3382.95 | 172183.12 |
| Reserve for Replacement | 3161.68 | .00 | 3161.68 | 790.42 | 3952.10 |
| Other Charges | 2386.59 | .00 | 2386.59 | 502.86 | 2889.45 |
| Credit | | To Be Applied ——→ | | .00 | .00 |
| Total | 713127.69 | .00 | 713127.69 | 29835.04 | 742962.73 |

A **Late charge is assessed if payment is not made within 15 days.** Amounts received are applied to account items as follows: Interest on Advances, Operating Advances, Service Charges, Tax Escrow, Interest, Principal and Reserve for Replacement.

| Source of Funds Applied: Code | Date | Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Total | | |

Provisional Workout Information
Term: Minimum Monthly Payment

Modification Agreement Information
Effective Date:

Account Balances

| Account | Amount |
|---|---|
| Unpaid Principal Balance | 2377153.59 |
| Tax Escrow | 767.71- |
| Reserve for Replacement | .00 |
| Miscellaneous Escrow | .00 |
| Insurance Escrow | .00 |

Codes: A-Checks, B-Rent Supplement Section 8, C-Interest Reduction/ Assistance Payments, D-Tax Escrow, E-Reserve for Replacement, F-Miscellaneous Escrow, G-Late Charge, H-Other, I-Insufficient Funds.

REMARKS

43 US0036

HUD Field Office F0944 Las Vegas Statement Inquiries: (202)708-4035

EBMC

September 27, 1996

UPS OVERNIGHT MAIL

Ms. Dorothy A. Manz, Chief
Asset Management Branch
U.S. Department of Housing
and Urban Development
Atrium Building
333 No. Rancho Drive, Suite 700
Las Vegas, NV 89106

SUBJECT: Release of Section 8 Funds
Lake Mead Villas Apartments (125-35100)
Las Vegas, NV

Dear Ms. Manz:

This is to inform you that on this date the new owner of the HUD mortgage has filed a foreclosure notice against Lake Mead Villas Apartments. Over the past few months we have attempted to negotiate a resolution of the outstanding issues with the new lender, and we thought we were making progress. This foreclosure notice comes as a complete surprise and represents a significant lack of good faith.

Eugene Burger Management Corporation (EBMC) assumed management responsibility on June 1st. At the time of our takeover, I was personally assured by your office that the Section 8 payment vouchers, which had been held up by HUD since last December, would be processed and paid.

When the Section 8 funds were not received in early August, I called your office to ask about the status of the release. I received a voice mail message assuring me that "the Section 8 check was in the mail".

In your letter dated August 7, 1996, approving our management certification, you indicated in the second paragraph as follows: "Also, we are forwarding this management certification to the field accounting division to release the section 8 funds that have been on hold." As of this date we still have not received any Section 8 funds and we are not able to transmit any mortgage payments or to work out an amicable solution with the lender.

You will find attached a copy of our reconciliation of the outstanding Section 8 vouchers that have not been paid since last December. In effect, HUD has withheld a total of $165,449 over the past 11 months. The new lender is asking for an accounting as to what happened to these funds.



Eugene Burger Management Corporation

481 Via Hidalgo Greenbrae, CA 94904 415-461-8660 FAX 415-461-8784 TDD 800-735-2929

Ms. Dorothy A. Manz
September 27, 1996
Page 2

The owner of Lake Mead Villas, Mr. Arakaki, has complied with HUD requests for corrective action: he has hired a new management agent, his mother is now under a lease and paying her rent, the Section 8 tenant records are being reviewed and all residents being recertified as of November 1, 1996, thereby correcting all deficiencies as of that date, Section 8 waiting lists have been established, etc. We are doing the best we can under the circumstances to comply with HUD requirements.

Lake Mead Villas is a property that is marginal to operate but it has the potential to be a successful residential property. We need your cooperation if we are to be successful. We need your assurances the Section 8 funds will be released immediately so that we can manage the property effectively and remit timely mortgage payments to the lender.

Would you please look into this matter immediately and resolve once and for all the status of the Section 8 payments.

Sincerely,

EUGENE BURGER MANAGEMENT CORPORATION

William H. Harrison
Director of Subsidized Property Management

WHH:dvc

Enclosures

cc: Mr. Edward Arakaki
P.O. Box 17980
Honolulu, HI 96817

David Ewing, HUD, Las Vegas

a:hudsec8.lmv

# Reinwald O'Connor Marrack Hoskins & Playdon

*Attorneys at Law*

Grosvenor Center, Makai Tower
733 Bishop Street, 24th Floor
Honolulu, Hawaii 96813-4070

P.O. Box 3199
Honolulu, Hawaii 96801-3199
Telephone: (808) 524-8350
Fax: (808) 531-8628
e-mail: romhp@pixi.com

Arthur B. Reinwald*
Dennis E. W. O'Connor*
John A. Hoskins*
Gilbert D. Butson*
George W. Playdon, Jr.*
Jerrold K. Guben
W. Thomas Fagan
Michael J. McGuigan
Cid H. Inouye
Kelvin H. Kaneshiro, D.M.D.
Stuart T. Feeley

Jeffre W Juliano, LL.M.
John S. Mukai
M. Lorena Uy
Ronald T. Ogomori
Lanson K. Kupau
Jason M Tani

Alexander C Marrack*
Mario A. Roberti
C Andrew Englehart
*Of Counsel*

*A Law Corporation

*Since 1876*

October 8, 1996

Ms. Dorothy A. Manz, Chief
Multifamily Asset Management Branch
U.S. Department of Housing and Urban Development
Atrium Building
333 No. Rancho Drive, Suite 700
Las Vegas, NV 89106

Re: In re Edward Arakaki, Bk. No. 96-02147
(Bankr.D.Haw.)

Dear Ms. Manz:

We are the attorneys for Edward Arakaki, a Chapter 11 debtor-in-possession. The Debtor's petition for relief was filed on September 27, 1996 in Honolulu, Hawaii. The Estate is the owner of Lake Mead Villas of Las Vegas, Nevada, which has a contract with the Department, NV 39-L000-036/NV 39-H022-007.

As the attorneys for the Debtor-in-Possession, we are required to collect all assets of the Estate, including accounts receivable and other debts. We have been informed by the Debtor's property manager, Eugene Burger Management Corporation, that the Department of Housing and Urban Development (HUD) is indebted to the Estate in an amount of $165,449.00 (see enclosure) for unpaid Section 8 payments.

Mr. William Harrison of Eugene Burger has provided this firm with some correspondence relating to HUD's refusal to pay over the delinquent Section 8 funds to the Debtor's property manager. One reason given for the failure to tender the delinquent Section 8 funds is a purported payment of $10,000.00 made to Mr. Arakaki within 90 days of the September 27, 1996 filing. As your legal counsel will inform you, that $10,000.00 payment is presumptively an avoidable preference, and the Estate has made a demand upon Mr. Arakaki to make arrangements to return the $10,000.00 to the Estate.

As your counsel will further inform you, upon the filing of the Chapter 11 petition, an estate is created, including all of the accounts

RECEIVED
OCT 14 1996
EBMC

Ms. Dorothy A. Manz, Chief
October 8, 1996
Page 2

receivable and debts owed to the debtor-in-possession. The Federal Bankruptcy Code provides in 11 U.S.C. § 542(a), that a third party holding property of the estate, including accounts due and owing to the Debtor, must turn over such property, if a demand is made or contested case matter initiated in the bankruptcy court. As the attorneys for the Debtor-in-Possession, we believe that the withheld $165,449 in Section 8 funds is subject to a § 542(a) turnover order.

The Debtor would like HUD to voluntarily turnover the withheld Section 8 payments and thereby avoid formal proceedings in the Bankruptcy Court. However, if some amicable resolution cannot be negotiated, the Debtor is under an obligation to initiate an adversary proceeding to recover the Section 8 funds.

Eugene Burger Management is in the process of being appointed as the Debtor's property manager for the Lake Mead Villas, and all Section 8 payments due both pre-petition and post-petition should be made to that firm.

If you have any questions about the operation of the Debtor-in-Possession or the payment of the Section 8 funds to Eugene Burger, please feel free to contact this office at your convenience.

Very truly yours,

Jerrold K. Guben

JKG:ls
Enclosure

cc: Mr. Edward Arakaki, Debtor-in-Possession
Mr. William Harrison, Eugene Burger Management Corporation
Richard M. Price, Esq.

FHA FORM NO. 4146-e
XXXXXXXXX)
Revised June 1964

# DEED OF TRUST NOTE

| Post-it™ brand fax transmittal memo 7671 | # of pages ▸ 3 |
|---|---|
| To Dave Ewing | From Judy Grenville |
| Co. | Co. |
| Dept. | Phone # 687-4237 |
| Fax # 388-6730 | Fax # |

$ 2,500,000.00

Las Vegas, Nevada.
April 1, 1983.

FOR VALUE RECEIVED, the undersigned, LAKE MEAD VILLA APARTMENTS, a Nevada General Partnership promises to pay to SEAFIRST MORTGAGE CORPORATION a corporation of the State of Washington, or order, at its principal place of business in the city of Seattle, State of Washington, or at such other place as may be designated in writing by the holder of this Note, the principal sum of TWO MILLION FIVE HUNDRED THOUSAND AND NO/100---------------------------------- Dollars ($ 2,500,000.00), with interest from date at the rate of TWELVE AND SEVEN/EIGHTHS per centum (12.875%) per annum on the unpaid balance [illegible] up to and including the cut-off date established or selected for cost certification purposes, and THIRTEEN PER CENTUM (13%) beginning with th date following cost certification cut-off up to and including the date of final endorseme (interim rate) or the scheduled date for commencement of amortization, whichever comes first. Thereafter, interest shall be payable at the rate of ELEVEN PER CENTUM (11%) per annum (permanent loan rate) on the unpaid balance until paid. In the event that the Secretary of Housing and Urban Development becomes the holder of this note before the interest rate is reduced to the said permanent loan rate, the Secretary shall have the option of reducing the interest rate to a rate no lower than the said permanent loan rate

The said principal and interest shall be payable in monthly installments as follows: Interest alone payable on the first day of May, 1983 and on the first day of each month thereafter up to and including March, 1984. Thereafter, commencing on the first day of April, 1984 monthly installments of interest and principal shall be paid in the sum of TWENTY THREE THOUSAND EIGHT HUNDRED EIGHT AND 09/100 DOLLARS ($23,808.09) each, such payments to continue monthly thereafter on the first day of each month until the entire indebtedness has been paid. In any event, the balance of principal (if any) remaining unpaid, plus accrued interest shall be due and payable on March 1, 2014. The installments of interest and principal shall be applied first to interest at the rate of ELEVEN PER CENTUM (11%) per annum upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of**

[illegible]

[illegible]

If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice; at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. In the event of default in the payment of this Note, and if the same is collected by an attorney at law, the undersigned hereby agree(s) to pay all costs of collection, including a reasonable attorney's fee.

No default shall exist by reason of nonpayment of any required installment of principal so long as the amount of optional additional prepayments of principal already made pursuant to the privilege of prepayment set forth in this Note equals or exceeds the amount of such required installment of principal.

All parties to this Note, whether principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest and notice of dishonor.

This Note is secured by Deed of Trust upon real estate in Clark County, Nevada.

**principal. (See attached Rider incorporated herein for additional terms and conditions.

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership

Signed ~~and sealed~~ the day and year first above written.

By [signature]
Lewis Hildreth, General Partner

XXXXXXXXXXXXXXXXX

By [signature]
A. F. Henriksen, General ~~XXXXXXX~~ Partner

XXXXXXX ______________________ XXXXXXX By [signature]
Ray Henriksen, General Partner

THIS IS TO CERTIFY that this is the Note described in and secured by Deed of Trust of even date herewith and in the same principal amount as herein stated and secured by real estate situated in Clark County, Nevada.

Dated April 21, 1983.

[signature]
*Notary Public*

GERALDINE CHAVIS
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
CITY AND COUNTY OF SAN FRANCISCO
My Commission Expires Oct. 26, 1984

2,480,900

STATE OF NEVADA

LOAN NO. T-600189-5

**Deed Of Trust Note**

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership
TO
SEAFIRST MORTGAGE CORPORATION

FHA No. 125-35100-PM-L8

Insured under Sec. 221(d)(4) of the National Housing Act and Regulations thereunder of the Federal Housing Commissioner

In effect on November 18, 1982

To the extent of advances approved by the Commissioner

FEDERAL HOUSING COMMISSIONER

By [signature] (Authorized Agent)

Date April 21, 1983

A total sum of $2,480,900 has been approved for insurance hereunder by the Commissioner

FEDERAL HOUSING COMMISSIONER

By [signature] (Authorized Agent)

Date June 8, 1984

Reference is made to the Act and to the Regulations thereunder covering assignments of the insurance protection on this note.

FHA-Wash., D. C.
48693-P Rev. 6/64

For value received, all right, title and interest of the undersigned to the within note, the unpaid balance of which is $2,377,153.59, together with interest thereon, are hereby assigned to the Secretary of Housing and Urban Development his successors and assigns, without recourse or warranty, except as shown in that certain assignment of even date assigning to said Secretary the mortgage securing this note.

NEVADA HOUSING DIVISION

By:
Charles L. Horsey, III
Administrator
Date: [signature]

PAYABLE TO THE ORDER OF THE NEVADA HOUSING DIVISION, WITHOUT RECOURSE.

SEAFIRST MORTGAGE CORPORATION

By: [signature]
G. Eric Pucher, Vice President

RIDER TO DEED OF TRUST NOTE

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership
FHA Project No. 125-35100-PM-L8

In the event that final endorsement has not taken place at least one month prior to the aforesaid date for commencement of installments of interest and principal, then the undersigned shall be required to pay the aforesaid installments of principal and interest, plus an additional amount representing the difference between interest at the permanent rate of ELEVEN PER CENTUM (11%) and the interim rate of THIRTEEN PER CENTUM (13%) for each month or part of a month that precedes final endorsement. Notwithstanding anything herein to the contrary, such payment shall be applied first to interest at the interim interest rate of THIRTEEN PER CENTUM (13%) and then to principal. After final endorsement the additional interest shall no longer be payable.

Pursuant to Section 221.524(d) of 24 C.F.R. the indebtedness represented by this Deed of Trust Note may not be prepaid either in whole or in part prior to the final maturity date thereof without the prior written approval of the Mortgagee and the Federal Housing Commissioner. The consent of the Mortgagee to prepay the debt, in whole or in part, will not be unreasonably withheld and may be conditioned upon payment to the Mortgagee by the Mortgagor of such fees and charges which are reasonable as determined by the Commissioner and which are related to the Mortgagee's cost of redeeming the bonds sold to finance the loan.

In the event that the Borrower shall fail to make any monthly payment due the holder within fifteen (15) days after the due date hereof, the holder may, at its option, impose a late charge upon the Borrower in an amount not to exceed two percent (2%) of said monthly payment; provided, nevertheless, that so long as this Deed of Trust shall be insured by the Federal Housing Administration, any late charge shall be separately charged to and collected from the Borrower and shall not be deducted from any aggregate monthly payment.

The Maker assumes no personal liability for the payment hereof except as set out in this Deed of Trust of even date given to secure this indebtedness.

LAKE MEAD VILLA APARTMENTS,
a Nevada General Partnership

By ______________________
Lewis Hildreth, General Partner

By ______________________
A. F. Henriksen, General Partner

By ______________________
Ray Henriksen, General Partner