IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| EDWARD T. ARAKAKI and HELEN ARAKAKI | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 03-1874C |
| | ) | (Judge Hewitt) |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

1. On June 5, 2002, Mr. Edward T. Arakaki filed an action in the Hawaii state court against Mel Martinez, then-Secretary of the United States Department of Housing and Urban Development ("HUD" or the "agency"), and HUD itself. Def. App. 1-6. 1

**Admitted**

2. Ms. Helen Arakaki was not listed as a separate plaintiff on the June 5, 2002 complaint. Id.

**Admitted. She gave an assignment of her claim to her son Edward Arakaki. See Pf. App. 64**

3. Ms. Helen Arakaki was first listed as a separate plaintiff on the third amended complaint, filed on March 14, 2003 with the United States district court. Def. App. 7-8.

**Admitted. Ms. Helen Arakaki permitted her name to be used in case she may be deemed a necessary or indispensable party to the case. See Pf. App. 64.**

4. Ms. Helen Arakaki is the mother of Mr. Edward Arakaki.

**Admitted**

5. On or about October 18, 1991, Mr. Arakaki, Mr. Larry Little, and Mr. Keith Matsuoka met with a HUD employee, David Ewing (the "October 1991 meeting"). Compl. ¶ 6;

**Admitted**

6. Ms. Arakaki did not attend the October 1991 meeting. Def. App. 195.

**Admitted. Edward Arakaki represented his Mother. Her first language is Japanese and she was born in Okinawa, moved to Hawaii 1991, and now is 77 years old. Pf. App. 63.**

7. Mr. Arakaki attended the October 1991 meeting in connection with possible purchase of a 76-unit apartment building in Las Vegas, Nevada, known as Lake Mead Villas ("Lake Mead"). Compl. ¶ 6.

**Admitted. He was also representing his mother's interests. Pf. App. 63**

8. At the time of the October 1991 meeting, HUD did not own Lake Mead Villas.

**Admitted**

9. At the time of the October 1991 meeting, HUD did not own the mortgage for Lake Mead Villas.

**Admitted**

10. At the time of the October 1991 meeting, HUD insured the mortgage on Lake Mead Villas.

**Admitted**

11. At the time of the October 1991 meeting, a number of units at Lake Mead Villas were subsidized through HUD's section 8 program.

**Admitted**

12. At the time of the October 1991 meeting, the mortgage loan for Lake Mead was in the process of being assigned to HUD.

**Admit that it hadn't been assigned, but the parties contemplated that it would be. Mr. Ewing said the assignment process had already formally begun. Pf. App. 63.**

13. Mr. Arakaki alleges that Mr. Ewing made oral representations at the October 1991 meeting to Mr. Arakaki that if HUD ever wished to sell the mortgage loan after assignment, plaintiffs would have the "right" to bid on the loan at an auction. Compl. ¶ 8.

**Admitted**

14. David Ewing does not admit that he made oral representations at the October 1991 meeting to Mr. Arakaki that if HUD ever wished to sell the mortgage loan after assignment, plaintiffs would have the "right" to bid on the loan at an auction.

**Denied. Mr. Ewing admitted this in effect to the Inspector General. Pf. App 52-54, 68, 71, 72, 79 and the Under Secretary DeCell of HUD was told this in 1996 by Mr. Ewing directly or indirectly and does not, in this case, deny telling Mr. Arakaki this.**

15. Mr. Little denies that Mr. Ewing made oral representations at the October 1991 meeting to Mr. Arakaki that if HUD ever wished to sell the mortgage loan after assignment, plaintiffs would have the "right" to bid on the loan at an auction. Def. App. 217, 219.

**Denied. Mr. Little admitted this in a signed memo. Pf. App. 21-24.**

16. Mr. Matsuoka denies that Mr. Ewing made oral representations at the October 1991 meeting to Mr. Arakaki that if HUD ever wished to sell the mortgage loan after assignment, plaintiffs would have the "right" to bid on the loan at an auction. Def. App.222.

**Admitted.**

17. No documentation (from the period October 1991 through October 1992) exists memorializing a purported agreement giving Mr. Arakaki a "right to bid" on the property should HUD sell the property at auction.

**Admitted. However documentation exists outside that time period. Pf. App. 21-24, 47-50.**

18. On October 20, 1991, Mr. Arakaki signed a purchase agreement for Lake Mead ("Purchase Agreement"). Def. App. 22.

**Admitted.**

19. The Purchase Agreement granted Mr. Arakaki the ability to purchase Lake Mead for $3,000,000. Id.

**Denied. The Purchase Agreement was not a mere option. The Purchase Agreement bound the purchaser, Mr. Arakaki and his mother to pay $3 million.**

20. Mr. Arakaki made an earnest money deposit of $15,000 in connection with the Purchase Agreement, which sum was subject to be retained as liquidated damages and consideration for execution of the agreement in the event that Mr. Arakaki failed to complete the purchase. Id.

**Admitted, and that the Arakaki's then paid the remaining $485,000. Pf. App. 55-56.**

21. On October 22, 1991, the then-owner of Lake Mead Villas signed the Purchase Agreement. Id.

**Admitted**

22. On October 28, 1991, the mortgage for Lake Mead Villas was assigned to HUD. Def. App. 24-25.

**Admitted**

23. On October 22, 1992, HUD and plaintiffs entered into an initial Provisional Workout Agreement ("October 1992 provisional workout"). Def. App. 26-29.

**Admitted**

24. Andrew Robertson, office manager for the Las Vegas, Nevada field office, signed October 1992 provisional workout on behalf of HUD. Id. at 26, 29.

**Admitted**

25. The October 1992 provisional workout contained no provisions expressly providing plaintiffs a "right to bid" on their loan at auction. Id. at 26-29.

**Admitted. There was no integration clause. Pf. App. 57-62.**

26. Closing on Lake Mead occurred on October 29, 1992, whereupon plaintiffs became the owners of Lake Mead. Def. App. 30.

**Admitted.**

27. HUD and the plaintiffs entered into another Provisional Workout Agreement, effective March 1, 1993 through February 29, 1996 ("March 1993 provisional workout"). Def.App. 31-33.

**Admitted.**

28. Andrew Robertson, office manager for the Las Vegas, Nevada field office signed the March 1993 provisional workout on behalf of HUD. Id. at 33.

**Admitted.**

29. Mr. Larry Little signed the March 1993 provisional workout on behalf of the plaintiffs. Id. at 33.

**Admitted.**

30. Mr. Arakaki reviewed the March 1993 provisional workout prior to Mr. Little's signing the document. Def. App. 216.

**Admitted.**

31. Mr. Little was authorized to sign the March 1993 provisional workout on behalf of the plaintiffs. Def. App. 202-203, 216.

**Admitted, but not as a partner of the Arakaki's.**

32. The March 1993 provisional workout contained no provisions expressly providing plaintiffs a "right to bid" on their loan at auction. Def. App. 31-33.

**Admitted but no integration clause. Pf. App. 57-62.**

35. As part of the partially assisted sale, plaintiffs' loan was transferred to a trust with 157 other loans (the "Trust"). Def. App. 210.

**Admitted**

36. A beneficial interest in the Trust, along with the responsibility for servicing the loans (the "Class A Certificate"), was placed up for auction in a partially assisted loan sale. Id.

**Admitted**

37. HUD was to maintain an interest in the Trust (the "Class B Certificate") after the sale of the Class A Certificate. This Class B Certificate gave HUD a passive interest in the Trust, as well as a potential entitlement to a pro-rata share of a portion of the cash flow from the Trust. Id.

**Admitted**